## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| VOYAGER INDEMNITY INSURANCE COMPANY,<br><br>                    *Plaintiff,*<br>v.<br><br><br>THE ERIE INSURANCE EXCHANGE,<br><br>                    *Defendant.* | CIVIL ACTION<br><br>NO:<br><br><br><br>JURY TRIAL DEMANDED |

### VOYAGER INDEMNITY INSURANCE COMPANY'S DECLARATORY JUDGMENTCOMPLAINT FOR BAD FAITH REFUSAL TO DEFEND

Plaintiff, Voyager Indemnity Insurance Company ("Plaintiff" or "Voyager"), by and through its undersigned counsel hereby makes its Complaint for Declaratory Judgment, Equitable Subrogation, Equitable Contribution, and Bad Faith Refusal to Defend ("Complaint") against The Erie Insurance Exchange ("Defendant" or "Erie") on authority of Rule 57 of the Federal Rules of Civil Procedure and the provisions of 28 U.S.C. §§ 2201 and 2202. Jurisdiction over the claims contained herein is invoked pursuant to §§ 1332 (a)(3) and (c) in that there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000. In support of this Complaint, Voyager alleges as follows:

### NATURE OF THE ACTION

1.      Voyager hereby sues Erie for bad faith standing in the shoes of their mutual insured, Kevin Morgan, on account of Erie's refusal to defend Mr. Morgan despite multiple tenders and ultimately a Court order requiring Erie to defend.

2.      Mr. Morgan was in a serious car accident on July 10, 2020 that resulted in the deaths of two individuals and alleged injuries to two other individuals who ultimately sued Mr. Morgan and others in 2021.

3.      Mr. Morgan tendered the claim to his personal auto carrier, Erie, under Personal Auto Policy No. Q03 2314765 (the "Erie Policy"), on that same day.  Erie denied coverage twelve days letter, on July 22, 2020, and repeatedly thereafter.

4.      Mr. Morgan therefore sued Erie for coverage in the action styled *Kevin Morgan v. The Erie Insurance Exchange, et. al.*, No. 24-1821, pending in the Court of Common Pleas of Berks County, Pennsylvania (the "Morgan Coverage Action").

5.      On October 8, 2025, the Berks County Court of Common Pleas, on cross-motions for summary judgments filed by Mr. Morgan and Erie, entered an order granting summary judgment in favor of Mr. Morgan and declaring that Erie is obligated under Personal Auto Policy No. Q03 2314765 (the "Erie Policy") to indemnify and defend Mr. Morgan against all claims arising from the July 10, 2020, accident (the "Accident").  A true and correct copy of the order is attached hereto as Exhibit A.

6.      In November 2025, Mr. Morgan again demanded a defense, in light of the Court's Order, but Erie still denied coverage.

7.      Voyager (a commercial auto carrier, as explained further below) assumed the defense of Mr. Morgan in January 2025 in light of Erie's breach, and also demanded that Erie step into the defense several times, before and after the Court's Order, but Erie still denied coverage.

8.      As Voyager is now paying 100% of a defense that should be 100% funded by Erie, Voyager is entitled to stand in the shoes of Mr. Morgan and sue Erie by subrogation, asserting all of Mr. Morgan's rights, including the right to allege bad faith and recover attorney's fees for Erie's recalcitrance.  In addition, Morgan has assigned his bad faith rights against Erie due to Erie's

egregious breach of contract and bad faith failure to defend and pay benefits to Mr. Morgan, among other breaches and violations.

## JURISDICTION, VENUE, AND STANDING

9.    Plaintiff Voyager is a Georgia corporation with its principal place of business in Atlanta, Georgia.

10.    Upon information and belief, Defendant Erie is an Ohio corporation with its principal place of business in Erie, Pennsylvania.

11.    This is, in part, a declaratory relief proceeding brought under 28 U.S.C. § 2201, in that there are actual controversies within the Court's jurisdiction, for which Voyager seeks a declaration by the Court of the parties' rights and other legal obligations.

12.    The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(3), in that there is diversity of citizenship between Voyager, on the one hand, and Erie, on the other, and the matter in controversy, about which Voyager seeks declaratory relief, exceeds $75,000.

13.    The Underlying Actions involve claims against Mr. Morgan and others for which the Plaintiffs have collectively demanded $9,000,000.  Moreover, the defense fees and costs claimed by Mr. Morgan to date exceed $75,000 and will continue to accrue as the Underlying Actions proceed.  Erie is the insurer with the primary duty to defend and indemnify Mr. Morgan and therefore is responsible for all of the aforesaid defense costs, and could be responsible for the full indemnity on account of its breach.

14.    Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims at issue occurred within this judicial district.

15.    This action is distinct from the parallel state court Morgan Coverage Action because Voyager is seeking a declaration concerning its rights and obligations vis-à-vis Erie. Voyager sought intervention in the Morgan Coverage Action and Erie objected, successfully, arguing that Voyager's claims—even though arising out of Morgan's rights—should be asserted separately. Voyager, therefore, brings this action here at Erie's insistence.

## INTRODUCTION

16.    Voyager is the commercial auto carrier (whose named insured is Delivery Dudes), while Erie is the personal auto carrier (whose named insured is Mr. Morgan). Broadly speaking, Voyager therefore covers Mr. Morgan only while performing a food delivery for Delivery Dudes, and Erie covers Mr. Morgan when he is not. The precise policy terms are set forth below and in the insurance policies.

17.    The documentary evidence indicates that Mr. Morgan was not on a food delivery for Delivery Dudes at the time of the Accident, and therefore, Erie covers this loss.

18.    Nevertheless, after Erie's repeated breach, Voyager agreed to defend Mr. Morgan due to Pennsylvania's broad duty to defend standard. In contrast, Erie has refused to defend in breach of its duties to Mr. Morgan and even in spite of a court Order.

19.    Erie contends that extrinsic evidence indicates Mr. Morgan was on delivery and therefore the Accident falls under Exclusion 9 of the Erie Policy, which states that the Erie Policy does not cover an auto "while hired by or rented to others for a fee or while available for hire by the public."

20.    However, the court in the Morgan Coverage Action found this policy language ambiguous and therefore ordered Erie to defend and indemnify Mr. Morgan regardless.

21.     Moreover, Erie's reliance on extrinsic evidence is in overt violation of Pennsylvania's unequivocal "four corners rule." *See, e.g.*, *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (the Pennsylvania Supreme Court admonished Erie for breaching its duty to defend its insured by ignoring the four corners rule).

## THE UNDERLYING ACTIONS

22.     On August 12, 2021, the mother and executrix of the estates of Kevin and Kenneth Ortiz filed a Survival and Wrongful Death action captioned *Carolin Ortiz-Sandoval v. Katia Zeno, Kevin Morgan, Jobble, Inc., Delivery Dudes, LLC and Pike Republic, LLC*, in the Berks County Court of Common Pleas, Civil Action No. 22-9593 ("*Ortiz-Sandoval*") arising out of the July 10, 2020 Accident.

23.     A true and correct copy of the plaintiffs' Third Amended Complaint in *Ortiz-Sandoval*, which is the operative complaint, is attached hereto as Exhibit B.

24.     On June 3, 2022, Carlos Rivera-Ortiz filed a second lawsuit against Mr. Morgan for injuries he allegedly sustained as a result of the July 10, 2020 Accident, in an action captioned *Carlos Rivera-Ortiz v. Katia Zeno, Kevin Morgan, Jobble, Inc., and Delivery Dudes, LLC*, in the Berks County Court of Common Pleas, Civil Action. 22-9764 ("*Rivera-Ortiz*").

25.     A true and correct copy of the plaintiff's Complaint in *Rivera-Ortiz*, which is the operative complaint, is attached hereto as Exhibit C.

26.     The Berks County of Common Pleas Court consolidated the *Ortiz-Sandoval* and *Rivera-Ortiz* cases under docket No. 22-9593 for discovery and trial.

## THE LOSS

27.     Following the direction of Pennsylvania's "four corners" rule, for purposes of assessing Erie's duty to defend, Voyager cites the allegations in the underlying complaints to frame Erie's duty to defend.  This is not an adoptive admission on the part of Voyager.

28.    According to the allegations of the complaints in the Underlying Actions, on July 10, 2020, Katia Zeno was operating a vehicle that broke down on Route 222 in Pennsylvania. *See* Exhibit B ¶ 33; Exhibit C ¶ 21.

29.    Carlos Ortiz Rivera was a passenger in the Zeno vehicle. *See* Exhibit B ¶ 22.

30.    Kevin Canals Ortiz and Keneth J. Ortiz, stopped to help the individuals in the broken-down vehicle on Route 222. *See* Exhibit B ¶ 35; Exhibit C ¶ 24.

31.    The Plaintiffs allege that while driving his personal vehicle on Route 222 in Berks County, Pennsylvania, Mr. Morgan failed to appreciate the stopped and the broken-down vehicles and struck Kevin Canals Ortiz, Kenneth J. Ortiz, and Carlos Rivera. *See* Exhibit B ¶ 36; Exhibit C ¶ 25.

32.    The Accident resulted in the deaths of Kevin Canals Ortiz and Kenneth J. Ortiz, and injury to Carlos Rivera-Ortiz. *See* Exhibit B ¶¶ 36-37; Exhibit C ¶ 26.

33.    The Delivery Dudes delivery log shows that Mr. Morgan completed his last food delivery for Delivery Dudes 14 minutes before the Accident.

34.    The underlying plaintiffs have not narrowed their theories as to whether Mr. Morgan was or was not on delivery at the time of the Accident. According to the underlying plaintiffs, "[t]he Estates of Ortiz pled in the alternative, including that Mr. Morgan was operating the vehicle negligently on his own behalf and that he was operating the vehicle on behalf of the various corporate defendants."

35.    More precise to Erie's exclusion, the underlying plaintiffs do not narrow their theory to allege that the vehicle was "hired" or "available for hire" by the public. For example, Mr. Morgan could have been within a delivery shift or returning his delivery bag, as he said. In these cases, he would not be "hired" or "available for hire" to the public and the Erie Policy would cover the loss even if he was within the scope of "employment." *See* Exhibit B ¶ 26; Exhibit C ¶

14.  But these facts remain undetermined.  And, to the point, the causes of action against Mr. Morgan do not require proof of delivery status to find Mr. Morgan liable for the tort.  *See* Exhibit B ¶¶ 37, 49, 129; Exhibit C ¶¶ 26, 34.  Therefore, Erie owes a duty to defend.

## THE POLICIES

36.  At the time of the Accident both Voyager's policy (the "Voyager Policy") and the Erie Policy (collectively, the "Policies") were in effect.

### A.  The Voyager Policy

37.  The Voyager Policy covers Delivery Dudes, Commercial Fleet Auto Rental Insurance Policy No. FAR1100011, effective between June 1, 2018, until August 1, 2020.

38.  It covers **delivery operators**[1] only while they are on delivery, called the **term of coverage**.

39.  The **delivery operator**'s **term of coverage** ends when the driver "fulfills a delivery request":

> For any **delivery operator** the **term of coverage** applies only while the **delivery operator** is actually fulfilling a delivery request made through a **delivery application** and:
>
> 1.  Begins operating a **covered auto** for delivery;
>
> 2.  Is using the covered **auto** only for the purpose of fulfilling a delivery request(s) made through the **named insured's delivery application**; and
>
> 3.  Is on a direct and uninterrupted path:
>
>     a.  To only the location of pickup indicated on the **delivery application**; or
>
>     b.  To only the location of delivery indicated on the **delivery application**. . . . .

---

[1] Terms are bolded here when they are bolded and defined in the Voyager Policy.

40.     On or about January 14, 2025, following Erie's continued refusal to provide a defense to Mr. Morgan in the Underlying Actions, Voyager agreed to defend Mr. Morgan under a complete reservation of rights.

41.     Voyager's reservation of rights states that the delivery log provided by Delivery Dudes shows that Mr. Morgan was "… not engaged in a food delivery on the Delivery Dudes platform at the time of the [A]ccident."

42.     In fact, Mr. Morgan's own counsel stated in a June 2, 2023, letter to Erie that "Mr. Morgan's Vehicle […] was never hired by or rented to others for a fee. Nor was Mr. Morgan's vehicle ever available for hire by the public. Mr. Morgan had no passengers, food or other goods in his Vehicle at the time of the MVA. He was not engaged in any commercial activity and was, at most, commuting to his place of employment. Even if Mr. Morgan had food or other goods in his Vehicle for delivery at the time of the MVA – which he did not – Exclusion 9 does not apply."

43.     The Voyager Policy also contains an "other insurance" provision that makes it excess for autos not owned by Delivery Dudes, e.g., relative to Erie and Mr. Morgan's private auto:

> L.     Other Insurance
>
> 1.     For any covered **auto** you own, this policy provides primary insurance. For any covered **auto** you don't own, the insurance provided by this policy is excess over any other collectible insurance. . . . .
>
> * * *
>
> 4.     When this policy and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of this policy bears to the total of the limits of all the coverage forms and policies covering on the same basis. . . . .

**B.      The Erie Policy**

44.      On March 23, 2020, Erie issued Policy Number Q03-2314765, including the Pennsylvania Policy Change Endorsement, with a Policy Period end of March 23, 2021, that provided Liability Protection for Bodily Injury of $100,000 per person or $300,000 per accident for Mr. Morgan's 217 Subaru Legacy ("Insured Auto").

45.      A true and correct copy of the Erie Policy is attached hereto as Exhibit D.

46.      Under its policy, Erie is obligated to provide Mr. Morgan with a defense on a primary basis in connection with the Underlying Actions.

47.      The automobile driven by Mr. Morgan at the time of the Accident is a "covered auto" listed on the Erie Policy's declaration page.

48.      The Erie Policy excludes vehicles while they are "hired or rented" or "available for hire":

> "**We**" do not cover:
>
> * * *
>
> 9.      an "**auto we insure**" while hired or rented to others for a fee or while available for hire by the public. "**We**" will protect "**you**" or a "**relative**" held responsible for damages while "**occupying**" but not driving such a vehicle, if it is a "**nonowned auto**." Fee does not include payment received in a car pool or for trips for nonprofit social, educational, or **charitable agencies**. . . . .

49.      Notwithstanding that the Accident occurred 14 minutes after Mr. Morgan completed his last delivery, Erie has refused even to defend Mr. Morgan against the Underlying Actions.

50.      Moreover, the Court in the Morgan Coverage Action found this exclusion ambiguous and therefore construed it in favor of Mr. Morgan and against Erie.  It granted summary judgment in favor of Mr. Morgan and ordered Erie to indemnify and defend Mr. Morgan against

"all claims asserted against him arising out of an automobile accident occurring on July 10, 2020." Exhibit A, Order, at 2.

51.    To date, Erie has not paid court costs, hired a lawyer, or in any way furnished a legal defense to Mr. Morgan to defend him against the Underlying Actions despite the Court Order.

52.    The Erie Policy also provides under its "other insurance" provision that it is primary for "autos [Erie] insures," which includes owned autos listed on the policy's declaration page, such as the auto Mr. Morgan was driving at the time of the Accident:

> **OTHER INSURANCE**
>
> This policy provides primary insurance for any "**owned auto we insure**." . . . .

**C.    Mr. Morgan's Request for Coverage under the Erie Policy**

53.    On July 10, 2020, Mr. Morgan filed a claim with Erie, notifying Erie of the Accident and requesting that Erie defend and indemnify him under the Erie Policy for all claims arising from the Accident.

54.    On July 22, 2020, Erie refused "to extend coverage" to Mr. Morgan for the Accident because his Erie Policy "does not provide coverage while you are hired or rented by others for a fee." A copy of Erie's July 22, 2020 denial letter is attached hereto as Exhibit E.

55.    On August 18, 2020, Mr. Morgan urged Erie to reconsider its denial and explained that he "was not working for [Delivery Dudes]" at the time of the Accident and that Erie had "no basis to deny a duty to defend" to him.

56.    On August 21, 2020, Erie informed Mr. Morgan that its "denial w[ould] stand and there w[ould] be no coverage for th[e] [A]ccident."

57.    On December 8, 2021, Voyager issued a letter to Erie advising that Erie's refusal to provide defense to Mr. Morgan due to a "delivery or food delivery exclusion" was in error, as Mr. Morgan was not on a delivery at the time of the Accident.

58.    Voyager advised that "Mr. Morgan [had] completed his last delivery of the evening at approximately 9:12 p.m., well before the time of the collision," and "Mr. Morgan was neither assigned nor accepted any additional orders through the Delivery Dudes platform following his completion of the referenced delivery."

59.    Voyager further advised that to the extent both Policies were implicated, the Voyager Policy would be excess of the Erie Policy, pursuant to the "Other Insurance" clause in the Voyager Policy.

60.    To date, despite several requests by Mr. Morgan and Voyager, Erie has refused to agree to defend and indemnify Mr. Morgan against the claims in the Underlying Actions under the terms of Mr. Morgan's Erie Policy.

61.    As a result, to date, Voyager has paid all legal expenses incurred by Mr. Morgan for his defense against the claims asserted against him in the Underlying Actions.

## COUNT I
## DECLARATORY RELIEF – ERIE MUST ASSUME FROM VOYAGER A PRIMARY DUTY TO DEFEND MR. MORGAN IN THE UNDERLYING ACTIONS

62.    Voyager repeats and incorporates by reference the allegations in paragraphs 1 through 61 of this Complaint.

63.    An actual controversy exists between Voyager and Erie as to the priority of defense obligations as between Voyager and Erie.  Erie contends that it does not owe Mr. Morgan a primary duty to defend because of Exclusion 9 in the Erie Policy.  On the other hand, Voyager contends that Erie owes a primary duty to defend Mr. Morgan on account of the Policies' respective "other insurance" clauses.

64.    A judicial determination is necessary and appropriate at this time so that Erie will assume from Voyager a complete and primary defense of Mr. Morgan in the Underlying Actions. Erie's refusal to assume Mr. Morgan's defense has directly impacted Voyager, as Voyager has

been required to pay the full defense unnecessarily, and Erie's non-participation also impacts the parties' ability to settle the Underlying Actions.

<u>**COUNT II**</u>
**EQUITABLE SUBROGATION – DEFENSE COSTS**

65.     Voyager repeats and incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

66.     Erie was primarily obliged to provide Mr. Morgan with a defense in connection with the Underlying Actions.

67.     Erie has wrongfully refused to provide Mr. Morgan with a defense in the Underlying Actions.

68.     Since Erie has wrongfully refused to provide Mr. Morgan with a defense against the Underlying Actions, Voyager has been providing Mr. Morgan with this defense pursuant to a complete reservation of rights.

69.     As a result of the foregoing, Mr. Morgan has an existing, assignable cause of action against Erie, which Mr. Morgan could have asserted for his own benefit and may have had to assert had Voyager not stepped in and provided a defense to Mr. Morgan.

70.     By providing a defense to Mr. Morgan in the Underlying Actions, Voyager is subrogated to the rights of Mr. Morgan and stands in his shoes to seek coverage from Erie under the doctrine of subrogation.

71.     Consequently, Erie must reimburse Voyager for the full amount of costs that Erie should have paid towards Mr. Morgan's defense in the Underlying Actions under the terms of the Erie Policy.

## COUNT III
## EQUITABLE CONTRIBUTION – DEFENSE COSTS

72.     Voyager repeats and incorporates by reference the allegations in paragraphs 1 through 71 of this Complaint.

73.     Voyager seeks equitable contribution from Erie for defense costs expended by Voyager in the defense of Voyager and Erie's mutual insured, Mr. Morgan, in the Underlying Actions.  Erie has an obligation to pay the defense costs incurred by Voyager on behalf of Mr. Morgan as a primary insurer, for the reasons stated above.

74.     As a primary carrier, Erie must provide a primary defense for Mr. Morgan.

75.     Erie must therefore reimburse Voyager for the full amount that Voyager has paid towards Mr. Morgan's defense.

76.     Based on the foregoing, Voyager is entitled to a judgment in the amounts it has paid in excess of its fair share.

## COUNT IV
## BAD FAITH REFUSAL TO DEFEND (BY SUBROGATION AND ASSIGNMENT)

77.     Voyager realleges and incorporates by reference the allegations in paragraphs 1 through 76 of this Complaint.

78.     Erie's wrongful failure to pay any amounts towards Mr. Morgan's defense in the Underlying Actions – *even in the face of a Court order requiring it to do so* – was unreasonable and violated its implied covenant of good faith and fair dealing to its insured, Mr. Morgan.

79.     Erie's reliance on Exclusion 9 was an improper basis to refuse to undertake Mr. Morgan's defense in the Underlying Actions especially as Pennsylvania's four corners rule prohibits Erie from relying on extrinsic evidence.

80.    As a result of Erie's improper refusal to defend Mr. Morgan in the Underlying Actions, which in turn forced Voyager to pay for the cost of Mr. Morgan's defense in those actions in the place of Erie, Voyager subrogates to Mr. Morgan's rights to sue in tort.

81.    In addition, Mr. Morgan has assigned to Voyager his right to sue Erie in bad faith on account of their egregious refusal to defend even after the Court's Order requiring it to do so.

82.    Accordingly, Voyager seeks not only the defense costs that Erie should have paid, but also the attorney's fees on account of Erie's breach of the covenant of good faith and fair dealing.

## **REQUESTED RELIEF**

WHEREFORE, Voyager respectfully requests judgment in its favor and against Erie as follows:

1.    For a declaration that Erie owes a primary duty to defend Mr. Morgan in the Underlying Actions;

2.    For damages for Erie's failure and refusal to participate in the defense of Mr. Morgan in the Underlying Actions;

3.    For pre-judgment interest on all damages awarded;

4.    For costs of suit herein, including reasonable attorney's fees; and

5.    For such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues permitted by law.

**SWEENEY & SHEEHAN, P.C.**

By: _/s/ Louis J. Vogel, Jr._
    Louis J. Vogel, Jr. (PA ID No. 314234)
    1515 Market Street, 19th Floor
    Philadelphia, PA  19102
    (215) 563-9811
    louis.vogel@sweeneyfirm.com

**TITTMANN WEIX LLP**

Raymond J. Tittmann (*pro hac vice*
application forthcoming)
Tracey M. Jervis (PA Bar No. 327613)
121 South Broad Street, 15th Floor
Philadelphia, PA 19107
(215) 318-2272
rtittmann@tittmannweix.com
tjervis@tittmannweix.com

*Attorneys for Plaintiff,*
*Voyager Indemnity Insurance Company*

DATED:  February 24, 2026

# EXHIBIT A

KEVIN MORGAN,

               Plaintiff,

    v.

THE ERIE INSURANCE EXCHANGE,
CAROLIN ORTIZ-SANDOVAL, as
Administratrix of the Estate of Kevin
Canals Ortiz, CAROLIN ORTIZ-
SANDOVAL, as Administratrix of the
Estate of Kenneth J. Ortiz,
CAROLIN ORTIZ-SANDOVAL,
individually and in her own right,
CARLOS RIVERA-ORTIZ, KATIA
ZENO, JOBBLE INC., DELIVERY
DUDES FRANCHISE SYSTEM, LLC
and PIKE REPUBLIC, LLC

               Defendants.

IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW
DOCKET NO. 24-1821

ASSIGNED TO: JAMES E. GAVIN, J.

---

JOBBLE, INC.,

               Plaintiff,

    v.

CRUM & FORSTER SPECIALTY
COMPANY, CAROLIN ORTIZ-
SANDOVAL, as Administratrix of the
Estate of Kevin Canals Ortiz, CAROLIN
ORTIZ-SANDOVAL, as Administratrix
of the Estate of Kenneth J. Ortiz,
CAROLIN ORTIZ-SANDOVAL,
Individually and in her own right,
CARLOS RIVERA-ORTIZ, KATIA
ZENO, JOBBLE, INC., DELIVERY
DUDES FRANCHISE SYSTEM, LLC
And PIKE REPUBLIC, LLC

               Defendants.

IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW
DOCKET NO. 24-1821

ASSIGNED TO: JAMES E. GAVIN, J.

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

**DECISION AND ORDER**       **OCTOBER 8, 2025**       **JAMES E. GAVIN, J.**

**INTRODUCTION**

    This case is presented to the Court on cross-motions for summary judgment filed by the

Plaintiff, Kevin Morgan (hereinafter referred to as "Morgan") and the Defendant, The Erie

Insurance Exchange (hereinafter referred to as "Erie") in this declaratory judgment action. The issue to be resolved relates to whether Erie has a duty to defend and indemnify Morgan as a result of an automobile accident occurring in July of 2020.

## SUMMARY OF FACTS

Erie issued a personal automobile insurance policy to Morgan bearing Policy No. Q03 2314765 (hereinafter referred to as the "Policy"). The Policy covered Morgan for the policy period from March 23, 2020 through March 23, 2021 and was in effect in July of 2020.

On July 10, 2020, while operating a motor vehicle that was insured under the Policy, Morgan was involved in an automobile accident on Route 222 in Berks County, Pennsylvania resulting in the death of two (2) individuals and the injury of a third. At the time of the accident, Morgan was using his 2017 Subaru Legacy while in the course of his employment as a food delivery person.

Morgan was sued in a case captioned *Carolin Ortiz-Sandoval, Administratix of the Estate of Kevin Canals Ortiz and Carolin Ortiz-Sandoval, Individually and in Her Own Right, and Carolin Ortiz-Sandoval, Administratix of the Estate of Kenneth J. Ortiz and Carolin Ortiz-Sandoval, Individually and in Her Own Right v Karia Zeno, Kevin Morgan, and Jobble, Inc., Berks County Court of Common Pleas Docket No. 22-9593* (hereinafter referred to as the "Ortiz-Sandoval Litigation"). Morgan was also sued in a related case captioned *Carlos Rivera-Ortiz v Karia Zeno, Kevin Morgan, Jobble, Inc. and Delivery Dudes, LLC, Berks County Court of Common Pleas Docket No. 22-9764* (hereinafter referred to as the "Ortiz-Rivera Litigation").

The complaints in both the Ortiz-Sandoval Litigation and the Ortiz-Rivera Litigation are based upon the automobile accident on July 10, 2020. They allege that on July 10, 2020, Morgan was operating his automobile in the course and scope of his employment as a food delivery person.

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

At the time, Morgan allegedly failed to appreciate the presence of stopped and broken-down vehicles on the highway. As a result, it was alleged that Morgan was negligent and caused an accident that resulted in serious injuries and death. It was alleged that the accident was "caused by the negligence and carelessness of Morgan acting individually and on behalf of Jobble and/or Delivery Dudes."

Although Morgan submitted the complaints to Erie for a defense and indemnity, Erie denied coverage asserting that the July 10, 2020 automobile accident was excluded for coverage under the Policy because it contended that his automobile was hired or rented to others for a fee at the time of the accident. Specifically, Erie relied on an exclusion in the policy that read as follows:

**EXCLUSIONS – What We Do Not Cover**
**"We"** do not cover:
***

9.     an "**auto we insure**" while hired or rented to others for a fee or while available to hire by the public. "**We**" will protect "**you**" or a "**relative**" held responsible for damages while "**occupying**" but not driving such a vehicle, if it is a "**nonowned auto**." Fee does not include payment received in a car pool or for trips for nonprofit, social, educational, or charitable agencies.

**DISCUSSION**

**I**

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure authorizes the filing of a motion for summary judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. *Pa.R.Civ.P. 1035.2*. Once a motion for summary

3

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

judgment has been made, the nonmoving party may not rest on the allegations or denials in the pleadings. To the contrary, the nonmoving party must set forth facts that are in dispute. *Kniaz v Benton Borough, 164 Pa.Cmwlth. 109, 114, 642 A.2d 551, 553 (1994).* A court may grant summary judgment only when the right to such a judgment is clear and free from doubt. See *Sevast v Kakouras, 591 Pa. 44, 53, 915 A.2d 1147, 1153 (2007).*

The Court finds that there are no genuine disputes as to material fact regarding: (1) the fact that an automobile accident occurred, (2) Morgan was operating an insured car under the Policy at the time of the accident, (3) the policy was in effect at the time of the accident, (4) Morgan was sued as a result of the accident, and (5) Erie has declined to defend and indemnify on the basis of an exclusion in the Policy.

As a result of the foregoing, there being no genuine disputes as to any material facts, this case is ripe for disposition through summary judgment.

## II

The Plaintiff seeks declaratory judgment in his complaint. In Pennsylvania, declaratory judgment is governed by the Declaratory Judgments Act, *42 Pa.C.S.A. §7531, et. seq.* The general scope of the declaratory judgment remedy provides:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

*42 Pa.C.S.A. §7532.* It also allows courts to construe documents, including contracts such as insurance policies:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any

4

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

*42 Pa.C.S.A. §7533.*

The purpose of a declaratory judgment action is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations. *Osram Sylvania Products, Inc. Comsup Commodities, Inc., 845 A.2d 846, 849 Pa.Super. 2004).* A determination of the appropriateness of an action for declaratory judgment turns on whether an actual controversy exists where antagonistic claims are present indicating imminent and inevitable litigation or where a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and there is a challenge or denial of such asserted relation, status, right, or privilege by an adverse party who also has or asserts a concrete interest therein. *Liberty Mutual Insurance Company v S.G.S. Co., 456 Pa. 94, 100, 318 A.2d 906, 909 (1974).* The use of declaratory judgment is an appropriate remedy for the interpretation of insurance policies. See e.g. *Bottomer v Progressive Casualty Insurance Co., 816 A.2d 1172 (Pa.Super. 2003).*

Inasmuch as there is an actual dispute between the parties as to the duties imposed by an automobile insurance policy, this matter is properly before the Court on a claim for declaratory judgement.

## III

At its core, an insurance policy is a contract and it is subject to judicial review for the purposes of interpreting the intended meaning of the contractual language.

"The interpretation of an insurance contract is a matter of law and is generally performed by a court." *Kropa v. Gateway Ford*, 974 A.2d 502, 505 (Pa.Super. 2009), *appeal denied*, 605 Pa. 701, 990 A.2d 730 (2010). The goal of insurance contract interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). "[A] court is required to give effect to such language, if

5

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

unambiguous, but to interpret it in favor of the insured, if otherwise." *Lititz Mut. Ins. Co. v. Steely*, 567 Pa. 98, 104, 785 A.2d 975, 978 (2001).

Ambiguity in a contract exists "if the language at issue could reasonably be construed in more than one way." *Id.* Nevertheless, "[w]hether ambiguity exists cannot be resolved in a vacuum, ...but must instead be considered in reference to a specific set of facts." *Id.* In other words, the ambiguity cannot be measured in the abstract; rather, the policy language must be tested against the facts of the case. *See Wagner v. Erie Ins. Co.*, 801 A.2d 1226 (Pa.Super. 2002), *aff'd*, 577 Pa. 563, 847 A.2d 1274 (2004). No ambiguity exists if after close review, it appears that only a lawyer's ingenuity has made the language uncertain. *Lower Paxton Twp. v. U.S. Fidelity & Guar. Co.*, 383 Pa.Super. 558, 557 A.2d 393, 402 (1989), *appeal denied*, 523 Pa. 649, 567 A.2d 653 (1989).

"When analyzing a policy, words of common usage are to be construed in their natural, plain, and ordinary sense." *Continental Cas. Co. v. Pro Machine*, 916 A.2d 1111, 1118 (Pa.Super. 2007). "[W]hen 'the language of the [insurance] contract is clear and unambiguous, a court is required to give effect to that language.' " *Mitsock v. Erie Ins. Exchange*, 909 A.2d 828, 831 (Pa.Super. 2006) (quoting *Madison Const. Co., supra*, at 606, 735 A.2d at 106). A court must not distort the meaning of the language or resort to a strained contrivance to find an ambiguity. *Mitsock, supra*.

> [T]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation[s] of the insured. In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. However, while reasonable expectations of the insured are focal points in interpreting the contract language of insurance policies, an insured may not complain that [its]...reasonable expectations were frustrated by policy limitations which are clear and unambiguous. Like every other contract, the goal of interpreting an insurance contract is to ascertain the intent of the parties as manifested by the language of the policy.

*St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28, 30 (1993) (*en banc* ) (internal citations omitted).

*Consolidated Rail Corporation v ACE Property & Casualty Insurance Co.*, 182 A.3d 1011, 1026 (Pa.Super. 2018).

## IV

The applicable law having been detailed above the Court will proceed to analyze the undisputed facts that are material to the resolution of this case and apply the law.

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

The dispute in this case is that coverage was denied on the basis of an exclusion. "Where coverage is denied based on an exclusion, the burden is on the insurer to prove the applicability of the exclusion." *Watchword Worldwide v Erie Insurance Exchange, 308 A.3d 294, 300 (Pa.Super. 2024).* When an insurer relies upon an exclusion, it is effectively asserting an affirmative defense and therefore the insurer bears the burden of proof. *Erie Insurance Group v Catania, 95 A.3d 320, 322-323 (Pa.Super. 2014).* "Generally, exclusions from coverage are to be narrowly construed." *Rother v Erie Insurance Exchange, 57 A.3d 116, 118 (Pa.Super. 2012).*

When asked to determine whether an insurance policy provides coverage for a suit brought against an insured, a court must compare the terms of the insurance policy to the allegations of the complaint filed against the insured. If a complaint against the insured alleges facts that are potentially within the scope of the policy's coverage, the insurer has a duty to defend the action until all covered claims are removed from the action. *Penn Psychiatric Center, Inc. v United States Liability Insurance Company, 257 A.3d 1242, 1249 (Pa.Super. 2021).* Thus, a decision in this case turns on a comparison of the exclusion with the facts alleged in the complaints against Morgan.

By its own admission, Erie was unable to provide the Court with any caselaw that was directly on point[1] or otherwise cite to any cases that have specifically ruled upon or construed the exclusion at issue in this case. This Court has conducted a full nationwide search and has not found any case where the exact operative phrase within the policy, i.e. "while hired or rented to others for a fee or while available to hire by the public" was discussed.

The case of *Allstate Insurance Co. v Barnhardt, 1986 WL 1084 (E.D. Pa. 1986)* presented a remarkably similar exclusion. The court in *Barnhardt* was presented a declaratory judgment action in which the following exclusion was in dispute: "This coverage does not apply to liability

---

[1] A case on point would involve the same facts and an identical exclusion.

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

for: (1) your insured auto while hired or rented to others for a charge, or any auto you are driving while available for hire by the public." Finding that the language was not ambiguous as applied to the facts in the *Barnhardt* case, the court said, "It clearly sets forth that no coverage will be afforded if the insured vehicle is used for hire or rental purposes."

The underlying facts of the *Barnhardt* case, however, are very different from those in this case and are critically important to understand the court's ruling. In April of 1984, Ms. Barnhardt had been employed as a secretary-receptionist by a business known as "B & A Transportation", which was a business that transported paying customers to Graterford Prison to visit inmates. On April 26, 1984, Ms. Barnhardt was requested to use her vehicle to transport scheduled passengers to and from Graterford Prison. Ms. Barnhardt picked up three passengers, each of whom had paid a fee to B & A Transportation to be transported to and from Graterford. Shortly after picking up the last of the three passengers, Ms. Barnhardt was involved in an automobile accident. Under these circumstances, the *Barnhardt* case found the exclusion was not ambiguous.

Comparing the facts of this case with those in *Barnhardt* raises a serious question as to whether Morgan's automobile was used for hire or rental purposes. Morgan taxing people from one place to another. On the contrary, Morgan was using his own automobile while he was working as a delivery person. Theoretically, he could have performed that job on bicycle or on foot. There was no evidence that it was Morgan's car that was hired, as opposed to the person.

Notwithstanding the lack of authority with an identical exclusion and facts, there are some cases that present somewhat similar to the facts in this case. In *Prudential Property And Cauatly Insurance v Sartno, 588 Pa. 205, 212, 903 A.2d 1170, 1174 (2006),* the Pennsylvania Supreme Court found that a "Cars for Hire" exclusion in an automobile insurance policy was ambiguous and the insurer was required to defend. The facts in *Sartno* were undisputed and were similar to

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

8

this case, however the language of the exclusion was different. Specifically, the exclusion provided, ""will not pay for bodily injury ... caused by anyone using a car [insured by Prudential] **to carry people or property for a fee.**" *588 Pa. at 213, 903 A.2d at 1175.* Finding the language in the policy to be ambiguous, the Pennsylvania Supreme Court explained the problem as follows:

> The instant matter is a prime example of language in a policy that can be understood in more than way. Sartno prefers one interpretation; Prudential favors the other. Regardless of which one is "right" or "wrong," the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured. "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999).
>
> The insurance company is the drafter of the terms of the policies it issues to its insureds, and, "being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.,* 80 Ohio St.3d 584, 687 N.E.2d 717, 719 (1997) (internal quotation marks omitted).

*588 Pa. at 216-217, 903 A.2d at 1177.*

In a different case that involved a taxi driver involved in an accident, the insurer invoked an exclusion that read as follows: "There is no coverage for use by **any insured** of any vehicle to carry persons or property for a fee. However, shared-expense car pools will not be considered carrying persons for a fee." *Ratush v Nationwide Mutual Insurance Co., 422 Pa.Super. 389, 390 n.1, 619 A.2d 733 n.1 (1992).* Explaining its decision, the Pennsylvania Superior Court said:

> Thus, in the instant case, the language of the policy was clear. A distinction was created between vehicles owned and operated privately, including vehicles used for car pooling purposes, and vehicles being used to carry passengers for hire. The vehicle being operated by appellant at the time of his accident was a taxicab whose purpose was to carry passengers for compensation. Applicability of the policy's exclusion did not vary according to whether the taxi was occupied or unoccupied at any given moment or according to whether its driver, at that time, did or did not intend to pick up passengers.

*422 Pa.Super. at 392, 619 A.2d at 734.*

9

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

In an effort to construe the exclusion at issue in this case narrowly, the Court finds that the Policy does not define the terms "hired," "rented," or "available." In light of the fact that Erie chose the language in its own insurance policy, along with the importance it is attaching to this provision, the lack of definitions render the exclusion unclear.

Much like the *Sartno* case, the parties each prefer a different interpretation of the exclusion set forth in the policy. Erie argues that the exclusion applies under the circumstances of this case because at the time of the accident Morgan's vehicle was hired or rented by his employers and the food delivery customers to transport food from restaurants to customers in exchange for delivery fees paid to Morgan by his employer and delivery fees paid by customers to Morgan's employer. See *Brief in Support of Defendant Erie Insurance Exchange's Motion for Summary Judgment, p. 8.* Conversely, Morgan argues the exclusion only excludes coverage for a vehicle being used or available for use by a customer paying the fee and therefore is rented, hired, or available for hire by the public. He goes on to contend that the exclusion applies to vehicles providing transportation services such as an Uber, Lyft, or other rideshare customers, since the vehicle itself is being used by the customer as part of the services for which the customer is paying a fee. See *Plaintiff's Argument Brief in Support of His Motion for Summary Judgment, pp. 13 – 14.* Since both of these interpretations are reasonable, they render the exclusion in the Policy ambiguous. Where a provision of an insurance policy is ambiguous, it must be construed in the favor of the insured and against the insurer.

In light of the foregoing analysis, the Court finds that Morgan's motion for summary judgment should be granted and Erie's motion for summary judgment should be denied.

10

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

## CONCLUSION

Upon a complete and through review of the record, there are no disputes as to any material fact. Further, the exclusion relied upon by Erie is ambiguous and must be construed in the favor of Morgan and against Erie.

For all of the reasons stated herein, this Honorable Court is entering the attached Order.

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

KEVIN MORGAN,

          Plaintiff,

    v.

THE ERIE INSURANCE EXCHANGE,
CAROLIN ORTIZ-SANDOVAL, as
Administratrix of the Estate of Kevin
Canals Ortiz, CAROLIN ORTIZ-
SANDOVAL, as Administratrix of the
Estate of Kenneth J. Ortiz,
CAROLIN ORTIZ-SANDOVAL,
individually and in her own right,
CARLOS RIVERA-ORTIZ, KATIA
ZENO, JOBBLE INC., DELIVERY
DUDES FRANCHISE SYSTEM, LLC
and PIKE REPUBLIC, LLC

          Defendants.

IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW
DOCKET NO. 24-1821

ASSIGNED TO: JAMES E. GAVIN, J.

---

JOBBLE, INC.,

          Plaintiff,

    v.

CRUM & FORSTER SPECIALTY
COMPANY, CAROLIN ORTIZ-
SANDOVAL, as Administratrix of the
Estate of Kevin Canals Ortiz, CAROLIN
ORTIZ-SANDOVAL, as Administratrix
of the Estate of Kenneth J. Ortiz,
CAROLIN ORTIZ-SANDOVAL,
Individually and in her own right,
CARLOS RIVERA-ORTIZ, KATIA
ZENO, JOBBLE, INC., DELIVERY
DUDES FRANCHISE SYSTEM, LLC
And PIKE REPUBLIC, LLC

          Defendants.

IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW
DOCKET NO. 24-1821

ASSIGNED TO: JAMES E. GAVIN, J.

## ORDER

AND NOW, this 8th Day of October, 2025, upon consideration of the Plaintiff, Kevin Morgan's Motion for Summary Judgment and Defendant, The Erie Insurance Company's Cross-Motion for Summary Judgment, and after each party having had a full opportunity to brief and argue their respective positions, this Honorable Court hereby ORDERS and DIRECTS as follows:

1

1.  The Motion for Summary Judgment filed by the Plaintiff, Kevin Morgan is GRANTED.

2.  The Cross-Motion for Summary Judgment filed by the Defendant, The Erie Insurance Company is DENIED.

3.  Judgment shall be entered in the favor of the Plaintiff, Kevin Morgan, and against the Defendant, The Erie Insurance Exchange and this Honorable Court hereby DECLARES that the Defendant, the Erie Insurance Exchange is obligated under Personal Auto Policy No. Q03 2314765 to indemnify and defend the Plaintiff, Kevin Morgan against all claims asserted against him arising out of an automobile accident occurring on July 10, 2020.

BY THE COURT:

JAMES E. GAVIN, J.

Received County of Berks Prothonotary's Office on 10/09/2025 8:55 AM Docket No. 24-1821

2

# EXHIBIT B

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

DUFFY + FULGINITI
One Liberty Place
1650 Market Street, 55th Floor
Philadelphia, PA 19103
By: Ken Fulginiti, Esquire
Identification No. 58944
kff@duffyfirm.com
By: Sarah F. Dooley, Esquire
Identification No. 315248
sdooley@duffyfirm.com
(215) 238-8700

Attorneys for Plaintiffs, Estate
of Kevin Canals Ortiz and
Estate of Kenneth J. Ortiz

| | |
|---|---|
| CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL, INDIVIDUALLY and IN HER OWN RIGHT and CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL, INDIVIDUALLY and IN HER OWN RIGHT<br><br>     v.<br><br>KATIA ZENO, KEVIN MORGAN, JOBBLE, INC., and DELIVERY DUDES FRANCHISE SYSTEM, LLC<br><br>    and<br><br>PIKE REPUBLIC, LLC<br>420 North Park Drive, Suite 103<br>Wyomissing, PA 19610 | Court of Common Pleas<br>Berks County<br><br>No. 22-9593 |

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

# PLAINTIFFS' THIRD AMENDED COMPLAINT

### NOTICE TO DEFEND

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER [OR CANNOT AFFORD ONE], GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW [TO FIND OUT WHERE YOU CAN GET LEGAL HELP].  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

BERKS COUNTY BAR ASSOCIATION
544 Court Street
Reading, Pennsylvania 19601
610-375-4591

### AVISO DE DEFENDER

Le han demandado en corte.  Si usted desea defender contra las demandas dispuestas en las páginas siguientes, usted debe tomar la acción en el plazo de veinte (20) días después de esta queja y el aviso es servido, incorporando un aspecto escrito personalmente o por el abogado y archivando en escribir con la corte sus defensas u objeciones a las demandas dispuestas contra usted.  Le advierten que si usted no puede hacer así que el caso puede proceder sin usted y un juicio puede ser nentered contra usted por la corte sin aviso adicional para cualquier dinero demandado en la queja o para cualquier otra demanda o relevación pedida por el demandante.  Usted puede perder el dinero o la característica u otra endereza importante a usted.

USTED DEBE LLEVAR ESTE PAPEL SU ABOGADO INMEDIATAMENTE.  SI USTED NO TIENE Un ABOGADO, VAYA A O LLAME POR TELÉFONO La OFICINA DISPUESTA ABAJO.  ESTA OFICINA PUEDE PROVEER De USTED La INFORMACIÓN SOBRE EMPLEAR A un ABOGADO.

SI USTED NO PUEDE PERMITIRSE AL HIRE A un ABOGADO, ESTA OFICINA PUEDE PODER PROVEER DE USTED LA INFORMACIÓN SOBRE LAS AGENCIAS QUE LOS SERVICIOS JURÍDICOS de la OFERTA de MAYO A LAS PERSONAS ELEGIBLES EN Un HONORARIO REDUCIDO O NINGÚN HONORARIO.

ASOCIACIÓN DE LA BARRA DE BERKS
REMISIÓN DEL ABOGADO Y SERVICIO INFORMATIVO
544 Court Street
Reading, Pennsylvania 19601
610-375-4591

2

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Plaintiffs, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, and Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right by and through her attorneys, Duffy + Fulginiti, states the following by way of Amended Complaint:

1.   Plaintiff, Carolin Ortiz-Sandoval, is a citizen and resident of the Commonwealth of Pennsylvania and resides at the address indicated in the caption.

2.   At all times relevant hereto, Carolin Ortiz-Sandoval is and was the mother of the decedents Kevin Canals Ortiz and Kenneth J. Ortiz.

3.   Carolin Ortiz-Sandoval is the Administratrix of the Estates of Kevin Canals Ortiz and Kenneth J. Ortiz.  *See* Letters of Administration (Kevin), attached hereto as Exhibit "1"; *see* Letters of Administration (Kenneth), attached hereto as Exhibit "2".

4.   Decedents, Kevin Canals Ortiz and Kenneth J. Ortiz were both adult individuals residing in Reading, Pennsylvania at the time of their deaths.

5.   Kevin Canals Ortiz died on July 10, 2020 at the age of 26.

6.   Kenneth J. Ortiz died on July 10, 2020 at the age of 22.

7.   Kevin Canals Ortiz is survived by his mother, Carolin Ortiz-Sandoval, his father, Emilio Canals, as well as his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

8.   Kenneth J. Ortiz is survived by his mother, Carolin Ortiz-Sandoval and his child, Kenniel J. Ortiz.

3

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

9.    Kenneth J. Ortiz's father, Raymond Arndt, predeceased him.

10.   Kevin Canals Ortiz's relatives entitled to recovery under the laws of intestacy are his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

11.   Kenneth J. Ortiz's relatives entitled to recovery under the laws of intestacy is his child, Kenniel J. Ortiz.

12.   Defendant, Katia Zeno (hereinafter "Zeno"), is a citizen and resident of the Commonwealth of Pennsylvania and resides at the address indicated in the caption.

13.   Defendant, Kevin Morgan (hereinafter "Morgan"), is a citizen and resident of the Commonwealth of Pennsylvania and resides at the address indicated in the caption.

14.   Defendant, Jobble, Inc. (hereinafter "Jobble"), is a Delaware corporation with a principal place of business at 1 Lincoln Street, Floor 24, Boston, MA 02111.

15.   At all times relevant hereto, Jobble regularly, continuously, and systematically conducted business in the Commonwealth of Pennsylvania and in the County of Berks.

16.   Defendant, Delivery Dudes Franchise System, LLC (hereinafter "Delivery Dudes"), is a Florida limited liability company with a principal place of business at 102 NE 1st Avenue, Delray Beach, FL 33444.

17.   At all times relevant hereto, Delivery Dudes regularly, continuously, and systematically conducted business in the Commonwealth of Pennsylvania and in the County of Berks.

4

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

18.     Defendant, Pike Republic, LLC (hereinafter "Pike Republic"), is a Pennsylvania limited liability company with a principal place of business at 420 North Park Drive, Suite 103, Wyomissing, PA 19610.

19.     At all times relevant hereto, Pike Republic regularly, continuously, and systematically conducted business in the Commonwealth of Pennsylvania and in the County of Berks.

20.     At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic, by and through their agents, representatives, employees, servants, workmen, and/or contractors, operated vehicles and conducted business on a daily basis in the County of Berks.

21.     At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic was in the business of delivering food, *inter alia*.

22.     At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic was responsible for the safety of the vehicle being operated by its agents, representatives, employees, servants, workmen, and/or contractors, including Morgan.

23.     At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic was aware that failure to properly inspect their vehicles could result in serious, permanent, and life altering/life ending injuries to individuals.

24.     At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic was aware that failure to hire, train, supervise, and/or timely discharge agents, representatives, employees, servants, workmen, and/or contractors could result in serious, permanent, and life altering/life ending injuries to individuals.

5

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

25.    At all times relevant hereto, Morgan, Jobble, Delivery Dudes, and/or Pike Republic, acted through their agents, representatives, employees, servants, workmen, and/or contractors, acting within the course and scope of their employment.

26.    At all times relevant hereto, Morgan was an agent, representative, employee, servant, workman, and/or contractor on behalf of Jobble, Delivery Dudes, and/or Pike Republic, acting in the course and scope of his employment.

27.    At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic understood that in order to safely deliver food, they were required to hire individuals with special driving training and skills.

28.    At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic were required to supervise and monitor their agents, representatives, employees, servants, workmen, and/or contractors and their drivers to ensure they maintained adequate skills to drive professionally and commercially.

29.    At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic were aware that the drivers they employed were required to be skilled and trained in operating commercial vehicles or individuals on the road could be seriously harmed or killed.

30.    At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic were aware that they had a duty to investigate and evaluate the background of their potential drivers, as well as their current drivers, to make sure their driving records were consistent with individuals who would be professionally driving vehicles.

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

31. At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic were aware that they had a responsibility to continually monitor the driving records of their new or existing drivers to ensure their drivers were not a hazard to those on the road.

32. At all times relevant hereto, Jobble, Delivery Dudes, and/or Pike Republic were aware that drivers who have repeat moving violations should be properly trained and re-trained, must be closely supervised, and/or should be discharged from employment as a driver.

33. On July 10, 2020, and at all times relevant hereto, Zeno was operating a vehicle that broke down on Route 222 in Pennsylvania.

34. On July 10, 2020, and at all times relevant hereto, Morgan was operating a vehicle in the course and scope of his employment with Jobble, Delivery Dudes, and/or Pike Republic on Route 222.

35. On July 10, 2020, Kevin Canals Ortiz and Kenneth J. Ortiz stopped to help the individuals in the broken-down Zeno vehicle on Route 222.

36. Morgan, on behalf of Jobble, Delivery Dudes, and/or Pike Republic, failed to appreciate the stopped and broken-down vehicles on Route 222, and struck Kevin Canals Ortiz and Kenneth J. Ortiz, ultimately killing them.

37. As a direct and proximate result of the aforementioned negligence and/or carelessness of the defendants, individually and by and through their agents, representatives, employees, servants, workmen, and/or contractors, Kevin Canals Ortiz and Kenneth J. Ortiz were ultimately killed as a result of the motor vehicle incident.

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

38. At all times relevant hereto, Morgan, Jobble, Delivery Dudes, and/or Pike Republic were fully aware that failure to properly operate their vehicles could cause catastrophic injuries to individuals on the road.

39. Prior to their deaths, Kevin Canals Ortiz and Kenneth J. Ortiz felt pain and suffered physically and emotionally.

40. These actions are based on the wrongful death provisions of the Judicial Code, *42 Pa. C.S.A. §8301* and *§5524(2)*, and the Pennsylvania Probate Estates and Fiduciary Code, Act of June 30, 1972, *20 Pa. C.S.A. §3373*, and the survival provisions of the Judicial Code, *42 Pa. C.S.A. §8302*.

41. The aforesaid decedents did not bring an action, and no action was brought against the defendants during the lifetime of the decedents for the injuries which resulted in their deaths, and no action for the wrongful death of said decedents has been commenced against the defendants on account of the grievances herein set forth.

**COUNT I – SURVIVAL**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. KATIA ZENO**

42. The Estate of Kevin Canals Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

43. The above accident and death of Kevin Canals Ortiz is the result of the negligence of Zeno.

44. The negligence of Zeno includes:

a.     failing to ensure her vehicle was safe to operate; and,

b.     failing to exercise due and proper care.

8

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

45.   As a result of the aforesaid acts and omissions of Zeno, defendant is liable to the Estate of Kevin Canals Ortiz for damages including, but not limited to, the following:

a.   decedent Kevin Canals Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b.   decedent Kevin Canals Ortiz's loss of income, support, and other losses;

c.   medical bills and expenses;

d.   loss of earnings and earning capacity; and

e.   all other damages provided by law.

46.   The negligence and carelessness of Zeno, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

47.   Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Katia Zeno, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT II – SURVIVAL**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. KEVIN MORGAN**

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

48.   The Estate of Kevin Canals Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

49.   The aforementioned accident was caused by the negligence and carelessness of Morgan, acting individually and on behalf of Jobble, Delivery Dudes, and/or Pike Republic.

50.   The negligence and carelessness of Morgan includes, but is not limited to:

a.   failing to operate a vehicle with due regard for the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

b.   failing to timely apply his brakes;

c.   failing to take proper evasive maneuvers;

d.   failing to appreciate traffic and road conditions;

e.   driving into the vehicles and individuals in front of him;

f.   striking the vehicles and individuals in front of him;

g.   operating a vehicle in disregard of the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

h.   failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kevin Canals Ortiz;

i.   failing to have said vehicle under proper and adequate control at the time of the accident;

j.   driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.   failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

10

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

l.     controlling, operating, and/or driving a vehicle in a careless manner;

m.    driving at an improper speed;

n.     failing to use other safety devices to check for the presence of other vehicles or individuals;

o.     failing to keep a proper lookout;

p.     failing to attend to the conditions around him;

q.     inattentive and careless driving;

r.     failing to operate a vehicle with due regard for conditions on the roadway;

s.     driving the vehicle at a speed that was unsafe for conditions;

t.     failing to bring the vehicle to a controlled stop prior to the collision;

u.     failing to use the horn to alert others of defendant's vehicle's status;

v.     driving on a portion of the road which rendered such vehicle operation unsafe;

w.    failing to keep a proper lookout;

x.     failing to warn other drivers that said vehicle was unfit for operation;

y.     failing to maintain said vehicle in proper operating condition;

z.     failing to maintain said vehicle in a reasonable safe condition;

aa.    failing to properly inspect said vehicle prior to operation;

bb.    failing to warn Kevin Canals Ortiz of said vehicle's presence, intended course of travel, and impending impact;

cc.    causing Kevin Canals Ortiz to suffer harm and death; and,

dd.    failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would

11

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

pose a serious risk of physical harm to persons in the position of Kevin Canals Ortiz.

51.   As a result of the aforesaid acts and omissions of Morgan, defendant is liable to the Estate of Kevin Canals Ortiz for damages including, but not limited to, the following:

   a.   decedent Kevin Canals Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

   b.   decedent Kevin Canals Ortiz's loss of income, support, and other losses;

   c.   medical bills and expenses;

   d.   loss of earnings and earning capacity; and

   e.   all other damages provided by law.

52.   The negligence and carelessness of Morgan, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

53.   Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

   WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Kevin Morgan, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT III – SURVIVAL

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
INDIVIDUALLY and IN HER OWN RIGHT v. JOBBLE, INC.**

54.    The Estate of Kevin Canals Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

55.    The aforementioned accident was caused by the negligence and carelessness of Jobble, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

56.    The negligence and carelessness of Jobble includes, but is not limited to:

   a.    failing to operate a vehicle with due regard for the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

   b.    failing to timely apply his brakes;

   c.    failing to take proper evasive maneuvers;

   d.    failing to appreciate traffic and road conditions;

   e.    driving into the vehicles and individuals in front of him;

   f.    striking the vehicles and individuals in front of him;

   g.    operating a vehicle in disregard of the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

   h.    failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kevin Canals Ortiz;

   i.    failing to have said vehicle under proper and adequate control at the time of the accident;

   j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

13

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

k.      failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.      controlling, operating, and/or driving a vehicle in a negligent manner;

m.      controlling, operating, and/or driving a vehicle in a careless manner;

n.      driving at an improper speed;

o.      failing to use other safety devices to check for the presence of other vehicles and individuals;

p.      failing to keep a proper lookout;

q.      failing to attend to the conditions around him;

r.      inattentive and careless driving;

s.      failing to operate a vehicle with due regard for conditions on the roadway;

t.      driving the vehicle at a speed that was unsafe for conditions;

u.      failing to bring the vehicle to a controlled stop prior to the collision;

v.      failing to use the horn to alert others of defendant's vehicle's status;

w.      driving on a portion of the road which rendered such vehicle operation unsafe;

x.      failing to keep a proper lookout;

y.      failing to warn other drivers that said vehicle was unfit for operation;

z.      failing to maintain said vehicle in proper operating condition;

aa.      failing to maintain said vehicle in a reasonable safe condition;

bb.      failing to maintain said vehicle in a reasonable state of repair;

cc.      failing to properly inspect said vehicle prior to operation;

14

dd.  failing to warn Kevin Canals Ortiz of said vehicle's presence, intended course of travel, and impending impact;

ee.  causing Kevin Canals Ortiz to suffer harm and death;

ff.  failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of Kevin Canals Ortiz;

gg.  failing to adopt safety policies regarding the operation of motor vehicles;

hh.  failing to follow safety policies regarding the operation of motor vehicles;

ii.  failing to adopt safety policies regarding the training of drivers;

jj.  failing to follow safety policies regarding the training of drivers;

kk.  failing to adopt safety policies regarding the discharge of drivers;

ll.  failing to follow safety policies regarding the discharge of drivers;

mm.  failing to adopt safety procedures regarding the operation of motor vehicles;

nn.  failing to follow safety procedures regarding the operation of motor vehicles;

oo.  failing to adopt safety procedures regarding the training of drivers;

pp.  failing to follow safety procedures regarding the training of drivers;

qq.  failing to adopt safety procedures regarding the discharge of drivers;

rr.  failing to follow safety procedures regarding the discharge of drivers;

ss.  failing to hire individuals who were fit for the positions for which they were hired;

tt.  failing to properly evaluate candidates for hire;

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

uu.    negligently entrusting a vehicle to the vehicle operator;

vv.    failing to properly investigate and evaluate agents, representatives, employees, servants, workmen, and/or contractors;

ww.    failing to properly train new hires and agents, representatives, employees, servants, workmen, and/or contractors;

xx.    failing to timely terminate agents, representatives, employees, servants, workmen, and/or contractors who lacked the requisite skills to perform their jobs safely;

yy.    failing to properly supervise agents, representatives, employees, servants, workmen, and/or contractors;

zz.    allowing Morgan to operate a vehicle when defendant knew or reasonably should have known that he was incapable of safe driving;

aaa.    violating *75 Pa. C.S. §3714* by driving carelessly;

bbb.    violating *75 Pa. C.S. §3714* by permitting Morgan to drive carelessly;

ccc.    violating *75 Pa. C.S. §3361* by driving a vehicle at an unsafe speed; and,

ddd.    violating *75 Pa. C.S. §3361* by permitting Morgan to drive a vehicle at an unsafe speed.

57.    As a result of the aforesaid acts and omissions of Jobble, defendant is liable to the Estate of Kevin Canals Ortiz for damages including, but not limited to, the following:

a.    decedent Kevin Canals Ortiz's pain, suffering, mental anguish, and loss of

16

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

life's pleasures;

b.     decedent Kevin Canals Ortiz's loss of income, support, and other losses;

c.     medical bills and expenses;

d.     loss of earnings and earning capacity; and

e.     all other damages provided by law.

58.     The negligence and carelessness of Jobble, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

59.     Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Jobble, Inc., in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

### COUNT IV – SURVIVAL
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
### ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
### INDIVIDUALLY and IN HER OWN RIGHT v. DELIVERY DUDES
### FRANCHISE SYSTEM, LLC

60.     The Estate of Kevin Canals Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

61.     The aforementioned accident was caused by the negligence and carelessness of Delivery Dudes, acting by and through its agents, representatives, employees,

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

servants, workmen, and/or contractors.

62.    The negligence and carelessness of Delivery Dudes includes, but is not limited to:

a.    failing to operate a vehicle with due regard for the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

b.    failing to timely apply his brakes;

c.    failing to take proper evasive maneuvers;

d.    failing to appreciate traffic and road conditions;

e.    driving into the vehicles and individuals in front of him;

f.    striking the vehicles and individuals in front of him;

g.    operating a vehicle in disregard of the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

h.    failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kevin Canals Ortiz;

i.    failing to have said vehicle under proper and adequate control at the time of the accident;

j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.    failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.    controlling, operating, and/or driving a vehicle in a careless manner;

m.    driving at an improper speed;

n.    failing to use other safety devices to check for the presence of other vehicles and individuals;

18

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

o.    failing to keep a proper lookout;

p.    failing to attend to the conditions around him;

q.    inattentive and careless driving;

r.    failing to operate a vehicle with due regard for conditions on the roadway;

s.    driving the vehicle at a speed that was unsafe for conditions;

t.    failing to bring the vehicle to a controlled stop prior to the collision;

u.    failing to use the horn to alert others of defendant's vehicle's status;

v.    driving on a portion of the road which rendered such vehicle operation unsafe;

w.    failing to keep a proper lookout;

x.    failing to warn other drivers that said vehicle was unfit for operation;

y.    failing to maintain said vehicle in proper operating condition;

z.    failing to maintain said vehicle in a reasonable safe condition;

aa.    failing to properly inspect said vehicle prior to operation;

bb.    failing to warn Kevin Canals Ortiz of said vehicle's presence, intended course of travel, and impending impact;

cc.    causing Kevin Canals Ortiz to suffer harm and death;

dd.    failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of Kevin Canals Ortiz;

ee.    failing to adopt safety policies regarding the operation of motor vehicles;

ff.    failing to follow safety policies regarding the operation of motor vehicles;

19

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

gg.  failing to adopt safety policies regarding the training of drivers;

hh.  failing to follow safety policies regarding the training of drivers;

ii.  failing to adopt safety policies regarding the discharge of drivers;

jj.  failing to follow safety policies regarding the discharge of drivers;

kk.  failing to adopt safety procedures regarding the operation of motor vehicles;

ll.  failing to follow safety procedures regarding the operation of motor vehicles;

mm.  failing to adopt safety procedures regarding the training of drivers;

nn.  failing to follow safety procedures regarding the training of drivers;

oo.  failing to adopt safety procedures regarding the discharge of drivers;

pp.  failing to follow safety procedures regarding the discharge of drivers;

qq.  failing to hire individuals who were fit for the positions for which they were hired;

rr.  failing to properly evaluate candidates for hire;

ss.  negligently entrusting a vehicle to the vehicle operator;

tt.  failing to properly investigate and evaluate agents, representatives, employees, servants, workmen, and/or contractors;

uu.  failing to properly train new hires and agents, representatives, employees, servants, workmen, and/or contractors;

vv.  failing to timely terminate agents, representatives, employees, servants, workmen, and/or contractors who lacked the requisite skills to perform their jobs safely;

20

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

ww.    failing to properly supervise agents, representatives, employees, servants, workmen, and/or contractors;

xx.    allowing Morgan to operate a vehicle when defendant knew or reasonably should have known that he was incapable of safe driving;

yy.    violating *75 Pa. C.S. §3714* by driving carelessly;

zz.    violating *75 Pa. C.S. §3714* by permitting Morgan to drive carelessly;

aaa.    violating *75 Pa. C.S. §3361* by driving a vehicle at an unsafe speed; and,

bbb.    violating *75 Pa. C.S. §3361* by permitting Morgan to drive a vehicle at an unsafe speed.

63.    As a result of the aforesaid acts and omissions of Delivery Dudes, defendant is liable to the Estate of Kevin Canals Ortiz for damages including, but not limited to, the following:

a.    decedent Kevin Canals Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b.    decedent Kevin Canals Ortiz's loss of income, support, and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

64.    The negligence and carelessness of Delivery Dudes, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

losses.

65. Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Delivery Dudes Franchise System, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT V – SURVIVAL
## CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
## ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
## INDIVIDUALLY and IN HER OWN RIGHT v. PIKE REPUBLIC, LLC

66. The Estate of Kevin Canals Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

67. The aforementioned accident was caused by the negligence and carelessness of Pike Republic, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

68. The negligence and carelessness of Pike Republic includes, but is not limited to:

a. failing to operate a vehicle with due regard for the rights and/or safety of Kevin Canals Ortiz and others similarly situated;

b. failing to timely apply his brakes;

c. failing to take proper evasive maneuvers;

d. failing to appreciate traffic and road conditions;

e. driving into the vehicles and individuals in front of him;

22

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

f.    striking the vehicles and individuals in front of him;

g.    operating a vehicle in disregard of the rights and/or safety of Kevin Canals
      Ortiz and others similarly situated;

h.    failing to take reasonable steps and exercise due and reasonable care and
      caution under the circumstances to avoid a collision and subsequent
      injuries to Kevin Canals Ortiz;

i.    failing to have said vehicle under proper and adequate control at the time of
      the accident;

j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.    failing to operate said vehicle at a safe rate of speed, in violation of Section
      3364 of the Motor Vehicle Code;

l.    controlling, operating, and/or driving a vehicle in a careless manner;

m.    driving at an improper speed;

n.    failing to use other safety devices to check for the presence of other vehicles
      and individuals;

o.    failing to keep a proper lookout;

p.    failing to attend to the conditions around him;

q.    inattentive and careless driving;

r.    failing to operate a vehicle with due regard for conditions on the roadway;

s.    driving the vehicle at a speed that was unsafe for conditions;

t.    failing to bring the vehicle to a controlled stop prior to the collision;

u.    failing to use the horn to alert others of defendant's vehicle's status;

23

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

v.   driving on a portion of the road which rendered such vehicle operation unsafe;

w.   failing to keep a proper lookout;

x.   failing to warn other drivers that said vehicle was unfit for operation;

y.   failing to maintain said vehicle in proper operating condition;

z.   failing to maintain said vehicle in a reasonable safe condition;

aa.   failing to properly inspect said vehicle prior to operation;

bb.   failing to warn Kevin Canals Ortiz of said vehicle's presence, intended course of travel, and impending impact;

cc.   causing Kevin Canals Ortiz to suffer harm and death;

dd.   failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of Kevin Canals Ortiz;

ee.   failing to adopt safety policies regarding the operation of motor vehicles;

ff.   failing to follow safety policies regarding the operation of motor vehicles;

gg.   failing to adopt safety policies regarding the training of drivers;

hh.   failing to follow safety policies regarding the training of drivers;

ii.   failing to adopt safety policies regarding the discharge of drivers;

jj.   failing to follow safety policies regarding the discharge of drivers;

kk.   failing to adopt safety procedures regarding the operation of motor vehicles;

ll.   failing to follow safety procedures regarding the operation of motor vehicles;

24

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

mm.   failing to adopt safety procedures regarding the training of drivers;

nn.   failing to follow safety procedures regarding the training of drivers;

oo.   failing to adopt safety procedures regarding the discharge of drivers;

pp.   failing to follow safety procedures regarding the discharge of drivers;

qq.   failing to hire individuals who were fit for the positions for which they were hired;

rr.   failing to properly evaluate candidates for hire;

ss.   negligently entrusting a vehicle to the vehicle operator;

tt.   failing to properly investigate and evaluate agents, representatives, employees, servants, workmen, and/or contractors;

uu.   failing to properly train new hires and agents, representatives, employees, servants, workmen, and/or contractors;

vv.   failing to timely terminate agents, representatives, employees, servants, workmen, and/or contractors who lacked the requisite skills to perform their jobs safely;

ww.   failing to properly supervise agents, representatives, employees, servants, workmen, and/or contractors;

xx.   allowing Morgan to operate a vehicle when defendant knew or reasonably should have known that he was incapable of safe driving;

yy.   violating **75 Pa. C.S. §3714** by driving carelessly;

zz.   violating **75 Pa. C.S. §3714** by permitting Morgan to drive carelessly;

25

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

aaa.    violating *75 Pa. C.S. §3361* by driving a vehicle at an unsafe speed; and,

bbb.    violating *75 Pa. C.S. §3361* by permitting Morgan to drive a vehicle at an unsafe speed.

69.    As a result of the aforesaid acts and omissions of Pike Republic, defendant is liable to the Estate of Kevin Canals Ortiz for damages including, but not limited to, the following:

a.    decedent Kevin Canals Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b.    decedent Kevin Canals Ortiz's loss of income, support, and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

70.    The negligence and carelessness of Pike Republic, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

71.    Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Pike Republic, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

any other amounts this Court deems reasonable and appropriate.

### COUNT VI – WRONGFUL DEATH
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
### ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
### INDIVIDUALLY and IN HER OWN RIGHT v. KATIA ZENO

72.     The Estate of Kevin Canals Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

73.     The damages, injury and death of Kevin Canals Ortiz were caused by the negligence and carelessness of Zeno, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

74.     The Estate of Kevin Canals Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, *42 Pa. C.S. §8301*.

75.     Kevin Canals Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

76.     Kevin Canals Ortiz's relatives entitled to recover under the Wrongful Death Statute are his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

77.     Kevin Canals Ortiz's children reside with their mother at 5201 Allentown Pike, Temple, PA 19560.

78.     Carolin Ortiz-Sandoval is the mother of Kevin Canals Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to *42 Pa. C.S. §8301*.

79.     As a result of the negligence and carelessness of Zeno, the Estate of Kevin Canals Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of

27

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

80.    As a result of the negligence and carelessness of Zeno, decedent sustained pain, suffering, death, and past and future financial losses.

81.    As a result of the negligence and carelessness of Zeno, Carolin Ortiz-Sandoval, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Katia Zeno, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

### COUNT VII – WRONGFUL DEATH
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
### ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
### INDIVIDUALLY and IN HER OWN RIGHT v. KEVIN MORGAN

82.    The Estate of Kevin Canals Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

83.    The damages, injury and death of Kevin Canals Ortiz were caused by the negligence and carelessness of Morgan, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

84.    The Estate of Kevin Canals Ortiz brings this action pursuant to the Pennsylvania

28

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Wrongful Death Act, *42 Pa. C.S. §8301*.

85. Kevin Canals Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

86. Kevin Canals Ortiz's relatives entitled to recover under the Wrongful Death Statute are his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

87. Kevin Canals Ortiz's children reside with their mother at 5201 Allentown Pike, Temple, PA 19560.

88. Carolin Ortiz-Sandoval is the mother of Kevin Canals Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to *42 Pa. C.S. §8301*.

89. As a result of the negligence and carelessness of Morgan, the Estate of Kevin Canals Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

90. As a result of the negligence and carelessness of Morgan, decedent sustained pain, suffering, death, and past and future financial losses.

91. As a result of the negligence and carelessness of Morgan, Carolin Ortiz-Sandoval, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of

29

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Kevin Morgan, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT VIII – WRONGFUL DEATH**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. JOBBLE, INC.**

92.    The Estate of Kevin Canals Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

93.    The damages, injury and death of Kevin Canals Ortiz were caused by the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

94.    The Estate of Kevin Canals Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, ***42 Pa. C.S. §8301***.

95.    Kevin Canals Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

96.    Kevin Canals Ortiz's relatives entitled to recover under the Wrongful Death Statute are his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

97.    Kevin Canals Ortiz's children reside with their mother at 5201 Allentown Pike, Temple, PA 19560.

98.    Carolin Ortiz-Sandoval is the mother of Kevin Canals Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to ***42 Pa. C.S. §8301***.

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

99.    As a result of the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, the Estate of Kevin Canals Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

100.    As a result of the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, decedent sustained pain, suffering, death, and past and future financial losses.

101.    As a result of the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, Carolin Ortiz-Sandoval, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Jobble, Inc., in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT IX – WRONGFUL DEATH**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

## INDIVIDUALLY and IN HER OWN RIGHT v. DELIVERY DUDES FRANCHISE SYSTEM, LLC

102. The Estate of Kevin Canals Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

103. The damages, injury and death of Kevin Canals Ortiz were caused by the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

104. The Estate of Kevin Canals Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, *42 Pa. C.S. §8301*.

105. Kevin Canals Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

106. Kevin Canals Ortiz's relatives entitled to recover under the Wrongful Death Statute are his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

107. Kevin Canals Ortiz's children reside with their mother at 5201 Allentown Pike, Temple, PA 19560.

108. Carolin Ortiz-Sandoval is the mother of Kevin Canals Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to *42 Pa. C.S. §8301*.

109. As a result of the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, the Estate of Kevin Canals Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or

32

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

110. As a result of the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, decedent sustained pain, suffering, death, and past and future financial losses.

111. As a result of the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, Carolin Ortiz-Sandoval, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Delivery Dudes Franchise System, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

### COUNT X – WRONGFUL DEATH
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
### ESTATE of KEVIN CANALS ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
### INDIVIDUALLY and IN HER OWN RIGHT v. PIKE REPUBLIC, LLC

112. The Estate of Kevin Canals Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

113. The damages, injury and death of Kevin Canals Ortiz were caused by the negligence and carelessness of Pike Republic, by and through its agents, representatives,

33

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

employees, servants, workmen, and/or contractors, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

114.   The Estate of Kevin Canals Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, *42 Pa. C.S. §8301*.

115.   Kevin Canals Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

116.   Kevin Canals Ortiz's relatives entitled to recover under the Wrongful Death Statute are his children, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno.

117.   Kevin Canals Ortiz's children reside with their mother at 5201 Allentown Pike, Temple, PA 19560.

118.   Carolin Ortiz-Sandoval is the mother of Kevin Canals Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to *42 Pa. C.S. §8301*.

119.   As a result of the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, the Estate of Kevin Canals Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

120.   As a result of the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, decedent sustained pain, suffering, death, and past and future financial losses.

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

121.   As a result of the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, Carolin Ortiz-Sandoval, Angel Canals Zeno, Yamil Canals Zeno, and Jaden Canals Zeno have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kevin Canals Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Pike Republic, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT XI – SURVIVAL
## CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
## ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
## INDIVIDUALLY and IN HER OWN RIGHT v. KATIA ZENO

122.   The Estate of Kenneth J. Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

123.   The above accident and death of Kenneth J. Ortiz is the result of the negligence of Zeno.

124.   The negligence of Zeno includes:

   a.      failing to ensure her vehicle was safe to operate; and,

   b.      failing to exercise due and proper care.

125.   As a result of the aforesaid acts and omissions of Zeno, defendant is liable to the Estate of Kenneth J. Ortiz for damages including, but not limited to, the following:

   a.      decedent Kenneth J. Ortiz's pain, suffering, mental anguish, and loss of life's

35

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

pleasures;

b.      decedent Kenneth J. Ortiz's loss of income, support, and other losses;

c.      medical bills and expenses;

d.      loss of earnings and earning capacity; and

e.      all other damages provided by law.

126.    The negligence and carelessness of Zeno, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

127.    Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Katia Zeno, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

<u>**COUNT XII – SURVIVAL**</u>
<u>**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**</u>
<u>**ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**</u>
<u>**INDIVIDUALLY and IN HER OWN RIGHT v. KEVIN MORGAN**</u>

128.    The Estate of Kenneth J. Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

129.    The aforementioned accident was caused by the negligence and carelessness of Morgan, acting individually and on behalf of Jobble, Delivery Dudes, and/or Pike

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Republic.

130. The negligence and carelessness of Morgan includes, but is not limited to:

    a.    failing to operate a vehicle with due regard for the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

    b.    failing to timely apply his brakes;

    c.    failing to take proper evasive maneuvers;

    d.    failing to appreciate traffic and road conditions;

    e.    driving into the vehicles and individuals in front of him;

    f.    striking the vehicles and individuals in front of him;

    g.    operating a vehicle in disregard of the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

    h.    failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kenneth J. Ortiz;

    i.    failing to have said vehicle under proper and adequate control at the time of the accident;

    j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

    k.    failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

    l.    controlling, operating, and/or driving a vehicle in a careless manner;

    m.    driving at an improper speed;

    n.    failing to use other safety devices to check for the presence of other vehicles or individuals;

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

o.      failing to keep a proper lookout;

p.      failing to attend to the conditions around him;

q.      inattentive and careless driving;

r.      failing to operate a vehicle with due regard for conditions on the roadway;

s.      driving the vehicle at a speed that was unsafe for conditions;

t.      failing to bring the vehicle to a controlled stop prior to the collision;

u.      failing to use the horn to alert others of defendant's vehicle's status;

v.      driving on a portion of the road which rendered such vehicle operation unsafe;

w.      failing to keep a proper lookout;

x.      failing to warn other drivers that said vehicle was unfit for operation;

y.      failing to maintain said vehicle in proper operating condition;

z.      failing to maintain said vehicle in a reasonable safe condition;

aa.     failing to properly inspect said vehicle prior to operation;

bb.     failing to warn Kenneth J. Ortiz of said vehicle's presence, intended course of travel, and impending impact;

cc.     causing Kenneth J. Ortiz to suffer harm and death; and,

dd.     failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of Kenneth J. Ortiz.

131.    As a result of the aforesaid acts and omissions of Morgan, defendant is liable to the Estate of Kenneth J. Ortiz for damages including, but not limited to, the following:

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

a.    decedent Kenneth J. Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b.    decedent Kenneth J. Ortiz's loss of income, support, and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

132.    The negligence and carelessness of Morgan, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

133.    Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Kevin Morgan, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT XIII – SURVIVAL**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. JOBBLE, INC.**

134.    The Estate of Kenneth J. Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

135.    The aforementioned accident was caused by the negligence and carelessness of

39

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Jobble, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

136.   The negligence and carelessness of Jobble includes, but is not limited to:

a.   failing to operate a vehicle with due regard for the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

b.   failing to timely apply his brakes;

c.   failing to take proper evasive maneuvers;

d.   failing to appreciate traffic and road conditions;

e.   driving into the vehicles and individuals in front of him;

f.   striking the vehicles and individuals in front of him;

g.   operating a vehicle in disregard of the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

h.   failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kenneth J. Ortiz;

i.   failing to have said vehicle under proper and adequate control at the time of the accident;

j.   driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.   failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.   controlling, operating, and/or driving a vehicle in a negligent manner;

m.   controlling, operating, and/or driving a vehicle in a careless manner;

n.   driving at an improper speed;

40

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

o.    failing to use other safety devices to check for the presence of other vehicles and individuals;

p.    failing to keep a proper lookout;

q.    failing to attend to the conditions around him;

r.    inattentive and careless driving;

s.    failing to operate a vehicle with due regard for conditions on the roadway;

t.    driving the vehicle at a speed that was unsafe for conditions;

u.    failing to bring the vehicle to a controlled stop prior to the collision;

v.    failing to use the horn to alert others of defendant's vehicle's status;

w.    driving on a portion of the road which rendered such vehicle operation unsafe;

x.    failing to keep a proper lookout;

y.    failing to warn other drivers that said vehicle was unfit for operation;

z.    failing to maintain said vehicle in proper operating condition;

aa.    failing to maintain said vehicle in a reasonable safe condition;

bb.    failing to maintain said vehicle in a reasonable state of repair;

cc.    failing to properly inspect said vehicle prior to operation;

dd.    failing to warn Kenneth J. Ortiz of said vehicle's presence, intended course of travel, and impending impact;

ee.    causing Kenneth J. Ortiz to suffer harm and death;

ff.    failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

pose a serious risk of physical harm to persons in the position of Kenneth J. Ortiz;

gg.     failing to adopt safety policies regarding the operation of motor vehicles;

hh.     failing to follow safety policies regarding the operation of motor vehicles;

ii.     failing to adopt safety policies regarding the training of drivers;

jj.     failing to follow safety policies regarding the training of drivers;

kk.     failing to adopt safety policies regarding the discharge of drivers;

ll.     failing to follow safety policies regarding the discharge of drivers;

mm.   failing to adopt safety procedures regarding the operation of motor vehicles;

nn.     failing to follow safety procedures regarding the operation of motor vehicles;

oo.     failing to adopt safety procedures regarding the training of drivers;

pp.     failing to follow safety procedures regarding the training of drivers;

qq.     failing to adopt safety procedures regarding the discharge of drivers;

rr.     failing to follow safety procedures regarding the discharge of drivers;

ss.     failing to hire individuals who were fit for the positions for which they were hired;

tt.     failing to properly evaluate candidates for hire;

uu.     negligently entrusting a vehicle to the vehicle operator;

vv.     failing to properly investigate and evaluate agents, representatives, employees, servants, workmen, and/or contractors;

ww.   failing to properly train new hires and agents, representatives, employees, servants, workmen, and/or contractors;

42

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

xx. failing to timely terminate agents, representatives, employees, servants, workmen, and/or contractors who lacked the requisite skills to perform their jobs safely;

yy. failing to properly supervise agents, representatives, employees, servants, workmen, and/or contractors;

zz. allowing Morgan to operate a vehicle when defendant knew or reasonably should have known that he was incapable of safe driving;

aaa. violating *75 Pa. C.S. §3714* by driving carelessly;

bbb. violating *75 Pa. C.S. §3714* by permitting Morgan to drive carelessly;

ccc. violating *75 Pa. C.S. §3361* by driving a vehicle at an unsafe speed; and,

ddd. violating *75 Pa. C.S. §3361* by permitting Morgan to drive a vehicle at an unsafe speed.

137. As a result of the aforesaid acts and omissions of Jobble, defendant is liable to the Estate of Kenneth J. Ortiz for damages including, but not limited to, the following:

a. decedent Kenneth J. Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b. decedent Kenneth J. Ortiz's loss of income, support, and other losses;

c. medical bills and expenses;

d. loss of earnings and earning capacity; and

e. all other damages provided by law.

138. The negligence and carelessness of Jobble, described herein, directly and

43

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

139. Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Jobble, Inc., in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT XIV – SURVIVAL
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL, INDIVIDUALLY and IN HER OWN RIGHT v. DELIVERY DUDES FRANCHISE SYSTEM, LLC

140. The Estate of Kenneth J. Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

141. The aforementioned accident was caused by the negligence and carelessness of Delivery Dudes, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

142. The negligence and carelessness of Delivery Dudes includes, but is not limited to:

    a.    failing to operate a vehicle with due regard for the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

    b.    failing to timely apply his brakes;

    c.    failing to take proper evasive maneuvers;

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

d.      failing to appreciate traffic and road conditions;

e.      driving into the vehicles and individuals in front of him;

f.      striking the vehicles and individuals in front of him;

g.      operating a vehicle in disregard of the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

h.      failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kenneth J. Ortiz;

i.      failing to have said vehicle under proper and adequate control at the time of the accident;

j.      driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.      failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.      controlling, operating, and/or driving a vehicle in a careless manner;

m.      driving at an improper speed;

n.      failing to use other safety devices to check for the presence of other vehicles and individuals;

o.      failing to keep a proper lookout;

p.      failing to attend to the conditions around him;

q.      inattentive and careless driving;

r.      failing to operate a vehicle with due regard for conditions on the roadway;

s.      driving the vehicle at a speed that was unsafe for conditions;

t.      failing to bring the vehicle to a controlled stop prior to the collision;

45

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

u.     failing to use the horn to alert others of defendant's vehicle's status;

v.     driving on a portion of the road which rendered such vehicle operation unsafe;

w.    failing to keep a proper lookout;

x.     failing to warn other drivers that said vehicle was unfit for operation;

y.     failing to maintain said vehicle in proper operating condition;

z.     failing to maintain said vehicle in a reasonable safe condition;

aa.   failing to properly inspect said vehicle prior to operation;

bb.   failing to warn Kenneth J. Ortiz of said vehicle's presence, intended course of travel, and impending impact;

cc.   causing Kenneth J. Ortiz to suffer harm and death;

dd.   failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of Kenneth J. Ortiz;

ee.   failing to adopt safety policies regarding the operation of motor vehicles;

ff.    failing to follow safety policies regarding the operation of motor vehicles;

gg.   failing to adopt safety policies regarding the training of drivers;

hh.   failing to follow safety policies regarding the training of drivers;

ii.    failing to adopt safety policies regarding the discharge of drivers;

jj.    failing to follow safety policies regarding the discharge of drivers;

kk.   failing to adopt safety procedures regarding the operation of motor vehicles;

46

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

ll.     failing to follow safety procedures regarding the operation of motor vehicles;

mm.   failing to adopt safety procedures regarding the training of drivers;

nn.   failing to follow safety procedures regarding the training of drivers;

oo.   failing to adopt safety procedures regarding the discharge of drivers;

pp.   failing to follow safety procedures regarding the discharge of drivers;

qq.   failing to hire individuals who were fit for the positions for which they were hired;

rr.    failing to properly evaluate candidates for hire;

ss.    negligently entrusting a vehicle to the vehicle operator;

tt.    failing to properly investigate and evaluate agents, representatives, employees, servants, workmen, and/or contractors;

uu.   failing to properly train new hires and agents, representatives, employees, servants, workmen, and/or contractors;

vv.   failing to timely terminate agents, representatives, employees, servants, workmen, and/or contractors who lacked the requisite skills to perform their jobs safely;

ww.   failing to properly supervise agents, representatives, employees, servants, workmen, and/or contractors;

xx.   allowing Morgan to operate a vehicle when defendant knew or reasonably should have known that he was incapable of safe driving;

yy.   violating *75 Pa. C.S. §3714* by driving carelessly;

47

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

zz.    violating *75 Pa. C.S. §3714* by permitting Morgan to drive carelessly;

aaa.    violating *75 Pa. C.S. §3361* by driving a vehicle at an unsafe speed; and,

bbb.    violating *75 Pa. C.S. §3361* by permitting Morgan to drive a vehicle at an unsafe speed.

143.    As a result of the aforesaid acts and omissions of Delivery Dudes, defendant is liable to the Estate of Kenneth J. Ortiz for damages including, but not limited to, the following:

a.    decedent Kenneth J. Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b.    decedent Kenneth J. Ortiz's loss of income, support, and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

144.    The negligence and carelessness of Delivery Dudes, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

145.    Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right,

48

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

demands judgment against defendant, Delivery Dudes Franchise System, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT XV – SURVIVAL**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. PIKE REPUBLIC, LLC**

146.    The Estate of Kenneth J. Ortiz incorporates by reference all of the preceding paragraphs as though the same were set forth at length.

147.    The aforementioned accident was caused by the negligence and carelessness of Pike Republic, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

148.    The negligence and carelessness of Pike Republic includes, but is not limited to:

    a.    failing to operate a vehicle with due regard for the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

    b.    failing to timely apply his brakes;

    c.    failing to take proper evasive maneuvers;

    d.    failing to appreciate traffic and road conditions;

    e.    driving into the vehicles and individuals in front of him;

    f.    striking the vehicles and individuals in front of him;

    g.    operating a vehicle in disregard of the rights and/or safety of Kenneth J. Ortiz and others similarly situated;

49

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

h.    failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to Kenneth J. Ortiz;

i.    failing to have said vehicle under proper and adequate control at the time of the accident;

j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.    failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.    controlling, operating, and/or driving a vehicle in a careless manner;

m.    driving at an improper speed;

n.    failing to use other safety devices to check for the presence of other vehicles and individuals;

o.    failing to keep a proper lookout;

p.    failing to attend to the conditions around him;

q.    inattentive and careless driving;

r.    failing to operate a vehicle with due regard for conditions on the roadway;

s.    driving the vehicle at a speed that was unsafe for conditions;

t.    failing to bring the vehicle to a controlled stop prior to the collision;

u.    failing to use the horn to alert others of defendant's vehicle's status;

v.    driving on a portion of the road which rendered such vehicle operation unsafe;

w.    failing to keep a proper lookout;

x.    failing to warn other drivers that said vehicle was unfit for operation;

50

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

y.      failing to maintain said vehicle in proper operating condition;

z.      failing to maintain said vehicle in a reasonable safe condition;

aa.     failing to properly inspect said vehicle prior to operation;

bb.     failing to warn Kenneth J. Ortiz of said vehicle's presence, intended course of travel, and impending impact;

cc.     causing Kenneth J. Ortiz to suffer harm and death;

dd.     failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of Kenneth J. Ortiz;

ee.     failing to adopt safety policies regarding the operation of motor vehicles;

ff.     failing to follow safety policies regarding the operation of motor vehicles;

gg.     failing to adopt safety policies regarding the training of drivers;

hh.     failing to follow safety policies regarding the training of drivers;

ii.     failing to adopt safety policies regarding the discharge of drivers;

jj.     failing to follow safety policies regarding the discharge of drivers;

kk.     failing to adopt safety procedures regarding the operation of motor vehicles;

ll.     failing to follow safety procedures regarding the operation of motor vehicles;

mm.     failing to adopt safety procedures regarding the training of drivers;

nn.     failing to follow safety procedures regarding the training of drivers;

oo.     failing to adopt safety procedures regarding the discharge of drivers;

pp.     failing to follow safety procedures regarding the discharge of drivers;

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

qq.    failing to hire individuals who were fit for the positions for which they were hired;

rr.    failing to properly evaluate candidates for hire;

ss.    negligently entrusting a vehicle to the vehicle operator;

tt.    failing to properly investigate and evaluate agents, representatives, employees, servants, workmen, and/or contractors;

uu.    failing to properly train new hires and agents, representatives, employees, servants, workmen, and/or contractors;

vv.    failing to timely terminate agents, representatives, employees, servants, workmen, and/or contractors who lacked the requisite skills to perform their jobs safely;

ww.    failing to properly supervise agents, representatives, employees, servants, workmen, and/or contractors;

xx.    allowing Morgan to operate a vehicle when defendant knew or reasonably should have known that he was incapable of safe driving;

yy.    violating *75 Pa. C.S. §3714* by driving carelessly;

zz.    violating *75 Pa. C.S. §3714* by permitting Morgan to drive carelessly;

aaa.    violating *75 Pa. C.S. §3361* by driving a vehicle at an unsafe speed; and,

bbb.    violating *75 Pa. C.S. §3361* by permitting Morgan to drive a vehicle at an unsafe speed.

149.    As a result of the aforesaid acts and omissions of Pike Republic, defendant is liable

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

to the Estate of Kenneth J. Ortiz for damages including, but not limited to, the following:

a.    decedent Kenneth J. Ortiz's pain, suffering, mental anguish, and loss of life's pleasures;

b.    decedent Kenneth J. Ortiz's loss of income, support, and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

150.    The negligence and carelessness of Pike Republic, described herein, directly and proximately caused the injuries and damages from which decedent suffered and ultimately caused his death, including pain, suffering, and past and future financial losses.

151.    Decedent suffered conscious pain and suffering before dying as a consequence of the motor vehicle incident.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Pike Republic, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT XVI – WRONGFUL DEATH**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. KATIA ZENO**

152.    The Estate of Kenneth J. Ortiz incorporates, by reference, all preceding paragraphs

53

as if set forth herein at length.

153.   The damages, injury and death of Kenneth J. Ortiz were caused by the negligence and carelessness of Zeno, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

154.   The Estate of Kenneth J. Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, ***42 Pa. C.S. §8301***.

155.   Kenneth J. Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

156.   Kenneth J. Ortiz's relative entitled to recover under the Wrongful Death Statute is his child, Kenniel J. Ortiz.

157.   Kenneth J. Ortiz's child resides with his mother at 1119 Chestnut Street, Apartment 2, Reading, PA 19602.

158.   Carolin Ortiz-Sandoval is the mother of Kenneth J. Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to ***42 Pa. C.S. §8301***.

159.   As a result of the negligence and carelessness of Zeno, the Estate of Kenneth J. Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

160.   As a result of the negligence and carelessness of Zeno, decedent sustained pain, suffering, death, and past and future financial losses.

54

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

161.    As a result of the negligence and carelessness of Zeno, Carolin Ortiz-Sandoval and Kenniel J. Ortiz have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Katia Zeno, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT XVII – WRONGFUL DEATH
## CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
## ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
## INDIVIDUALLY and IN HER OWN RIGHT v. KEVIN MORGAN

162.    The Estate of Kenneth J. Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

163.    The damages, injury and death of Kenneth J. Ortiz were caused by the negligence and carelessness of Morgan, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

164.    The Estate of Kenneth J. Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, **42 Pa. C.S. §8301**.

165.    Kenneth J. Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

166.    Kenneth J. Ortiz's relative entitled to recover under the Wrongful Death Statute is his child, Kenniel J. Ortiz.

167.    Kenneth J. Ortiz's child resides with his mother at 1119 Chestnut Street, Apartment

2, Reading, PA 19602.

168. Carolin Ortiz-Sandoval is the mother of Kenneth J. Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to **42 Pa. C.S. §8301**.

169. As a result of the negligence and carelessness of Morgan, the Estate of Kenneth J. Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

170. As a result of the negligence and carelessness of Morgan, decedent sustained pain, suffering, death, and past and future financial losses.

171. As a result of the negligence and carelessness of Morgan, Carolin Ortiz-Sandoval and Kenniel J. Ortiz have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Kevin Morgan, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT XVIII – WRONGFUL DEATH
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL, INDIVIDUALLY and IN HER OWN RIGHT v. JOBBLE, INC.

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

172.   The Estate of Kenneth J. Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

173.   The damages, injury and death of Kenneth J. Ortiz were caused by the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

174.   The Estate of Kenneth J. Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, **42 Pa. C.S. §8301**.

175.   Kenneth J. Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

176.   Kenneth J. Ortiz's relative entitled to recover under the Wrongful Death Statute is his child, Kenniel J. Ortiz.

177.   Kenneth J. Ortiz's child resides with his mother at 1119 Chestnut Street, Apartment 2, Reading, PA 19602.

178.   Carolin Ortiz-Sandoval is the mother of Kenneth J. Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to **42 Pa. C.S. §8301**.

179.   As a result of the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, the Estate of Kenneth J. Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of

57

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

guidance, tutelage, companionship, and moral support.

180. As a result of the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, decedent sustained pain, suffering, death, and past and future financial losses.

181. As a result of the negligence and carelessness of Jobble, by and through its agents, representatives, employees, servants, workmen, and/or contractors, Carolin Ortiz-Sandoval and Kenniel J. Ortiz have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Jobble, Inc., in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

### COUNT XIV – WRONGFUL DEATH
### CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the
### ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,
### INDIVIDUALLY and IN HER OWN RIGHT v. DELIVERY DUDES
### FRANCHISE SYSTEM, LLC

182. The Estate of Kenneth J. Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

183. The damages, injury and death of Kenneth J. Ortiz were caused by the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

184. The Estate of Kenneth J. Ortiz brings this action pursuant to the Pennsylvania

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Wrongful Death Act, **_42 Pa. C.S. §8301_**.

185. Kenneth J. Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

186. Kenneth J. Ortiz's relative entitled to recover under the Wrongful Death Statute is his child, Kenniel J. Ortiz.

187. Kenneth J. Ortiz's child resides with his mother at 1119 Chestnut Street, Apartment 2, Reading, PA 19602.

188. Carolin Ortiz-Sandoval is the mother of Kenneth J. Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to **_42 Pa. C.S. §8301_**.

189. As a result of the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, the Estate of Kenneth J. Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

190. As a result of the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, decedent sustained pain, suffering, death, and past and future financial losses.

191. As a result of the negligence and carelessness of Delivery Dudes, by and through its agents, representatives, employees, servants, workmen, and/or contractors, Carolin Ortiz-Sandoval and Kenniel J. Ortiz have suffered loss of society, solace,

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Delivery Dudes Franchise System, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT XV – WRONGFUL DEATH**
**CAROLIN ORTIZ-SANDOVAL, ADMINISTRATRIX of the**
**ESTATE of KENNETH J. ORTIZ, and CAROLIN ORTIZ-SANDOVAL,**
**INDIVIDUALLY and IN HER OWN RIGHT v. PIKE REPUBLIC, LLC**

192.    The Estate of Kenneth J. Ortiz incorporates, by reference, all preceding paragraphs as if set forth herein at length.

193.    The damages, injury and death of Kenneth J. Ortiz were caused by the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, which conduct included, *inter alia*, the acts and omissions averred above and incorporated by reference herein.

194.    The Estate of Kenneth J. Ortiz brings this action pursuant to the Pennsylvania Wrongful Death Act, *42 Pa. C.S. §8301*.

195.    Kenneth J. Ortiz is survived by relatives who are entitled to recover damages for his wrongful death.

196.    Kenneth J. Ortiz's relative entitled to recover under the Wrongful Death Statute is his child, Kenniel J. Ortiz.

197.    Kenneth J. Ortiz's child resides with his mother at 1119 Chestnut Street, Apartment 2, Reading, PA 19602.

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

198.  Carolin Ortiz-Sandoval is the mother of Kenneth J. Ortiz and Administratrix of his Estate, and she is entitled to bring this action pursuant to *42 Pa. C.S. §8301*.

199.  As a result of the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, the Estate of Kenneth J. Ortiz has sustained damages including, but not limited to, funeral expenses, burial expenses, estate administration expenses, loss of contributions from decedent, the value of monies which would have been spent or provided to family, the value of all support, the value of services, society and comfort which would have been provided by decedent, including, but not limited to, the value of guidance, tutelage, companionship, and moral support.

200.  As a result of the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, decedent sustained pain, suffering, death, and past and future financial losses.

201.  As a result of the negligence and carelessness of Pike Republic, by and through its agents, representatives, employees, servants, workmen, and/or contractors, Carolin Ortiz-Sandoval and Kenniel J. Ortiz have suffered loss of society, solace, tutelage, guidance, love, support, and all other damages allowed by law.

WHEREFORE, Plaintiff, Carolin Ortiz-Sandoval, Administratrix of the Estate of Kenneth J. Ortiz, and Carolin Ortiz-Sandoval, Individually and In Her Own Right, demands judgment against defendant, Pike Republic, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00), including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

DUFFY + FULGINITI

BY:_____

KEN FULGINITI, ESQUIRE
SARAH F. DOOLEY, ESQUIRE
Attorneys for Plaintiffs

DATE: June 13, 2022

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

Received County of Berks Prothonotary's Office on 06/13/2022 3:03 PM Prothonotary Docket No. 22-09593

## **VERIFICATION**

Carolin Ortiz-Sandoval states that she is the Plaintiff herein; that she is acquainted with the facts set forth in the foregoing Complaint; that the same are true and correct to the best of his knowledge, information, and belief; and, that this statement is made subject to the penalties of *18 Pa. C.S.A. §4904* relating to unsworn falsification to authorities.


CAROLIN ORTIZ-SANDOVAL

# EXHIBIT C

**FORBES, BENDER & PAOLINO, P.C.**
BY:    **GUY N. PAOLINO, ESQUIRE**
**ATTORNEY I.D. NO. 41051**
**205 NORTH MONROE STREET**
**MEDIA, PA  19063**
**(610) 627-1700**

**Attorney for Plaintiff,**
**Carlos Rivera-Ortiz**

| | |
|---|---|
| CARLOS RIVERA-ORTIZ<br>1203 Elm Street<br>Reading, PA  19604<br>　　　　　Plaintiff<br><br>　　　　vs.<br><br>KATIA ZENO<br>5201 Allentown Pike<br>Temple, PA  19560<br>　　　and<br>KEVIN MORGAN<br>3901 Lantana Avenue<br>Reading, PA  19605<br>　　　and<br>JOBBLE, INC.<br>21 Lincoln Street, Floor 24<br>Boston, MA  02111<br>　　　and<br>DELIVERY DUDES, LLC<br>102 NE 1ˢᵗ Avenue<br>Delray Beach, FL  33444<br>　　　　　Defendants | COURT OF COMMON PLEAS<br>BERKS COUNTY, PENNA.<br>CIVIL ACTION - LAW<br><br>No.<br><br><br>JURY TRIAL DEMANDED |

*Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764*

## NOTICE TO DEFEND
## NOTIFICACIÓN PARA DEFENDERSE

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyers' Referral Service of the
Berks County Bar Association
544 Court Street
Reading, Pennsylvania 19601

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

**Telephone (610)375-4591**
**www.BerksBar.org**

**AVISO**

Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.

SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.

Servicio de Recomendación para Contratar Abogados
del Colegio de Abogados del Condado Berks
544 Court Street
Reading, Pennsylvania 19601
Teléfono (610) 375-4591
**www.BerksBar.org**

**FORBES, BENDER & PAOLINO, P.C.**
BY:   **GUY N. PAOLINO, ESQUIRE**
**ATTORNEY I.D. NO. 41051**
**205 NORTH MONROE STREET**
**MEDIA, PA  19063**
**(610) 627-1700**

**Attorney for Plaintiff,**
**Anthony Bond**

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

| | | |
|---|---|---|
| CARLOS RIVERA-ORTIZ<br>1203 Elm Street<br>Reading, PA   19604<br>Plaintiff | :<br>:<br>:<br>:<br>: | COURT OF COMMON PLEAS<br>BERKS COUNTY, PENNA.<br>CIVIL ACTION - LAW |
| vs. | :<br>: | No. |
| KATIA ZENO<br>5201 Allentown Pike<br>Temple, PA  19560<br>and<br>KEVIN MORGAN<br>3901 Lantana Avenue<br>Reading, PA  19605<br>and<br>JOBBLE, INC.<br>1 Lincoln Street, Floor 24<br>Boston, MA  02111<br>and<br>DELIVERY DUDES, LLC<br>102 NE 1ˢᵗ Avenue<br>Delray Beach, FL  33444<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

1.      Carlos Rivera-Ortiz is a citizen and resident of the Commonwealth of Pennsylvania

and resides at the address indicated in the caption.

2.      Defendant, Katia Zeno (hereinafter "Zeno") is a citizen and resident of the

Commonwealth of Pennsylvania and resides at the address indicated in the caption.

3.      Defendant, Kevin Morgan (hereinafter "Morgan") is a citizen and resident of the

Commonwealth of Pennsylvania and resides at the address indicated in the caption.

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

4.     Defendant, Jobble, Inc. (hereinafter "Jobble") is a Delaware corporation with a principal place of business at 1 Lincoln Street, Floor 24, Boston, MA  02111.

5.     At all times relevant hereto, Jobble regularly, continuously and systematically conducted business in the Commonwealth of Pennsylvania and in the County and City of Philadelphia.

6.     Defendant, Delivery Dudes, LLC (hereinafter "Delivery Dudes") is a Florida limited liability company with a principal place of business at 102 NE 1st Avenue, Delray Beach, FL 33444.

7.     At all times relevant hereto, Delivery Dudes regularly, continuously and systematically conducted business in the Commonwealth of Pennsylvania and in the County and City of Philadelphia.

8.     At all times relevant hereto, Jobble and/or Delivery Dudes, by and through their agents, representatives, employees, servants, workmen and/or contractors, operated vehicles and conducted business on a daily basis in the City and County of Philadelphia, PA.

9.     At all times relevant hereto, Jobble and/or Delivery Dudes was in the business of delivering food, *inter alia.*

10.     At all times relevant hereto, Jobble and/or Delivery Dudes was responsible for the safety of the vehicle being operating by its agents, representatives, employees, servants, workmen, and/or contractors, including Morgan.

11.     At all times relevant hereto, Jobble and/or Delivery Dudes was aware that failure to properly inspect their vehicles could result in serious, permanent, and life altering/life ending injuries to individuals.

2

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

12.    At all times relevant hereto, Jobble and/or Delivery Dudes was aware that failure to hire, train, supervise, and/or timely discharge agents, representatives, employees, servants, workmen, and/or contractors could result in serious, permanent, and life altering/life ending injuries to individuals.

13.    At all times relevant hereto, Morgan, Jobble and/or Delivery Dudes acted through their agents, representatives, employees, servants, workmen and/or contractors, acting within the course and scope of their employment.

14.    At all times relevant hereto, Morgan was an agent, representative, employee, servant, workman and/or contractor on behalf of Jobble and/or Delivery Dudes, acting in the course and scope of his employment.

15.    At all times relevant hereto, Jobble and/or Delivery Dudes understood that in order to safely deliver food, they were required to hire individuals with special driving training and skill.

16.    At all times relevant hereto, Jobble and/or Delivery Dudes were required to supervise and monitor their agents, representatives, employees, servants, workmen and/or contractors and their drives to ensure they maintained adequate skills to drive professionally and commercially.

17.    At all times relevant hereto, Jobble and/or Delivery Dudes were aware that the drivers they employed were required to be skilled and trained in operating commercial vehicles or individuals on the road could be seriously harmed or killed.

18.    At all times relevant hereto, Jobble and/or Delivery Dudes were aware that they had a duty to investigate and evaluate the background of their potential drivers, as well as their current drivers, to make sure their driving records were consistent with individuals who would be professionally driving vehicles.

3

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

19.     At all times relevant hereto, Jobble and/or Delivery Dudes were aware that they had a responsibility to continually monitor the driving records of their new or existing drivers to ensure their drivers were not a hazard to those on the road.

20.     At all times relevant hereto, Jobble and/or Delivery Dudes were aware that drivers who have repeat moving violations should be properly trained and re-trained, must be closely supervised, and or/should be discharged from employment as a driver.

21.     On July 10, 2020, and at all times relevant hereto, Zeno was operating a vehicle that broke down on Route 222 in Pennsylvania.

22.     On July 10, 2020, and at all times relevant hereto, plaintiff Rivera was a passenger in the Zeno vehicle.

23.     On July 10, 2020, and at all times relevant hereto, Morgan was operating a vehicle in the course and scope of his employment with Jobble and/or Delivery Dudes on Route 222.

24.     On July 10, 2002, Kevin Canals Ortiz and Kenneth J. Ortiz stopped to help the individuals, Zeno and Rivera, in the broken down Zeno vehicle on Route 222.

25.     Morgan, on behalf of Jobble and/or Delivery Dudes, failed to appreciate the stopped and broken-down vehicles on Route 222 and struck Kevin Canals Ortiz, Kenneth J. Ortiz and Carlos Rivera.

26.     As a direct and proximate result of the aforementioned negligence and/or carelessness of the defendants, individually and by and through their agents, representatives, employees, servants, workmen and/or contractors, Carlos Rivera suffered serious and permanent injuries.

4

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

27.    At all times relevant hereto, Morgan, Jobble and/or Delivery Dudes were fully aware that failure to properly operate their vehicles could cause catastrophic injuries to individuals on the road.

## COUNT I
## CARLOS RIVERA-ORTIZ vs. KATIA ZENO

28.    Plaintiff, Carlos Rivera-Ortiz, incorporates by reference all of the preceding paragraphs as through the same were set forth at length,

29.    The above accident and injuries sustained by Carlos Rivera-Ortiz, are the result of the negligence of Zeno.

30.    The negligence of Zeno includes:

    a.    failing to ensure her vehicle was safe to operate; and

    b.    failing to exercise due and proper care.

31.    As a result of the aforesaid acts and omissions of Zeno, defendant is liable to the plaintiff, Carlos Rivera-Ortiz for damages, including, but not limited to, the following:

    a.    pain, suffering, mental anguish and loss of life's pleasures;

    b.    loss of income, support and other losses;

    c.    medical bills and expenses;

    d.    loss of earnings and earning capacity; and

    e.    all other damages provided by law.

32.    The negligence and carelessness of Zeno, described herein, directly and proximately caused the injuries and damages from which Rivera suffered, including, but not limited to:  open fracture of the right femur with ORIF surgery; soft tissue avulsion of the right thigh; right elbow strain and sprain and abrasions; lumbar sprain and strain; cervical sprain and strain; multiple contusions and abrasions; and nightmares.

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

WHEREFORE, plaintiff Carlos Rivera-Ortiz, demands judgment against defendant Katia Zeno, in a sum in excess of Fifty Thousand Dollars ($50,000.00) including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

**COUNT II**
**CARLOS RIVERA-ORTIZ vs. KEVIN MORGAN**

33.    Plaintiff, Carlos Rivera-Ortiz, incorporates by reference all of the preceding paragraphs as through the same were set forth at length,

34.    The aforesaid accident was caused by the negligence and carelessness of Morgan, acting individually and on behalf of Jobble and/or Delivery Dudes.

35.    The negligence and carelessness of Morgan includes, but is not limited to:

a.    failing to operate a vehicle with due regard for the rights and/or safety of the plaintiff;

b.    failing to timely apply his brakes;

c.    failing to take proper evasive maneuvers;

d.    failing to appreciate traffic and road conditions;

e.    driving into vehicles and individuals in front of him;

f.    striking the vehicles and individuals in front of him;

g.    operating a vehicle in disregard of the rights and/or safety of plaintiff and others similarly situated;

h.    failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to plaintiff;

i.    failing to have said vehicle under proper and adequate control at the time of the accident;

j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

6

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

k.      failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.      controlling, operating and/or driving a vehicle in a careless manner;

m.      driving at an improper speed;

n.      failing to operate a vehicle with due regard for conditions on the roadway; and

o.      failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of plaintiff Rivera.

36.      As a result of the aforesaid acts and omissions of Morgan, defendant is liable to the Plaintiff for damages, including, but not limited to, the following:

a.      pain, suffering, mental anguish and loss of life's pleasures;

b.      loss of income, support and other losses;

c.      medical bills and expenses;

d.      loss of earnings and earning capacity; and

e.      all other damages provided by law.

37.      The negligence and carelessness of Morgan, described herein, directly and proximately caused the injuries and damages which include, but are not limited to: open fracture of the right femur with ORIF surgery; soft tissue avulsion of the right thigh; right elbow strain and sprain and abrasions; lumbar sprain and strain; cervical sprain and strain; multiple contusions and abrasions; and nightmares.

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

WHEREFORE, plaintiff Carlos Rivera-Ortiz, demands judgment against defendant Kevin Morgan, in a sum in excess of Fifty Thousand Dollars ($50,000.00) including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT III
## CARLOS RIVERA-ORTIZ vs. JOBBLE, INC.

38.    Plaintiff, Carlos Rivera-Ortiz, incorporates by reference all of the preceding paragraphs as through the same were set forth at length,

39.    The aforesaid accident was caused by the negligence and carelessness of Jobble, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

40.    The negligence and carelessness of Jobble includes, but is not limited to:

a.    failing to operate a vehicle with due regard for the rights and/or safety of the plaintiff;

b.    failing to timely apply his brakes;

c.    failing to take proper evasive maneuvers;

d.    failing to appreciate traffic and road conditions;

e.    driving into vehicles and individuals in front of him;

f.    striking the vehicles and individuals in front of him;

g.    operating a vehicle in disregard of the rights and/or safety of plaintiff and others similarly situated;

h.    failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to plaintiff;

i.    failing to have said vehicle under proper and adequate control at the time of the accident;

j.    driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

8

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

k.  failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.  controlling, operating and/or driving a vehicle in a negligent and careless manner;

m.  driving at an improper speed;

n.  inattentive and careless driving;

o.  failing to bring the vehicle to a controlled stop prior to the collision;

p.  failing to maintain said vehicle in proper operating condition;

q.  failing to maintain said vehicle in a reasonable safe condition;

r.  failing to maintain said vehicle in a reasonable state of repair;

s.  failing to properly inspect said vehicle prior to operation;

t.  failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of plaintiff Rivera.

u.  failing to adopt safety policies regarding the operation of motor vehicles;

v.  failing to follow safety policies regarding the operation of motor vehicles;

w.  failing to adopt safety policies and procedures regarding the training of drivers;

x.  failing to follow safety policies and procedures regarding the training of drivers;

y.  failing to adopt safety policies and procedures regarding the discharge of drivers;

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

z.    failing to follow safety policies and procedures regarding the discharge of drivers;

aa.    negligently entrusting a vehicle to the vehicle operator;

bb.    failing to properly investigate and evaluate agents, representatives, employees, servants, workmen and/or contractors;

cc.    failing to properly train new hires and agents, representatives, employees, servants, workmen and/or contractors;

dd.    failing to timely terminate agents, representatives, employees, servants, workmen and/or contractors who lacked the requisite skills to perform their jobs safely;

ee.    failing to properly supervise agents, representatives, employees, servants, workmen and/or contractors;

ff.    violating 75 Pa. C.S. §3714 by driving carelessly;

gg.    violating 75 Pa. C.S. §3714 by permitting Morgan to drive carelessly; and

hh.    violating 75 Pa. C.S. §3361 by permitting Morgan to drive a vehicle at an unsafe speed

41.    As a result of the aforesaid acts and omissions of Morgan, defendant is liable to the Plaintiff for damages, including, but not limited to, the following:

a.    pain, suffering, mental anguish and loss of life's pleasures;

b.    loss of income, support and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

42.     The negligence and carelessness of Morgan, described herein, directly and proximately caused the injuries and damages which include, but are not limited to: open fracture of the right femur with ORIF surgery; soft tissue avulsion of the right thigh; right elbow strain and sprain and abrasions; lumbar sprain and strain; cervical sprain and strain; multiple contusions and abrasions; and nightmares.

WHEREFORE, plaintiff Carlos Rivera-Ortiz, demands judgment against defendant Jobble, Inc., in a sum in excess of Fifty Thousand Dollars ($50,000.00) including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

## COUNT IV
## CARLOS RIVERA-ORTIZ vs. DELIVERY DUDES, LLC

43.     Plaintiff, Carlos Rivera-Ortiz, incorporates by reference all of the preceding paragraphs as through the same were set forth at length.

44.     The aforesaid accident was caused by the negligence and carelessness of Delivery Dudes, acting by and through its agents, representatives, employees, servants, workmen, and/or contractors.

45.     The negligence and carelessness of Delivery Dudes includes, but is not limited to:

    a.    failing to operate a vehicle with due regard for the rights and/or safety of the plaintiff;

    b.    failing to timely apply his brakes;

    c.    failing to take proper evasive maneuvers;

    d.    failing to appreciate traffic and road conditions;

    e.    driving into vehicles and individuals in front of him;

    f.    striking the vehicles and individuals in front of him;

11

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

g.     operating a vehicle in disregard of the rights and/or safety of plaintiff and others similarly situated;

h.     failing to take reasonable steps and exercise due and reasonable care and caution under the circumstances to avoid a collision and subsequent injuries to plaintiff;

i.     failing to have said vehicle under proper and adequate control at the time of the accident;

j.     driving carelessly, in violation of Section 3714 of the Motor Vehicle Code;

k.     failing to operate said vehicle at a safe rate of speed, in violation of Section 3364 of the Motor Vehicle Code;

l.     controlling, operating and/or driving a vehicle in a negligent and careless manner;

m.     driving at an improper speed;

n.     inattentive and careless driving;

o.     failing to bring the vehicle to a controlled stop prior to the collision;

p.     failing to maintain said vehicle in proper operating condition;

q.     failing to maintain said vehicle in a reasonable safe condition;

r.     failing to maintain said vehicle in a reasonable state of repair;

s.     failing to properly inspect said vehicle prior to operation;

t.     failing to pay reasonable attention to the operation of said vehicle when defendant knew or reasonably should have known that such conduct would pose a serious risk of physical harm to persons in the position of plaintiff Rivera.

u.     failing to adopt safety policies regarding the operation of motor vehicles;

v.     failing to follow safety policies regarding the operation of motor vehicles;

12

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

w.    failing to adopt safety policies and procedures regarding the training of drivers;

x.    failing to follow safety policies and procedures regarding the training of drivers;

y.    failing to adopt safety policies and procedures regarding the discharge of drivers;

z.    failing to follow safety policies and procedures regarding the discharge of drivers;

aa.    negligently entrusting a vehicle to the vehicle operator;

bb.    failing to properly investigate and evaluate agents, representatives, employees, servants, workmen and/or contractors;

cc.    failing to properly train new hires and agents, representatives, employees, servants, workmen and/or contractors;

dd.    failing to timely terminate agents, representatives, employees, servants, workmen and/or contractors who lacked the requisite skills to perform their jobs safely;

ee.    failing to properly supervise agents, representatives, employees, servants, workmen and/or contractors;

ff.    violating 75 Pa. C.S. §3714 by driving carelessly;

gg.    violating 75 Pa. C.S. §3714 by permitting Morgan to drive carelessly; and

hh.    violating 75 Pa. C.S. §3361 by permitting Morgan to drive a vehicle at an unsafe speed

46.    As a result of the aforesaid acts and omissions of Morgan, defendant is liable to the Plaintiff for damages, including, but not limited to, the following:

Received County of Berks Prothonotary's Office on 06/03/2022 2:15 PM Prothonotary Docket No. 22-09764

a.    pain, suffering, mental anguish and loss of life's pleasures;

b.    loss of income, support and other losses;

c.    medical bills and expenses;

d.    loss of earnings and earning capacity; and

e.    all other damages provided by law.

47.    The negligence and carelessness of Morgan, described herein, directly and proximately caused the injuries and damages which include, but are not limited to:  open fracture of the right femur with ORIF surgery; soft tissue avulsion of the right thigh; right elbow strain and sprain and abrasions; lumbar sprain and strain; cervical sprain and strain; multiple contusions and abrasions; and nightmares.

WHEREFORE, plaintiff Carlos Rivera-Ortiz, demands judgment against defendant Delivery Dudes, LLC, in a sum in excess of Fifty Thousand Dollars ($50,000.00) including compensatory damages, costs, interest, and any other amounts this Court deems reasonable and appropriate.

FORBES, BENDER & PAOLINO, P.C.

BY:

GUY N. PAOLINO, ESQUIRE
Attorney for Plaintiff, Carlos Rivera-Ortiz

14

# EXHIBIT D

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821





# Auto Insurance Policy

Pennsylvania

## Where To Look In Your Policy

| | Page |
|---|---|
| AGREEMENT | 1 |
| GENERAL POLICY DEFINITIONS | 1 |
| LIABILITY PROTECTION | 3 |
|   Definitions | 3 |
|   Our Promise | 3 |
|   Additional Payments | 4 |
|   Extra Protection When Temporarily Out Of State | 4 |
|   Exclusions—What We Do Not Cover | 4 |
|   Limit Of Protection | 5 |
|   Other Insurance | 5 |
| PHYSICAL DAMAGE COVERAGES | 5 |
|   Definitions | 5 |
|   Our Promise—Comprehensive Coverage | 6 |
|   Our Promise—Collision Coverage | 6 |
|   Additional Payments | 6 |
|   Exclusions—What We Do Not Cover | 6 |
|   Limit Of Protection | 7 |
|   Other Insurance | 8 |
|   Appraisal | 8 |
|   Loss Payment | 8 |

| | Page |
|---|---|
|   No Benefit To Bailee | 8 |
|   Loss Payable Clause | 8 |
| ADDITIONAL COVERAGE | 8 |
|   Pet Protection | 8 |
|   Reimbursement For Coverage In Mexico And Other Foreign Countries | 9 |
| RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS | 9 |
|   Definitions | 9 |
|   Assignment | 9 |
|   Bankruptcy Of Anyone We Protect | 9 |
|   Concealment, Fraud Or Misrepresentation | 9 |
|   Continuous Policy | 9 |
|   Cooperation | 9 |
|   How Your Policy May Be Changed | 9 |
|   Lawsuits Against Us | 10 |
|   Our Right To Recover From Others | 10 |
|   Priority | 10 |
|   Survivors' Coverage | 10 |
|   Termination | 10 |
|   What To Do When An Accident Or Loss Happens | 11 |
|   When And Where Your Policy Applies | 11 |

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

# THANK YOU

**for choosing Erie Insurance for your auto insurance needs. This policy contains many Xtra Protection Features. Wherever an "X" appears in the margin of this policy, you receive Xtra Protection that is not included in most other auto policies. The protection provided by this policy is in keeping with the single purpose of our Founders which is, "To provide YOU with as near PERFECT PROTECTION, as near PERFECT SERVICE, as is humanly possible, and to do so at the LOWEST POSSIBLE COST."**

# AGREEMENT

## ERIE INSURANCE EXCHANGE

In return for "**your**" timely premium payment, "**your**" compliance with all of the provisions of this policy, and "**your**" signing of a "**Subscriber's Agreement**" with Erie Indemnity Company and other "**Subscribers**," "**we**" agree to provide the coverages "**you**" have purchased. "**Your**" coverages and limits of protection are shown on the "**Declarations**," which are part of this policy.

"**Your**" signing the "**Subscriber's Agreement**," which includes a limited power-of-attorney, permits Erie Indemnity Company, as Attorney-in-Fact, to make reciprocal insurance contracts between "**you**" and other Subscribers and otherwise manage the business of the Erie Insurance Exchange. This power-of-attorney applies only to "**your**" insurance business at the Exchange and is limited to the purposes described in the "**Subscriber's Agreement**."

"**Your**" responsibility as a "**Subscriber**" is determined by this policy and the "**Subscriber's Agreement**." "**You**" are liable for just the policy premiums charged and are not subject to any other premium liability under this policy.

This agreement is made in reliance on the information "**you**" have given "**us**" and is subject to all the terms of this policy.

This policy, with coverage agreements, limitations, exclusions and conditions, the "**Declarations**," applicable endorsements and waivers, and the "**Subscriber's Agreement**" constitute the entire agreement between "**you**" and "**us**."

## ERIE INSURANCE COMPANY

In return for "**your**" timely premium payment and "**your**" compliance with all of the provisions of this policy, "**we**" agree to provide the coverages "**you**" have purchased. "**Your**" coverages and limits of protection are shown on the "**Declarations**," which are part of this policy.

This agreement is made in reliance on the information "**you**" have given "**us**" and is subject to all the terms of this policy.

This policy, with coverage agreements, limitations, exclusions and conditions, the "**Declarations**" and applicable endorsements and waivers, constitute the entire agreement between "**you**" and "**us**."

# GENERAL POLICY DEFINITIONS

*Throughout this policy and its endorsements, the following words and phrases have a special meaning when they appear in bold type and quotations.*

- "**Additional auto**" or "**additional trailer**:"

  1. "**Additional auto**" means any "**private passenger auto**" other than a "**replacement auto**" that "**you**" acquire, purchase or lease during the policy period. For coverage to apply, "**we**" must insure all "**private passenger autos**" "**you**" own on the date "**you**" acquire, purchase or lease an "**additional auto**."

  2. "**Additional trailer**" means any "**trailer**" other than a "**replacement trailer**" that "**you**" acquire, purchase or lease during the policy period. For coverage to apply, "**we**" must insure all "**trailers**" "**you**" own on the date "**you**" acquire, purchase or lease an "**additional trailer**."

  "**Additional auto**" or "**additional trailer**" does not include any "**auto**" or "**trailer**" that "**you**" acquire, purchase or lease with anyone other than a "**relative**." Coverage does not apply to an "**additional auto**" or "**additional trailer**" registered to a corporation or other business entity.

  "**You**" must notify "**us**" during the policy period of "**your**" intention to have this policy apply to an "**additional auto**" or an "**additional trailer**." If "**you**" obtain an "**additional auto**" or an "**additional trailer**" within 30 days prior to the end of the policy period, "**you**" have 60 days after acquisition to notify "**us**."   X

  Should a loss occur involving an "**additional auto**" or "**additional trailer**" prior to "**your**" notifying "**us**," the additional vehicle will have the broadest coverage "**you**" have purchased for any one vehicle listed on the "**Declarations**."   X

  If "**you**" do not have:

  1. Comprehensive Coverage on any vehicle listed on the "**Declarations**," then Comprehensive Coverage will apply, subject to a $500 deductible. However, Comprehensive Coverage will end seven days after "**you**" acquire, purchase or lease the vehicle or when "**you**" report the additional vehicle to "**us**," whichever occurs first.   X

  2. Collision Coverage on any vehicle listed on the "**Declarations**," then Collision Coverage will apply, subject to a $500 deductible. However, Collision Coverage will end seven days after "**you**" acquire, purchase or lease the vehicle or when "**you**" report the additional vehicle to "**us**," whichever occurs first.   X

- "**Anyone we protect**" is defined separately under the LIABILITY PROTECTION Section, RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS Section or any applicable coverage. Refer to each of these sections or the applicable endorsement for the definition of "**anyone we protect**" as it applies to each coverage.

- "**Auto**" means any land "**motor vehicle**" with at least four wheels except a:

  1. vehicle designed for use principally off public roads;

  2. vehicle operated on rails or crawler treads;

1

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

3. vehicle located for use as a residence; or

4. "**miscellaneous vehicle**."

- "**Auto business**" means the business of selling, leasing, renting, repairing, servicing, cleaning, painting, storing or parking "**autos**," "**trailers**" or "**miscellaneous vehicles**."

- "**Auto we insure**" means:

  1. "**owned auto we insure**;"

  2. "**temporary substitute**;" or

  3. "**nonowned auto**." "**Nonowned auto**" is defined separately under the LIABILITY PROTECTION Section, the PHYSICAL DAMAGE COVERAGE Section or any applicable coverage. Refer to each of these sections or the applicable endorsement for the definition of "**nonowned auto**" as it applies to each coverage.

- "**Declarations**" means "**our**" form which shows "**your**" coverages, limits of protection, "**owned auto we insure**," premium charges and other information.

  This form is part of this policy. "**Declarations**" include forms titled Amended, Revised, Duplicate, New, Reinstated or Continuation Notice.

- "**Fungi**" means any type or form of fungus, including, but not limited to, molds, mildews, smuts, mushrooms, yeasts and any mycotoxin, spores, scents, vapors, gases or byproducts produced, arising out of or released by any type or form of fungus.

- "**Miscellaneous vehicle**" means a motorcycle (including a motorcycle with a sidecar), moped, snowmobile, golf cart, all terrain vehicle and any similar recreational vehicle. It does not include a lawn and garden tractor or mower or similar vehicle.

- "**Motor vehicle**" means any vehicle that is self-propelled and is required to be registered under the laws of the state in which "**you**" reside at the time this policy is issued. "**Motor vehicle**" does not include a vehicle:

  1. propelled solely by human power;

  2. propelled by electric power obtained from overhead wires;

  3. operated on rails or crawler treads;

  4. located for use as a residence or premises; or

  5. which is a lawn and garden tractor or mower or similar vehicle.

- "**Moving van**" means a four or six wheel "**motor vehicle**," such as a compact van or step van, designed mainly to transport household goods. It must be borrowed or rented and driven by "**you**" or a "**relative**" for personal use.

- "**Noneconomic loss**" means pain and suffering and other nonmonetary detriment.

- "**Occupying**" means in, upon, getting into or getting out of.

- "**Owned auto we insure**" means any:

  1. "**auto**" or "**trailer**" described on the "**Declarations**" for the coverages "**you**" have purchased;

  2. "**additional auto**," or "**additional trailer**;" or

  3. "**replacement auto**," or "**replacement trailer**."

- "**Private passenger auto**" means a four wheel land "**motor vehicle**" designed mainly to transport people on public roads. It includes station wagons and the following types of vehicles, even with dual rear wheels, when not used for business purposes, except farming or ranching:

  1. motor homes;

  2. pickups; and

  3. vans.

- "**Relative**" means a "**resident**" of "**your**" household who is a:

  1. person related to "**you**" by blood, marriage or adoption; or

  2. ward or any other person under 21 years old in "**your**" care.

- "**Replacement auto**," or "**replacement trailer**:"

  1. "**Replacement auto**" means any "**private passenger auto**" that "**you**" acquire, purchase or lease within the policy period to replace an "**auto**" described on the "**Declarations**."

  2. "**Replacement trailer**" means any "**trailer**" that "**you**" acquire, purchase or lease within the policy period to replace a "**trailer**" described on the "**Declarations**."

  "**Replacement auto**" or "**replacement trailer**" does not include any "**auto**" or "**trailer**" that "**you**" acquire, purchase or lease with anyone other than a "**relative**." Coverage does not apply to "**replacement autos**" or "**replacement trailers**" registered to a corporation or other business entity.

  "**You**" must notify "**us**" during the policy period of "**your**" intention to have this policy apply to a "**replacement auto**" or "**replacement trailer**." If "**you**" obtain a "**replacement auto**" or "**replacement trailer**" within 30 days prior to the end of the policy period, "**you**" have 60 days after acquisition to notify "**us**."                                    X

  Should a loss occur involving a "**replacement auto**" or "**replacement trailer**" prior to "**your**" notifying "**us**," the replacement vehicle will have the broadest coverage "**you**" have purchased for any one vehicle listed on the "**Declarations**."                                               X

  If "**you**" do not have:

  1. Comprehensive Coverage on any vehicle listed on the "**Declarations**," then Comprehensive Coverage will apply, subject to a $500 deductible. However, Comprehensive Coverage will end seven days after "**you**" acquire, purchase or lease the vehicle or when "**you**" report the replacement vehicle to "**us**," whichever occurs first.      X

  2. Collision Coverage on any vehicle listed on the "**Declarations**," then Collision Coverage will apply, subject to a $500 deductible. However, Collision Coverage will end seven days after "**you**" acquire, purchase or lease the vehicle or when "**you**" report the replacement vehicle to "**us**," whichever occurs first.       X

- "**Resident**" means a person who physically lives with "**you**" in "**your**" household on a regular basis. "**Your**" unmarried, unemancipated children attending school full time, living away from home, will be considered "**residents**" of "**your**" household.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

- "**Serious injury**" means a personal injury resulting in death, serious impairment of body function or permanent, serious disfigurement.

- "**Suit**" means a civil proceeding in which damages are alleged because of bodily injury or property damage to which this insurance applies. "**Suit**" includes:

  1. an arbitration proceeding; or
  2. any other alternative dispute resolution proceeding,

  to which "**anyone we protect**" must submit or submit with "**our**" consent alleging such damages.

- "**Temporary substitute**" means any "**auto**" or "**trailer**" which is a substitute for an "**owned auto we insure.**" The "**owned auto we insure**" must be withdrawn from normal use because of its breakdown, destruction, loss, repair or servicing. The "**temporary substitute**" cannot be owned by "**you**" and must be used with the permission of the owner.

- "**Trailer**" means a vehicle designed to be pulled by a "**private passenger auto,**" if not being used for business purposes except with a "**private passenger auto.**" In the LIABILITY PROTECTION Section of this policy, "**trailer**" includes a farm wagon or farm implement while used with a "**private passenger auto.**"

## ADDITIONAL ERIE INSURANCE EXCHANGE DEFINITIONS

*The following words and phrases have a special meaning in policies issued by Erie Insurance Exchange when they appear in bold type and quotations:*

- "**Subscriber**" means the person(s) who signed the "**Subscriber's Agreement.**"

- "**Subscriber's Agreement**" means the agreement, including a limited power-of-attorney, among the Subscribers and the Erie Indemnity Company, as Attorney-in-Fact.

- "**We**," "**us**" or "**our**" means the Subscribers at Erie Insurance Exchange as represented by their common Attorney-in-Fact, Erie Indemnity Company.

- "**You**," "**your**" or "**Named Insured**" means the "**Subscriber**" identified as a Named Insured on the "**Declarations**" and others identified as Named Insured(s) on the "**Declarations.**" Except under the RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS Section, these words include the spouse of the "**Subscriber**" identified as a Named Insured on the "**Declarations,**" provided the spouse is a "**resident.**"

## ADDITIONAL ERIE INSURANCE COMPANY DEFINITIONS

*The following words and phrases have a special meaning in policies issued by Erie Insurance Company when they appear in bold type and quotations.*

- "**We**," "**us**" or "**our**" means the Erie Insurance Company.

- "**You**," "**your**" or "**Named Insured**" means the person(s) identified as Named Insured(s) on the "**Declarations.**" Except in the RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS Section, these words include the spouse of the person(s) identified as Named Insured(s) on the "**Declarations,**" provided the spouse is a "**resident.**"

# LIABILITY PROTECTION

## DEFINITIONS

*The following words and phrases have a special meaning when they appear in bold type and quotations in the LIABILITY PROTECTION Section.*

- "**Anyone we protect**" means:

  1. "**you**" or any "**relative**" using an "**auto we insure**;"
  2. any person using, or any person or organization legally responsible for the use of, an "**owned auto we insure.**" This use must be with "**your**" permission unless the use is by a "**relative**;" and
  3. any person or organization legally responsible for the use, by "**you**" or a "**relative,**" of any "**nonowned auto.**" This protection applies only if the person or organization does not own or hire the vehicle being used.

- "**Nonowned auto**" means:

  1. while "**you**" are using it, any "**auto**," "**moving van,**" "**trailer**" or "**temporary substitute**" not owned or leased by "**you**;" or
  2. while a "**relative**" is using it, any "**private passenger auto,**" "**moving van,**" "**trailer**" or "**temporary substitute**" not owned or leased by "**you**" or a "**relative.**"

  The operation or other use by "**you**" or a "**relative**" must be with the permission of the owner or "**you**" or the "**relative**" must reasonably believe the permission of the owner exists.

## OUR PROMISE

### Bodily Injury Liability Coverage

### Property Damage Liability Coverage

If these coverages are indicated on the "**Declarations**," "**we**" will pay all sums that "**anyone we protect**" legally must pay as damages caused by an accident covered by this policy. The accident must arise out of the ownership, maintenance, use, loading or unloading of an "**auto we insure.**"

Damages must involve:

1. bodily injury, meaning physical harm, sickness, disease, or resultant death to a person; or

2. property damage meaning:

   a. physical injury to or destruction of tangible property, including loss of its use; or

   b. loss of use of tangible property which is not physically injured or destroyed.

"**We**" may investigate or settle any claim or "**suit**" for damages against "**anyone we protect,**" at "**our**" expense. If "**anyone we protect**" is sued for damages covered by this policy, "**we**" will defend, with a lawyer "**we**" choose, even if the allegations are not true. "**Our**" obligation to pay any claim or judgment or defend any "**suit**" ends when "**we**" have used up "**your**" limit of protection by paying judgments or settlements or making a deposit in court.

X

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

## ADDITIONAL PAYMENTS

Payment for the following is in addition to the limit of protection shown on the "**Declarations**."

### Claim Expenses

"**We**" will pay:

1. court costs to defend or settle, as "**we**" believe proper, any claim or "**suit**" against "**anyone we protect**," for damages covered under this section. "**Our**" payment of the limit of protection for a settlement, judgment or deposit in court ends "**our**" duty to pay under this item.

2. expenses incurred to investigate and defend or settle, as "**we**" believe proper, any claim or "**suit**" against "**anyone we protect**" for damages covered under this section. "**Our**" payment of the limit of protection for a settlement, judgment or deposit in court ends "**our**" duty to pay under this item.

3. post-judgment interest, but only that portion of the post-judgment interest which accrues on that part of the judgment that does not exceed the limit of protection on a "**suit**" "**we**" defend. "**Our**" payment, offer in writing, or deposit in court of that part of the judgment that does not exceed the limit of protection ends "**our**" duty to pay any post-judgment interest that accrues after the date of "**our**" payment, written offer or deposit.

4. prejudgment interest or delay damages awarded on that part of any judgment that does not exceed the limit of protection. If "**we**" offer in writing to pay the applicable limit of protection, "**we**" will not pay any prejudgment interest or delay damages for the period of time after the offer.

5. reasonable expenses "**anyone we protect**" may incur at "**our**" request to help "**us**" investigate or defend a claim or "**suit**." This includes up to $300 a day for actual loss of earnings, limited to those days "**anyone we protect**" attends hearings or trials at "**our**" request.

6. premiums on the following types of bonds, but not for bond amounts greater than the limit of protection:

   a. appeal bond in a "**suit**" "**we**" defend;
   b. up to $500 for a bail bond premium required because of an accident or related traffic violation involving an "**auto we insure**;" and
   c. attachment bond to release property of "**anyone we protect**" due to an accident or related traffic violation involving an "**auto we insure**."

   "**We**" have no duty to apply for or furnish such bonds.

7. reasonable lawyers' fees up to $50 which "**anyone we protect**" incurs because of arrest, resulting from an accident involving an "**auto we insure**."

### First Aid Expenses

"**We**" will pay reasonable expenses for first aid to other persons and animals at the time of an accident involving an "**auto we insure**."

## EXTRA PROTECTION WHEN TEMPORARILY OUT OF STATE

If "**anyone we protect**:"

1. travels to another state, the District of Columbia, a territory or possession of the United States of America, Puerto Rico or Canada; and

2. as a nonresident becomes subject to a motor vehicle financial responsibility law, compulsory insurance law, or other similar law that imposes insurance requirements which are greater than the insurance provided by this policy,

then, the Liability Protection under this policy will be increased to the minimum amount of liability coverage required by law. Coverage provided to meet the minimum limits will be in lieu of the insurance otherwise provided by this policy.

The insurance under this provision will be reduced to the extent that there is other valid and collectible insurance under this or any motor vehicle insurance policy. In no event will any person be entitled to receive duplicate payments for the same elements of loss.

## EXCLUSIONS—What We Do Not Cover

"**We**" do not cover:

1. damage caused by "**anyone we protect**" to property they own or are transporting.

2. damage caused by "**anyone we protect**" to property rented to them or in their charge. This exclusion does not apply to household goods or household premises.

3. damages caused intentionally by or at the direction of "**anyone we protect**."

4. an "**owned auto we insure**" while being used in the "**auto business**." This exclusion does not apply if the "**owned auto we insure**" is being used by:

   a. "**you**" or a "**resident**" of "**your**" household; or
   b. any partner, agent, or employee of "**you**" or a "**resident**" of "**your**" household.

5. an "**owned auto we insure**" or a "**nonowned auto**" while used in the business of the United States Government where the United States Government is responsible under the Federal Tort Claims Act (28USCA §1346, 2671-2680).

6. a "**nonowned auto**:"

   a. while used by "**anyone we protect**" while employed or otherwise engaged in the "**auto business**;"
   b. while used in connection with any other business or occupation of "**anyone we protect**." This exclusion does not apply to a "**private passenger auto**" or "**trailer**;"
   c. while being operated by someone other than "**you**" or a "**relative**" even if the "**nonowned auto**" is in the custody or control of "**anyone we protect**;"
   d. furnished or available for the regular use of a "**relative**" while a "**relative**" is using it. This exclusion does not apply if the vehicle is furnished or available for "**your**" regular use; or

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

e. furnished or available by a governmental agency or unit:

   1) for "**your**" use while "**you**" or a "**relative**" are using it; or

   2) for a "**relative's**" use unless being used by "**you**."

7. bodily injury to employees of "**anyone we protect**" occurring in the course of employment. "**We**" will provide coverage for such an injury to a domestic employee not covered and not required to be covered by a workers compensation law.

8. a vehicle "**you**" acquire during the policy period or any "**temporary substitute**" for it if there is other applicable insurance.

9. an "**auto we insure**" while hired by or rented to others for a fee or while available for hire by the public. "**We**" will protect "**you**" or a "**relative**" held responsible for damages while "**occupying**" but not driving such a vehicle, if it is a "**nonowned auto**." Fee does not include payment received in a car pool or for trips for nonprofit social, educational, or charitable agencies.

10. damages for which there is insurance under a nuclear energy liability insurance policy, even if the limits of protection under that policy have been used up.

11. bodily injury or property damage arising out of the practice, preparation or participation in any prearranged, organized or spontaneous:

   a. racing contest;

   b. speed contest;

   c. demolition contest;

   d. high performance driving;

   e. stunting activities; or

   f. similar activities,

   including such use while at a facility or course designed for such purposes listed above.

12. punitive or exemplary damages and related defense costs.

13. bodily injury or property damage arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any "**fungi**," wet or dry rot, or bacteria.

14. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of a "**miscellaneous vehicle**."

## LIMIT OF PROTECTION

"**We**" will pay no more than the limit(s) shown on the "**Declarations**" for one "**auto**" in any one accident as explained below. It makes no difference how many persons "**we**" protect, "**autos we insure**," claims are made or "**autos**" are involved in the accident.

An "**auto**" and attached "**trailer**" are considered one "**auto**" under this coverage.

If coverage is purchased on a Split Limits basis, the "**Declarations**" will show a "per person" and "per accident" limit for Bodily Injury Liability and a "per accident" limit for Property Damage Liability. The "per person" limit for Bodily Injury Liability is the most "**we**" will pay for all damages arising out of bodily injury to one person in any one accident. The "per accident" limit for Bodily Injury Liability is the most "**we**" will pay for all damages arising out of bodily injury to all persons resulting from any one accident, subject to the "per person" limit. The "per accident" limit for Property Damage Liability is the most "**we**" will pay for all property damage caused by any one accident.

If coverage is purchased on a Single Limit basis, the "**Declarations**" will show a "per accident" limit for Bodily Injury Liability and Property Damage Liability. This is the most "**we**" will pay for all damages arising out of bodily injury and property damage caused by any one accident.

If an individual's damages derive from, arise out of or otherwise result from bodily injury to another person injured in the accident or the death of another person killed in the accident, "**we**" will pay only for such damages within the "per person" limit available to the person injured or killed in the accident.

## OTHER INSURANCE

This policy provides primary insurance for any "**owned auto we insure**." The policy's coverage is excess over any other collectible insurance on a "**nonowned auto**," up to the limit(s) of protection for one "**auto**."

"**We**" will, however, provide primary insurance for a motor vehicle "**you**" do not own if it is insured under a policy issued to a business engaged in selling, leasing, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles. This applies only if "**you**" or a "**relative**" are operating the motor vehicle and are not the owner, operator, employee or agent of that business.

If other insurance, collectible or not, covers an "**auto**" rented or leased for less than one year and it states that coverage is void if there is other available insurance, then coverages under this section are void.

When there is other insurance applicable to the accident on the same basis, "**we**" will pay "**our**" share. "**Our**" share is the proportion that "**our**" limit of protection bears to the total of all applicable limits.

"**We**" will never pay more than the limit of protection.

# PHYSICAL DAMAGE COVERAGES

## DEFINITIONS

*The following words and phrases have a special meaning when they appear in bold type and quotations in the PHYSICAL DAMAGE COVERAGES Section.*

- "**Loss**" means direct and accidental damage or direct and accidental loss.

- "**Nonowned auto**" means, while "**you**" or a "**relative**" are using it, any "**private passenger auto**," "**moving van**," "**trailer**" or "**temporary substitute**" not owned or leased by "**you**" or a "**relative**." "**You**" or a "**relative**" must have

X

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

permission to operate or use the vehicle or "**you**" or the "**relative**" must reasonably believe that permission exists.

A "**nonowned auto**" does not include one that is furnished or available for the regular use of "**you**" or a "**relative**." A "**private passenger auto**," "**moving van**" or "**trailer**" (not including a "**temporary substitute**") rented or leased to "**you**" for a period of more than 45 consecutive days will be considered as furnished or available for the regular use of "**you**" or a "**relative**."

## OUR PROMISE—Comprehensive Coverage

If Comprehensive Coverage is indicated on the "**Declarations**," "**we**" will pay for "**loss**" to an "**auto we insure**" and its equipment not caused by collision or upset. If the "**loss**" is to an "**owned auto we insure**," "**we**" will only pay if "**you**" purchased Comprehensive Coverage for the "**owned auto we insure**." "**We**" will pay for "**loss**" less the deductible shown on the "**Declarations**." Comprehensive Coverage includes glass breakage, contact with persons, animals, birds, missiles or falling objects. Should you "**your**" windshield be damaged, "**we**" will not apply the deductible if the windshield is repaired rather than replaced.

## OUR PROMISE—Collision Coverage

If Collision Coverage is indicated on the "**Declarations**," "**we**" will pay for "**loss**" to an "**auto we insure**" and its equipment caused by collision or upset. If the "**loss**" is to an "**owned auto we insure**," "**we**" will only pay if "**you**" purchased Collision Coverage for the "**owned auto we insure**." "**We**" will pay for "**loss**" less the deductible shown on the "**Declarations**."

"**We**" will not subtract the deductible if the accident is between an "**auto we insure**" and another "**auto**:"

1. insured by the Erie Insurance Group.
2. not insured by the Erie Insurance Group, if:
   a. the "**loss**" to the "**auto we insure**" is greater than the deductible amount;
   b. the owner of the other "**auto**" has been identified;
   c. the owner or operator of the other "**auto**" is solely liable for the "**loss**;" and
   d. there is adequate property damage liability insurance which protects anyone responsible for the "**loss**."

## ADDITIONAL PAYMENTS (No Deductible Applies To These Additional Payments)

If Comprehensive Coverage and/or Collision Coverage are purchased, "**we**" will:

1. pay all reasonable expenses necessary to return "**your**" stolen "**auto we insure**."
2. reimburse "**you**" for travel costs, including meals and lodging, paid by anyone because "**you**" were unable to reach "**your**" destination after "**loss**" to an "**auto we insure**." Payment will not exceed $75 per person for each "**loss**."
3. pay for "**loss**" to personal effects, including clothes and luggage, that are normally carried by a person, while the personal effects are in or upon an "**auto we insure**." The following restrictions apply:
   a. personal effects must be owned by "**you**" or a "**relative**."

   b. money, commercial or occupational tools or machines, sales samples, and merchandise for sale, delivery or exhibition are not considered personal effects.
   c. theft losses are covered only if the entire vehicle is stolen.
   d. when "**loss**" results from a collision, there must be enough damage to the "**auto we insure**" to require a Collision "**loss**" payment by "**us**."
   e. payment for "**loss**" to personal effects will not exceed $350. "**We**" will only pay for "**loss**" not covered by other insurance.
4. pay all expenses necessary to replace a deployed airbag.
5. reimburse "**you**" up to $75 for the cost incurred for locksmith services if keys are accidentally locked in an "**auto we insure**."

## EXCLUSIONS—What We Do Not Cover

"**We**" will not pay for "**loss**:"

1. confined to or resulting from wear and tear, freezing, mechanical or electrical breakdown or failure. "**We**" will pay for such damage resulting from a covered "**loss**." A covered "**loss**" does not include a "**loss**" confined to mechanical or electrical failure or body defects caused by or resulting from faulty workmanship or negligence by "**you**" or others.

2. caused intentionally by or at the direction of "**you**" or a "**relative**."

   However, this exclusion will not apply to deny payment to a co-insured who did not cooperate in or contribute to the creation of the "**loss**," if the "**loss**":
   a. is otherwise covered in this policy; and
   b. arises out of abuse to an innocent co-insured by a "**Named Insured**" or a "**relative**."

   With respect to this provision, abuse means:
   a. abuse as defined in the Pennsylvania Protection from Abuse Act; or
   b. attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

   If "**we**" pay a claim under this provision, "**our**" payment to the innocent co-insured is limited to that innocent co-insured's insurable interest in the property.

   In no event will "**we**" pay more than the Limit of Protection.

3. to any:
   a. tape players;
   b. compact disc players or recorders;
   c. digital video disc players or recorders;
   d. video cassette players or recorders;
   e. electronic navigational systems;
   f. radios;
   g. two-way mobile radios or telephones;
   h. scanners;
   i. televisions; and

6

j. any other similar equipment that records, receives or transmits audio, visual or data signals.

This exclusion does not apply to such equipment, its accessories, attachments and antennas if it is permanently installed.

Payment for "**loss**" to permanently installed equipment will be limited to $1,000. This limit will not apply if the equipment is permanently installed:

a. in the opening of the dash, console, or overhead console, normally used by the auto manufacturer to install such equipment; or

b. by the auto manufacturer in other locations of the "**auto**."

Payment for "**loss**" to tapes, digital video discs or compact discs will be limited to no more than ten tapes, digital video discs or compact discs in any one "**loss**." Coverage for theft of tapes, digital video discs or compact discs will be provided only if the sound equipment is stolen or the entire "**auto**" is stolen.

4. to fax machines, personal computers and peripheral equipment and similar electronic equipment.

5. to a vehicle "**you**" acquire during the policy period or any "**temporary substitute**" for it, if there is other applicable insurance.

6. to a "**nonowned auto**:"

a. while used in connection with the "**auto business**;" or

b. while used in connection with any other business or occupation. This exclusion does not apply to a "**private passenger auto**" or "**trailer**."

7. to any "**trailer**" used as a residence, office, store, display or passenger "**trailer**."

8. to any "**auto we insure**" while hired by or rented to others for a fee, or while available for hire by the public. Fee does not include payment received in a car pool or for trips for nonprofit social, educational or charitable agencies.

9. due to any act or condition of war, including discharge of any nuclear weapon (even if accidental). War (declared or undeclared) means a state of armed hostile conflict between states or nations, civil war, insurrection, rebellion or revolution.

10. due to radioactive contamination.

11. to camper bodies unless described on the "**Declarations**" or replacing one described there. A camper body is a unit designed and equipped for use as living quarters to be mounted on an "**auto**" with a separate cab.

12. to radar detectors and other equipment designed to give advance warning of the operation of a speed-measuring device.

13. to tires caused by road damage, such as a blow out or puncture, unless it results from another "**loss**" covered by this policy.

14. to an "**auto we insure**" because of destruction or confiscation by governmental or civil authorities if "**you**," a "**relative**" or a person using an "**auto we insure**" with "**your**" permission was involved in illegal activities.

15. to an "**auto we insure**" arising out of practice, preparation or participation in any prearranged, organized or spontaneous:

a. racing contest;

b. speed contest;

c. demolition contest;

d. high performance driving;

e. stunting activities; or

f. similar activities,

including such use while at a facility or course designed for such purposes listed above.

16. resulting directly or indirectly from "**fungi**," wet or dry rot, or bacteria, meaning the presence, growth, proliferation, spread or any activity of "**fungi**," wet or dry rot, or bacteria, even if other events or happenings contributed concurrently or in sequence to the "**loss**."

17. due to diminution in value. Diminution in value means any actual or perceived "**loss**" in market or resale value that results from a direct and accidental "**loss**." Diminution in value includes any actual or perceived "**loss**" or reduction in market or resale value after an "**auto we insure**" has been damaged and has been repaired.

18. to, or loss of use of, a "**nonowned auto**" rented by "**you**" or a "**relative**" if a rental vehicle company is precluded from recovering such "**loss**" or loss of use, from "**you**" or that "**relative**," pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF PROTECTION

"**We**" will pay Actual Cash Value for "**loss**" to stolen or damaged property, but no more than:

1. what it would cost to repair or replace the property with other of like kind and quality. However, if an "**auto**" has been driven 15,000 miles or less, or the "**auto**" is one year old or less, "**we**" will use only OEM (Original Equipment Manufacturer) parts for repairs. The age of the "**auto**" will be determined by subtracting the model year of the "**auto**" from the year of inception of the current policy period; or

2. the Stated Amount that may be shown on the "**Declarations**."

Actual Cash Value reflects fair market value, age and condition of the property at the time of the "**loss**."

An "**auto**" and attached "**trailer**" are considered to be two separate vehicles under these coverages. The limit of protection for "**loss**" to any "**trailer**" not owned by "**you**" is $2,000.

An "**auto**" and its equipment are considered one "**auto**" under these coverages including any deductible provision that applies. Equipment means that which is usual or incidental to the use of an "**auto**" as a vehicle.

Equipment includes, but is not limited to:

1. customized or individually adapted items when built or fit in or upon pickups or vans:

a. truck caps;

b. bay or custom windows;

c. interior wood trim;

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

d. special lighting fixtures; and

e. window treatments, such as draperies or mini-blinds.

2. equipment that allows a handicapped person to enter, exit or operate the vehicle;

X  3. attached child safety seats; and

4. a camper body if it is:

    a. described on the "**Declarations**" or replaces one described there; and

    b. mounted on an "**auto**."

"**Loss**" to a camper body while not mounted on an "**auto**" will be paid in accordance with the deductibles purchased on the camper body.

## OTHER INSURANCE

When there is other insurance for "**loss**" to an "**owned auto we insure**," "**we**" will pay "**our**" share of the "**loss**."

When there is "**loss**" to a "**nonowned auto**," "**we**" will pay the "**loss**" not covered by other insurance less any applicable deductible.

When there is other insurance on a "**nonowned auto**," and it states that coverage is void if there is other applicable insurance, then coverages under this section are void.

## APPRAISAL

If "**you**" and "**we**" fail to agree on the amount of "**loss**," either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, "**you**" or "**we**" can ask a judge of a court of record in the state where "**you**" reside at the time the policy is issued to select an umpire.

The appraisers will then set the amount of "**loss**." If the appraisers submit a written report of an agreement to "**us**," the amount agreed upon will be the amount of "**loss**." If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the amount of "**loss**."

Each party will pay the appraiser they choose, and equally bear all other expenses of the appraisal. However, if the written demand X for appraisal is made by "**us**," "**we**" will pay for the reasonable cost of "**your**" appraiser and "**your**" share of the cost of the umpire.

"**We**" will not be held to have waived any rights by any act related to appraisal.

## LOSS PAYMENT

At "**our**" option, "**we**" will pay the "**loss**" in money, or repair or replace the damaged or stolen property. At any time before the "**loss**" is paid or the property is replaced, "**we**" may return any stolen property to "**you**." "**We**" will pay the reasonable expense for its return and for any damage to it. Upon payment of the "**loss**," "**we**" have the right to take all or part of the property at its agreed or appraised value. There can be no abandonment of property to "**us**."

"**We**" may settle any claim for "**loss**" with "**you**" or anyone that has a legal interest in the property.

For damage to a "**nonowned auto**," "**we**" will pay the broadest amount available among the coverages "**you**" purchased under this section.

"**You**" must assign or transfer to "**us**" the Certificate of Title for the "**auto**" sustaining the "**loss**" before "**we**" will make a payment for all or part of the Actual Cash Value for a total "**loss**" to an "**auto we insure**." A total "**loss**" will be determined in compliance with the laws of the state in which "**you**" reside at the time the policy is issued. This paragraph is not applicable if "**you**" choose to retain ownership of the salvage vehicle as part of the total "**loss**" settlement.

## NO BENEFIT TO BAILEE

No bailee will benefit, directly or indirectly, from this insurance.

## LOSS PAYABLE CLAUSE

This clause applies to the Physical Damage Coverages provided by this policy for the Lienholder named on the "**Declarations**." It protects the Lienholder's financial interest in the vehicle insured.

Payment for any "**loss**" under these coverages will be made in accordance with the financial interest the "**Named Insured**" and the Lienholder, as its interest may appear for specific vehicle(s), have in the "**loss**." Payment may be made to the "**Named Insured**" and the Lienholder jointly or to either or both separately. If separate payments are made, the financial interests of both will be protected by "**us**."

When "**we**" pay the Lienholder for a "**loss**" for which the "**Named Insured**" is not insured, "**we**" are entitled to the Lienholder's right of recovery against the "**Named Insured**," to the extent of "**our**" payment. "**Our**" recovery will not impair the right of the Lienholder to recover the full amount of its claim.

The Lienholder will, on demand, pay any premium due under this policy for coverages which protect the Lienholder's interests, if the "**Named Insured**" fails to do so.

The Lienholder's financial interest will be protected regardless of the acts or neglect of the "**Named Insured**," subsequent legal encumbrance or any change in ownership of the property. However, this clause does not apply, and "**we**" will not protect, the Lienholder's financial interest in any case of fraudulent acts or omissions by the "**Named Insured**" or anyone representing the "**Named Insured**." If "**we**" cancel or refuse to renew this policy, not less than 10 days advance notice of such termination will be mailed to the Lienholder. If this policy is cancelled by the "**Named Insured**," "**we**" will mail notice of cancellation to the Lienholder. Mailing notice to the Lienholder's address shown on the "**Declarations**" will be sufficient proof of notice.

# ADDITIONAL COVERAGE

## PET PROTECTION                                                                            X

"**We**" will pay reasonable veterinarian costs incurred for the necessary treatment of a domestic dog or domestic cat which is:

1. owned by "**you**" or a "**relative**;" and

2. injured while riding inside an "**auto we insure**" at the time of a covered loss.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

If such injury results in the death of a domestic dog or domestic cat, "**we**" will pay to replace the animal with one of like kind and quality whether or not the animal is actually replaced. Replacement cost includes the amount associated with the first wellness visit as well as the cost to spay or neuter the animal. Replacement cost does not include any amounts associated with training. The most "**we**" will pay for any one animal for one covered loss for both veterinarian costs and replacement costs is $500. If more than one animal is injured or dies as a result of a covered loss, the maximum amount "**we**" will pay is $1,000 subject to a maximum payment of $500 for any one animal for both veterinarian costs and replacement costs.

## REIMBURSEMENT FOR COVERAGE IN MEXICO AND OTHER FOREIGN COUNTRIES

**WARNING:** "**We**" will not be liable for damages or other expenses incurred in any foreign country where this policy does not apply. In Mexico, however, if a covered Collision loss occurs to a "**private passenger auto**," which is an "**owned auto we insure**," Collision Coverage will apply if "**you**" have purchased Collision Coverage on that "**owned auto we insure.**"

"**We**" will reimburse "**you**" for premium paid for up to 30 days of coverage in a foreign country where this policy does not apply. Reimbursement will be made ONLY for similar coverages. Such coverages must apply to an "**owned auto we insure**," used by "**you**" or a "**relative**" in the foreign country. Reimbursement will not be made to anyone employed, stationed in the armed services, or attending school in a foreign country.

# RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS

"**We**," "**you**" and anyone else protected by this policy must do certain things in order for the terms of this policy to apply.

## DEFINITIONS

*The following words and phrases have a special meaning when they appear in bold type and quotations in the RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS Section.*

- "**Anyone we protect**" means:
  1. "**you**" and "**your**" spouse, if a "**resident**" of "**your**" household; and
  2. persons or organizations defined as "**anyone we protect**" in the LIABILITY PROTECTION Section or any applicable coverage.

## ASSIGNMENT

Interest in this policy may be transferred only with "**our**" written consent. "**We**" may require evidence that all "**Named Insureds**" approve the assignment.

## BANKRUPTCY OF ANYONE WE PROTECT

Bankruptcy or insolvency of "**anyone we protect**" will not relieve "**us**" of "**our**" obligations.

## CONCEALMENT, FRAUD OR MISREPRESENTATION

Within the first sixty (60) days this policy is in effect, "**we**" may void this policy in its entirety or deny coverage if, before or after an accident or loss, "**anyone we protect**" has intentionally concealed or misrepresented any material fact or circumstance concerning this insurance.

After this policy has been in effect for sixty (60) days, "**we**" may void this policy if:

1. "**anyone we protect**" has intentionally concealed or misrepresented any material fact concerning this insurance;
2. "**we**" could not have reasonably discovered the concealment or misrepresentation within the first sixty (60) days this policy was in effect; and
3. the undisclosed information would have caused "**us**" to refuse to insure the risk.

If "**we**" void this policy after it has been in effect for sixty (60) days, coverage under the Liability Protection and the First Party Benefits Endorsement will remain in effect for bodily injury or property damage sustained by innocent third parties, provided that such injury or damage is sustained before "**we**" notify the "**Named Insured**" that the policy is void. If "**we**" void this policy after it has been in effect for sixty (60) days, coverage under the Uninsured/Underinsured Motorists Coverage Endorsement, if purchased and indicated on the "**Declarations**," will remain in effect for bodily injury sustained by innocent third parties, provided that such injury or damage is sustained before "**we**" notify the "**Named Insured**" that the policy is void.

"**We**" may deny coverage for an accident or loss if "**anyone we protect**" intentionally conceals or misrepresents any material fact or circumstance in connection with the presentation or settlement of a claim.

In the event of a fraudulent claim, "**we**" will not make payment for the accident or loss.

## CONTINUOUS POLICY

This policy is a continuous policy. It will continue in force until cancelled by "**you**" or terminated by "**us**" as explained in the Termination Condition. Each year "**we**" will send "**you**" a "**Declarations**" that shows the premium due for the next policy period.

In return for this service, "**you**" must mail "**us**" written notice prior to the new policy period if "**you**" want to cancel. If "**we**" do not receive this notice, this policy remains in force and "**you**" must pay "**us**" the earned premium due for this time.

## COOPERATION

"**You**" agree to cooperate with "**us**" by promptly and truthfully answering all questions about drivers and "**autos we insure**" and signing all papers relating to such insurance.

## HOW YOUR POLICY MAY BE CHANGED

### Changes To Your Policy

This policy conforms to the laws of the state in which "**you**" reside at the time it is issued. If the laws of the state change, this

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

policy will comply with those changes. "**We**" will give "**you**" the benefit of any change made by "**us**" if it does not require additional premium. This change will be effective as of the date "**we**" implement the change in "**your**" state.

"**You**" may change this policy by asking "**us**." Asking "**our**" Agent is the same as asking "**us**." "**Your**" request must contain enough information to identify "**you**." If "**we**" agree with "**your**" request, "**we**" will then issue a "**Declarations**." If there is a change in the information used to develop the policy premium, "**we**" may adjust "**your**" premium during the policy period effective as of the date the change occurred. Premium adjustments will be made using the rules and rates in effect for "**our**" use. Changes that may result in a premium increase or decrease during the policy period include, but are not limited to:

1. change to "**your**" address;

2. change to the location where the insured vehicle is principally garaged;

3. change in "**your**" marital status;

4. change to the distance "**you**" drive to or from work or school;

5. change in the use of "**your**" vehicle (i.e., business use of a vehicle);

6. addition or deletion of an "**auto**" or lienholder or another party having a financial interest in "**your**" vehicle(s);

7. addition or deletion of a licensed driver in "**your**" household regardless of whether they have their own "**auto**" and insurance; and

8. changes which modify the appearance or performance of "**your**" vehicle with customized equipment. Customized equipment includes those items or changes that are other than what is offered by the auto manufacturer of that specific model of vehicle or what is added or altered by the auto dealer when the vehicle is new at the time of original sale. Equipment added to a vehicle to allow a disabled person to enter, exit or operate the vehicle is not considered customized equipment.

## Your Duty To Notify Us Of Changes

"**You**" agree to promptly notify "**us**" if "**you**" have made any material changes including, but not limited to, those listed above. Changes may result in an increased premium, an adjustment in the coverage available under this policy, or cancellation or nonrenewal as permitted by law.

## LAWSUITS AGAINST US

No legal action may be brought against "**us**" until there has been full compliance with all the terms of this policy. The legal liability of "**anyone we protect**" must be determined before "**we**" may be sued. This determination may be made by a court of law or by written agreement of all parties, including "**us**." No one has the right to make "**us**" a party to a "**suit**" to determine the liability of "**anyone we protect**." In the event of a medical, income or funeral payments claim or a Comprehensive or Collision loss, no "**suit**" may be brought against "**us**" until 30 days after proof of loss is filed.

## OUR RIGHT TO RECOVER FROM OTHERS

After "**we**" make a payment under this policy, "**we**" will have the right to recover from anyone else held responsible. "**Anyone we protect**" is required to transfer this right to "**us**," and do nothing to harm this right.

Anyone receiving payment from "**us**" and from someone else for the same accident or loss will reimburse "**us**" up to "**our**" payment.

"**We**" will pay all reasonable expenses "**anyone we protect**" may incur at "**our**" request to help "**us**" recover damages from anyone else held responsible. This includes up to $300 a day for actual loss of earnings, limited to those days "**anyone we protect**" attends hearings or trials at "**our**" request.

## PRIORITY

This insurance will first protect "**you**," "**your**" spouse residing in "**your**" household and then others "**we**" protect.    X

## SURVIVORS' COVERAGE

If "**you**" die, the policy will cover:

1. "**your**" spouse if residing in the same household at the time of "**your**" death;

2. anyone having proper custody of an "**owned auto we insure**" until a representative is appointed, but only until the end of the policy period during which "**your**" death occurs;

3. "**your**" legal representative, but only while performing duties as "**your**" representative and only until the end of the policy period during which "**your**" death occurs. However, if "**your**" death occurs 30 days or less before the end of the policy period, coverage will be extended up to 60 days from the date of "**your**" death; and    X

4. any "**relative**" covered under this policy on the date of "**your**" death, but only until the end of the policy period during which "**your**" death occurs. However, if "**your**" death occurs 30 days or less before the end of the policy period, coverage will be extended up to 60 days from the date of "**your**" death.    X    X

## TERMINATION

### Cancellation

"**You**" may cancel this policy by mailing or delivering to "**our**" Agent or "**us**" written notice stating at what future date "**you**" want the cancellation to take effect. "**We**" may waive these requirements by confirming the date of cancellation to "**you**" in writing.

"**We**" reserve the right to cancel for "**your**" noncompliance with "**our**" premium payment plans. "**We**" do not waive "**our**" right to cancel, even if "**we**" have accepted prior late payments.

If this policy is cancelled, "**we**" will return the pro rata unused share of "**your**" premium. Cancellation will be effective even if "**we**" have not given or offered any return premium.    X

For cancellations mailed during the first 60 days the policy is in effect, the effective date of cancellation will never be earlier than 15 days after "**we**" send it.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

For cancellations mailed after the first 60 days the policy is in effect, "**we**" will cancel only for one or more reasons permitted by state law, including the following reasons:

1. nonpayment of premium;

2. "**your**" driver's license or motor vehicle registration has been under suspension or revocation during the policy period; or

3. concealment of a material fact, making a material allegation contrary to fact, or making a misrepresentation of a material fact, where such concealment, allegation or misrepresentation was material to acceptance of the risk.

The effective date of cancellation will never be earlier than:

1. 60 days after "**we**" send it; or

2. 15 days after "**we**" send it for nonpayment of premium or when the cause of cancellation is license suspension or revocation.

## Nonrenewal

Should "**we**" refuse to renew this policy, "**we**" will do so in compliance with the laws of the state in which "**you**" reside. "**We**" will notify "**you**" before the end of the policy period.

"**We**" will send this notice at least 60 days in advance of the end of the policy period.

## Method Of Giving Notice

"**We**" may cancel or refuse to renew this policy or any coverage by mailing "**you**" written notice stating the effective date of "**our**" action. Mailing notice to the address shown on the "**Declarations**" will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.

## WHAT TO DO WHEN AN ACCIDENT OR LOSS HAPPENS

When there is an accident or loss, "**anyone we protect**" will:

1. notify "**us**" or "**our**" Agent in writing as soon as possible stating the:

   a. name and policy number of "**our**" Policyholder;

   b. time, place and circumstances of the accident or loss; and

   c. names and addresses of injured persons and witnesses.

2. promptly notify the police in case of theft.

3. provide "**us:**"

   a. promptly, any papers that relate to the accident or loss;

   b. separate, signed, written and/or oral statements containing all the facts about the claim; and

   c. proof of loss to damaged property.

4. at "**our**" request, separately:

   a. answer all questions about the accident or loss;

   b. submit to examinations and statements under oath and sign transcripts of the same;

   c. assist in making settlement;

   d. help "**us**" enforce any right of recovery against anyone liable to "**anyone we protect**;"

   e. cooperate with "**our**" investigations and any lawsuits;

   f. attend hearings and trials;

   g. assist "**us**" in securing and giving evidence and in obtaining the attendance of witnesses;

   h. submit to physical and mental examination by doctors "**we**" choose as often as "**we**" reasonably require. "**We**" will pay for these examinations;

   i. sign papers to allow "**us**" to obtain medical reports, earnings statements and copies of records; and

   j. allow "**us**" to inspect and appraise the damaged property before its repair or disposal.

5. not make payments, assume obligations or incur expenses, except at their own cost.

6. protect "**autos we insure**" from further damage. "**We**" will pay reasonable costs to do so. "**We**" will not pay for loss due to "**your**" failure to protect an "**auto we insure**" from further damage after a loss.

## WHEN AND WHERE YOUR POLICY APPLIES

This policy applies to accidents or losses that occur during the policy period in the United States of America, its territories and possessions, Puerto Rico, Canada or between their ports. The policy period is shown on the "**Declarations**." Unless otherwise specified on the "**Declarations**," the policy period begins and ends at 12:01 A.M., Standard Time at the stated address of the "**Named Insured**."

---

This policy has been signed on "**our**" behalf in Erie, Pennsylvania, by "**our**" President and Secretary.

*Timothy G. NeCastro*

President

*Brian W. Bolash*

Secretary



**Erie Insurance**®

Home Office • 100 Erie Insurance Place • Erie, PA 16530 • 814.870.2000
Visit our website at erieinsurance.com

ERIE INSURANCE
PRIVATE PASSENGER AUTO
AFAA01 (Ed. 8/19) UF-C761

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISCELLANEOUS VEHICLE ENDORSEMENT

## GENERAL POLICY DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is used as defined in the GENERAL POLICY DEFINITIONS section of the policy.*

*If a* **"miscellaneous vehicle"** *is listed under "Vehicles Covered" on the* **"Declarations***," then the GENERAL POLICY DEFINITIONS are revised as follows:*

**"Auto"** is revised to include a **"miscellaneous vehicle."**

**"Owned auto we insure"** is revised to include:

1. any **"miscellaneous vehicle"** described on the **"Declarations"** for the coverages **"you"** have purchased; or

2. any **"additional miscellaneous vehicle"** or **"replacement miscellaneous vehicle."**

**"Temporary substitute"** is revised to include any **"miscellaneous vehicle"** which is a substitute for an owned **"miscellaneous vehicle"** described on the **"Declarations"** which has been withdrawn from normal use because of a breakdown, destruction, loss, repair or servicing. The **"temporary substitute"** cannot be owned by **"you"** and must be used with the permission of the owner. The **"temporary substitute"** must be the same type of **"miscellaneous vehicle"** as shown on the **"Declarations."**

**"Trailer"** is revised to include a vehicle designed to be pulled by a **"miscellaneous vehicle"** if not used for business purposes.

*The following definitions are added:*

**"Additional miscellaneous vehicle"** means a **"miscellaneous vehicle"** other than a **"replacement miscellaneous vehicle"** which **"you"** acquire, purchase or lease during the policy period. For coverage to apply, **"we"** must insure all owned **"miscellaneous vehicles"** of the same type on the date **"you"** acquire an **"additional miscellaneous vehicle."** **"We"** will not automatically cover an **"additional miscellaneous vehicle"** when **"we"** do not already insure a **"miscellaneous vehicle"** of the same type owned by **"you."**

**"Additional miscellaneous vehicle"** does not include any **"miscellaneous vehicle"** that **"you"** acquire, purchase or lease with anyone other than a **"relative."** Coverage does not apply to an **"additional miscellaneous vehicle"** registered to a corporation or other business entity.

**"You"** must notify **"us,"** during the policy period, of **"your"** intention to have this policy apply to the **"additional miscellaneous vehicle."** If **"you"** obtain an **"additional miscellaneous vehicle"** within 30 days prior to the end of the policy period, **"you"** have 60 days after acquisition to notify **"us."**

Should a loss occur involving an **"additional miscellaneous vehicle"** prior to **"your"** notifying **"us,"** the **"additional miscellaneous vehicle"** will have the broadest coverage **"you"** have purchased for any one vehicle listed on the **"Declarations."** If **"you"** do not have:

1. Comprehensive Coverage on any vehicle listed on the **"Declarations,"** then Comprehensive Coverage will apply, subject to a $500 deductible. However, Comprehensive Coverage will end seven days after **"you"** acquire, purchase or lease the vehicle or when **"you"** report the **"additional miscellaneous vehicle"** to **"us,"** whichever occurs first.

2. Collision Coverage on any vehicle listed on the **"Declarations,"** then Collision Coverage will apply, subject to a $500 deductible. However, Collision Coverage will end seven days after **"you"** acquire, purchase or lease the vehicle or when **"you"** report the **"additional miscellaneous vehicle"** to **"us,"** whichever occurs first.

**"Customized equipment and accessories"** means equipment, devices, enhancements and changes, other than those that are original manufacturer installed, that alter the appearance or performance of a covered motorcycle. This includes, but is not limited to:

1. any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or play back recorded media, that are permanently installed on a covered motorcycle using bolts or brackets, including slide-out brackets;

2. custom wheels or tires;

3. custom paint, decals or graphics;

4. custom plating;

5. custom exhaust systems;

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

6. chromed accessories;

7. saddle bags;

8. custom seats;

9. windshields;

10. sidecars and trailers;

11. trike conversion kits; and

12. other items on "**your**" motorcycle not originally provided by the manufacturer.

"**Replacement miscellaneous vehicle**" means a "**miscellaneous vehicle**" that "**you**" acquire, purchase or lease within the policy period to replace a "**miscellaneous vehicle**" of the same type described on the "**Declarations**." "**Replacement miscellaneous vehicle**" does not include a "**miscellaneous vehicle**" that "**you**" acquire, purchase or lease with anyone other than a "**relative**." Coverage does not apply to a "**replacement miscellaneous vehicle**" registered to a corporation or other business entity.

"**You**" must notify "**us**" during the policy period of "**your**" intention to have this policy apply to a "**replacement miscellaneous vehicle**." If "**you**" obtain a "**replacement miscellaneous vehicle**" within 30 days prior to the end of the policy period, "**you**" have 60 days after acquisition to notify "**us**."

Should a loss occur involving a "**replacement miscellaneous vehicle**" prior to "**your**" notifying "**us**," the "**replacement miscellaneous vehicle**" will have the broadest coverage "**you**" have purchased for any one vehicle listed on the "**Declarations**."

If "**you**" do not have:

1. Comprehensive Coverage on any vehicle listed on the "**Declarations**," then Comprehensive Coverage will apply, subject to a $500 deductible. However, Comprehensive Coverage will end seven days after "**you**" acquire, purchase or lease the vehicle or when "**you**" report the "**replacement miscellaneous vehicle**" to "**us**," whichever occurs first.

2. Collision Coverage on any vehicle listed on the "**Declarations**," then Collision Coverage will apply, subject to a $500 deductible. However, Collision Coverage will end seven days after "**you**" acquire, purchase or lease the vehicle or when "**you**" report the "**replacement miscellaneous vehicle**" to "**us**," whichever occurs first.

"**Safety riding apparel**" means safety apparel specifically designed to minimize injury from an accident, including, but not limited to:

1. helmets;

2. leathers;

3. riding boots;

4. riding gloves; and

5. protective eyewear.

## LIABILITY PROTECTION

### DEFINITIONS

*If a* "**miscellaneous vehicle**" *is listed under "Vehicles Covered" on the* "**Declarations**," *then the following DEFINITION is revised as follows:*

"**Owned auto we insure**" is revised to include:

1. any "**miscellaneous vehicle**" described on the "**Declarations**" for the coverages "**you**" have purchased; or

2. any "**additional miscellaneous vehicle**" or "**replacement miscellaneous vehicle**."

### EXCLUSIONS - What We Do Not Cover

*The following exclusion does not apply to a* "**miscellaneous vehicle**" *listed under "Vehicles Covered" on the* "**Declarations**:"

"**We**" do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of a "**miscellaneous vehicle**."

## PHYSICAL DAMAGE COVERAGES

### CUSTOMIZED EQUIPMENT AND ACCESSORIES AND SAFETY RIDING APPAREL (No Deductible Applies)

Coverage is limited to the amount for "**customized equipment and accessories**" and "**safety riding apparel**" shown on the "**Declarations**." In the event of a theft loss, this coverage applies whether or not the entire vehicle is stolen.

At "**our**" request, "**you**" must provide receipts for "**customized equipment and accessories**" and "**safety riding apparel**."

## OTHER PROVISIONS

All other provisions of the policy apply.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

ERIE INSURANCE EXCHANGE
PRIVATE PASSENGER AUTO
AFPA03 (Ed. 8/19) UF-6380

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGE ENDORSEMENT – PENNSYLVANIA

## GENERAL POLICY DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is used as defined in the GENERAL POLICY DEFINITIONS section of the policy.*

*The definition of "**temporary substitute**" is deleted and replaced by the following:*

"**Temporary substitute**" means any "**auto**" or "**trailer**" which is a substitute for an "**owned auto we insure**." The "**owned auto we insure**" must be withdrawn from normal use because of:

- breakdown;
- destruction;
- loss;
- repair;
- servicing;
- being transported; or
- inspection.

The "**temporary substitute**" cannot be owned by "**you**" and must be used with the permission of the owner.

*The definition of "**you**," "**your**" or "**Named Insured**" is deleted and replaced by the following:*

"**You**," "**your**" or "**Named Insured**" means the "**Subscriber**" identified as a Named Insured on the "**Declarations**" and others identified as a Named Insured(s) on the "**Declarations**." Except under the RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS Section, these words include the spouse of the "**Subscriber**" identified as a Named Insured on the "**Declarations**," provided the spouse is a "**resident**."

"**You**," "**your**" or "**Named Insured**" also means any Limited Liability Company (LLC) shown on the "**Declarations**" as an additional insured. This includes any natural person designated as a member or manager of the Limited Liability Company (LLC), but only while such person is acting within the scope of their duties as a member or manager.

## LIABILITY PROTECTION

### DEFINITIONS

*The following definition is added:*

"**Owned auto we insure**" means any:

1. "**auto**" or "**trailer**" described on the "**Declarations**" for the coverages "**you**" have purchased;

2. "**trailer**" "**you**" own;

3. "**additional auto**," or "**additional trailer**;" or

4. "**replacement auto**," or "**replacement trailer**."

### OUR PROMISE

**Bodily Injury Liability Coverage**

**Property Damage Liability Coverage**

*The following sentence is added to the first paragraph:*

"**We**" will also provide primary insurance on a "**temporary substitute**" if it is a loaner vehicle provided by a motor vehicle dealer.

### EXCLUSIONS – What We Do Not Cover

*The following is added to exclusion 6:*

Exclusion 6.c. and 6.d. do not apply to a "**temporary substitute**" if it is a loaner vehicle provided by a motor vehicle dealer.

*The following is added to exclusion 8:*

Exclusion 8. does not apply to a "**temporary substitute**" if it is a loaner vehicle provided by a motor vehicle dealer.

*Exclusion 9. is deleted and replaced by the following:*

"**We**" do not cover:

9. an "**auto we insure**" while hired by or rented to others for a fee or while available for hire by the public. "**We**" will protect "**you**" or a "**relative**" held responsible for damages while "**occupying**" but not driving such a vehicle, if it is a "**nonowned auto**." Fee does not include payment received in a car pool or for trips for nonprofit social, educational, or charitable agencies.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

If an "**owned auto we insure**" or a "**temporary substitute**" for that "**owned auto we insure**" is:

a. identified for Business use as indicated on the "**Declarations**;" and

b. used by "**you**" or a "**relative**" as a transportation network company (TNC) partner,

Exclusion 9. does not apply for that vehicle. For purposes of this exception, coverage will be excess over any other collectible insurance.

A transportation network company (TNC) is one that provides transportation for passengers or goods:

a. on a prearranged basis; and

b. only by means of a digital platform that enables the passengers or customers to connect with TNC partners using a TNC partner vehicle.

A TNC partner is one who transports passengers or goods, but only for passengers or for those customers that the TNC matched with the partner through the digital platform.

*The following exclusion is added:*

"**We**" do not cover:

15. damage caused by any "**trailer**" used as a residence, office, store, display or passenger "**trailer**."

## LIMIT OF PROTECTION

*The second paragraph is deleted and replaced by the following:*

An "**auto**" and attached "**trailer**" are considered one "**auto**" under this coverage. When unattached, a "**trailer**" is subject to the limit of liability for one "**auto**."

## OTHER INSURANCE *is deleted and replaced by the following:*

## OTHER INSURANCE

This policy provides primary insurance for any:

1. "**owned auto we insure**;" and

2. "**temporary substitute**," but only if it is a loaner vehicle provided by a motor vehicle dealer.

This policy's coverage is excess over any other collectible insurance on a "**nonowned auto**," (except a "**temporary substitute**" which is a loaner vehicle provided by a motor vehicle dealer), up to the limit(s) of protection for one "**auto**."

"**We**" will, however, provide primary insurance for a motor vehicle "**you**" do not own if it is insured under a policy issued to a business engaged in selling, leasing, repairing, servicing, delivering, testing, road testing, parking or storing

motor vehicles. This applies only if "**you**" or a "**relative**" are operating the motor vehicle and are not the owner, operator, employee or agent of that business.

If other insurance, collectible or not, covers an "**auto**" rented or leased for less than one year and it states that coverage is void if there is other available insurance, then coverages under this section are void.

When there is other insurance applicable to the accident on the same basis, "**we**" will pay "**our**" share. "**Our**" share is the proportion that "**our**" limit of protection bears to the total of all applicable limits.

"**We**" will never pay more than the limit of protection.

## PHYSICAL DAMAGE COVERAGES

### OUR PROMISE – Comprehensive Coverage

*The following is added:*

No deductible applies for window glass breakage if Full Window Glass is shown on the "**Declarations**."

If Comprehensive Coverage is indicated on the "**Declarations**," Comprehensive Coverage will apply as primary coverage to a "**temporary substitute**" but only if it is a loaner vehicle provided by a motor vehicle dealer.

"**We**" will reimburse "**you**" for Transportation Expenses that result from a Comprehensive "**loss**" to:

1. an "**owned auto we insure**;"

2. a "**temporary substitute**" for that "**owned auto we insure**," but only if it is a loaner vehicle provided by a motor vehicle dealer.

Total payment for Transportation Expenses under Comprehensive Coverage, including:

1. loss of use;

2. transportation fares such as bus, taxi or rideshare,

will not exceed the rental provisions for a Compact Sedan or $20 per day/$900 per loss, unless a higher rental class is purchased and shown on the "**Declarations**" for that vehicle. Additionally, if Comprehensive Coverage is purchased on a "**trailer**," then Transportation Expenses – Comprehensive Coverage will extend to that "**trailer**" while it is attached to an "**owned auto we insure**." Transportation Expenses – Comprehensive Coverage will be provided on the "**trailer**" at the "per day/per loss" limit applicable on the "**owned auto we insure**" that is towing the "**trailer**" that sustained the "**loss**."

Payment may start on the day of the "**loss**" if the "**owned auto we insure**" or a "**temporary substitute**" as described above cannot be driven. If drivable, payment may start on the day "**you**" leave the vehicle at the garage for repairs.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Transportation Expenses apply whether or not "**we**" pay for damages under Comprehensive Coverage.

Transportation Expenses will be provided for up to 45 days per disablement. Payment for Transportation Expenses on an "**owned auto we insure**" or a "**temporary substitute**" as described above will end as indicated below, whichever occurs first:

1. no more than ten days after "**we**" offer settlement;

2. on the day the vehicle is replaced;

3. on the day the vehicle is returned to "**you**" in usable condition; or

4. on the day the vehicle could reasonably be expected to be repaired.

Transportation Expenses are provided for loss of use to a "**temporary substitute**" if:

1. "**you**" or a "**relative**" are legally liable for damages to the "**temporary substitute**;" and

2. "**we**" are provided with actual proof of loss of income.

## OUR PROMISE – Collision Coverage

*The following paragraph is added after the first paragraph:*

If Collision Coverage is indicated on the "**Declarations**," Collision Coverage will apply as primary coverage to a "**temporary substitute**" but only if it is a loaner vehicle provided by a motor vehicle dealer.

## ADDITIONAL PAYMENTS (No Deductible Applies To These Additional Payments) *is deleted and replaced by the following:*

## ADDITIONAL PAYMENTS (No Deductible Applies)

If the Additional Payment is a result of a collision "**loss**," Collision Coverage must be indicated on the "**Declarations**" for the "**auto we insure**." Otherwise, Comprehensive Coverage must be indicated on the "**Declarations**" for the "**auto we insure**." "**We**" will:

1. pay all reasonable expenses necessary to return "**your**" stolen "**auto we insure**."

2. reimburse "**you**" for travel costs, including meals and lodging, paid by anyone because "**you**" were unable to reach "**your**" destination after "**loss**" to an "**auto we insure**." Payment will not exceed $75 per person for each "**loss**."

3. pay for "**loss**" to personal effects, including clothes and luggage, that are normally carried by a person, while the personal effects are in or upon an "**auto we insure**." The following restrictions apply:

   a. personal effects must be owned by "**you**" or a "**relative**."

   b. money, professional or occupational tools or machines, sales samples, and merchandise for sale, delivery or exhibition are not considered personal effects.

   c. theft losses are covered only if the entire vehicle is stolen. This restriction does not apply to coverage provided under CUSTOMIZED EQUIPMENT AND ACCESSORIES AND SAFETY RIDING APPAREL.

   d. when "**loss**" results from a collision, there must be enough damage to the "**auto we insure**" to require a collision "**loss**" payment by "**us**."

   e. payment for "**loss**" to personal effects will not exceed $350. "**We**" will only pay for "**loss**" not covered by other insurance.

4. pay reasonable towing and labor required because "**your**" "**trailer**" becomes disabled while attached to a "**motor vehicle**." Labor must be done at the site of the disablement.

5. reimburse "**you**" up to $75 for the cost incurred for locksmith services if keys are accidentally locked in an "**auto we insure**."

6. pay for a new set of standard windshield wiper blades if "**your**" windshield is replaced due to a covered "**loss**."

## EXCLUSIONS – What We Do Not Cover

*The following is added to Exclusion 5:*

Exclusion 5. does not apply to a "**temporary substitute**" if it is a loaner vehicle provided by a motor vehicle dealer.

Exclusion 8. is deleted and replaced by the following:

"**We**" will not pay for "**loss**:"

8. to any "**auto we insure**" while hired by or rented to others for a fee, or while available for hire by the public. Fee does not include payment received in a car pool or for trips for nonprofit social, educational or charitable agencies.

   If an "**owned auto we insure**" or a "**temporary substitute**" for that "**owned auto we insure**" is:

   a. identified for Business use as indicated on the "**Declarations**;" and

   b. used by "**you**" or a "**relative**" as a transportation network company (TNC) partner.

   Exclusion 8. does not apply for that vehicle. For purposes of this exception, coverage will be excess over any other collectible insurance.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

A transportation network company (TNC) is one that provides transportation for passengers or goods:

a. on a prearranged basis; and

b. only by means of a digital platform that enables the passengers or customers to connect with TNC partners using a TNC partner vehicle.

A TNC partner is one who transports passengers or goods, but only for passengers or for those customers that the TNC matched with the partner through the digital platform.

**OTHER INSURANCE** *is deleted and replaced by the following:*

**OTHER INSURANCE**

When there is other insurance for "**loss**" to an "**owned auto we insure**," "**we**" will pay "**our**" share of the "**loss**."

When there is "**loss**" to a "**nonowned auto**," "**we**" will pay the "**loss**" not covered by other insurance less any applicable deductible. However, this policy provides primary insurance for a "**temporary substitute**," but only if it is a loaner vehicle provided by a motor vehicle dealer.

When there is other insurance on a "**nonowned auto**," and it states that coverage is void if there is other applicable insurance, then coverages under this section are void. This paragraph does not apply to a "**temporary substitute**" if it is a loaner vehicle provided by a motor vehicle dealer.

**LOSS PAYMENT**

*The last two sentences of the fourth paragraph are deleted and replaced by the following:*

A total "**loss**" and any change required in the vehicle's titling will be determined in compliance with the laws of the state in which "**you**" reside at the time the policy is issued. Therefore, this paragraph may not be applicable if "**you**" choose to retain ownership of the salvage vehicle as part of the total "**loss**" settlement.

## OTHER PROVISIONS

All other provisions of the policy apply.

ERIE INSURANCE EXCHANGE
PRIVATE PASSENGER AUTO
AFPA05 (Ed. 8/19) UF-C769

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ROADSIDE AND RENTALS ENDORSEMENT – PENNSYLVANIA

*This endorsement contains provisions applicable to Roadside Service and Transportation Expenses which changes provisions contained in your policy to the extent that the provisions in this endorsement are different from those in your policy.*

## DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is defined in the GENERAL POLICY DEFINITIONS or PHYSICAL DAMAGE COVERAGES sections of the policy.*

## ROADSIDE SERVICE

If Roadside Service Coverage is indicated on the "**Declarations**," "**we**" will reimburse "**you**" for reasonable towing and labor costs required because an "**auto we insure**" is disabled. Labor must be done at the site of the disablement. "**We**" will only pay for "**loss**" to an "**owned auto we insure**" on which "**you**" have purchased this coverage.

In addition, "**we**" will reimburse "**you**" for travel costs, including meals and lodging, paid by anyone because "**you**" were unable to reach "**your**" destination because an "**auto we insure**" is disabled. Payment will not exceed $75 per person for each "**loss**."

No one will be entitled to receive duplicate payments for the same elements of "**loss**" under this coverage and Additional Payments in the PHYSICAL DAMAGE COVERAGES section of this policy.

## RENTALS

### Transportation Expenses – Collision Coverage

If Transportation Expenses – Collision Coverage is indicated on the "**Declarations**," "**we**" will reimburse "**you**" for Transportation Expenses that result from a Collision "**loss**" to:

1. an "**owned auto we insure**" that has a premium shown on the "**Declarations**" for this coverage. Additionally, if Collision Coverage is purchased on a "**trailer**," then Transportation Expenses – Collision Coverage will extend to that "**trailer**" while it is attached to an "**owned auto we insure**." Transportation Expenses – Collision Coverage will be provided on the "**trailer**" at the "per day/per loss" limit for the Rental Class purchased on the "**owned auto we insure**" that is towing the "**trailer**" that sustained the "**loss**."

2. a "**temporary substitute**" for that "**owned auto we insure**," but only if it is a loaner vehicle provided by a motor vehicle dealer. The Rental Class for the "**temporary substitute**" will be the Rental Class available on the "**owned auto we insure**" that has been withdrawn from normal use.

Transportation Expenses are provided for loss of use to a "**temporary substitute**" if:

1. "**you**" or a "**relative**" are legally liable for damages to the "**temporary substitute**;" and

2. "**we**" are provided with actual proof of loss of income.

### Transportation Expenses – Comprehensive Coverage

If Comprehensive Coverage is indicated on the "**Declarations**," "**we**" will reimburse "**you**" for Transportation Expenses that result from a Comprehensive "**loss**" to:

1. an "**owned auto we insure**" that has a premium shown on the "**Declarations**" for Comprehensive Coverage. Additionally, if Comprehensive Coverage is purchased on a "**trailer**," then Transportation Expenses – Comprehensive Coverage will extend to that "**trailer**" while it is attached to an "**owned auto we insure**." Transportation Expenses – Comprehensive Coverage will be provided on the "**trailer**" at the "per day/per loss" limit for the Rental Class purchased on the "**owned auto we insure**" that is towing the "**trailer**" that sustained the "**loss**."

2. a "**temporary substitute**" for that "**owned auto we insure**," but only if it is a loaner vehicle provided by a motor vehicle dealer. The Rental Class for the "**temporary substitute**" will be the Rental Class available on the "**owned auto we insure**" that has been withdrawn from normal use.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Transportation Expenses are provided for loss of use to a "**temporary substitute**" if:

1. "**you**" or a "**relative**" are legally liable for damages to the "**temporary substitute**;" and

2. "**we**" are provided with actual proof of loss of income.

**Loss Payment**

Total payment under Transportation Expenses − Collision Coverage, including loss of use, will not exceed the Transportation Expenses − Collision Rental Class applicable to the "**owned auto we insure**" or a "**temporary substitute**" as described above that sustained the "**loss**."

Total payment under Transportation Expenses − Comprehensive Coverage, including loss of use, will not exceed the rental provisions for a Class 1 − Compact Sedan, unless a higher Rental Class is shown on the "**Declarations**" and is applicable to the "**owned auto we insure**" or a "**temporary substitute**" as described above that sustained the "**loss**."

Payment may start on the day of the "**loss**" if the "**owned auto we insure**" or a "**temporary substitute**" as described above cannot be driven. If drivable, payment may start the day "**you**" leave the vehicle at the garage for repairs.

Transportation Expenses will be provided for up to 45 days per disablement. Payment for Transportation Expenses on an "**owned auto we insure**" or a "**temporary substitute**" as described above will end as indicated below, whichever occurs first:

1. no more than ten days after "**we**" offer settlement;

2. on the day the vehicle is replaced;

3. on the day the vehicle is returned to "**you**" in usable condition; or

4. on the day the vehicle could reasonably be expected to be repaired.

Transportation Expenses apply whether or not "**we**" pay for damages under Comprehensive or Collision Coverage.

Auto rental, bus, rideshare or taxi fares are examples of covered Transportation Expenses.

Transportation Expenses for an auto rental will be provided as indicated below for the Rental Class/Vehicle Type listed on the "**Declarations**" without regard to the "per day" limit for that class. The "per day" limit will apply for Motorcycle Rental, Trailer Rental; Transportation Fares, Loss of Use; or a rental in higher class as indicated below.

| Rental Class | Vehicle Type | Per Day Limit | Per Loss Limit |
|---|---|---|---|
| Class 1 | Compact Sedan | $ 20 | $  900 |
| Class 2 | Traditional Sedan | $ 25 | $1,125 |
| Class 3 | Small SUV/Pickup Truck | $ 30 | $1,350 |
| Class 4 | Minivan/Midsize SUV | $ 35 | $1,575 |
| Class 5 | Luxury Sedan/Large SUV | $ 40 | $1,800 |
| Class 6 | Specially equipped vehicle for disabled | $100 | $4,500 |

## OTHER PROVISIONS

All other provisions of the policy apply.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

ERIE INSURANCE
PRIVATE PASSENGER AUTO
AFPF01 (Ed. 11/17) UF-4625

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FIRST PARTY BENEFITS ENDORSEMENT – PENNSYLVANIA

*This endorsement contains provisions applicable to First Party Benefits Coverage and changes provisions contained in your policy to the extent that the provisions in this endorsement are different from those in your policy. Coverage is provided only if a premium for the specific First Party Benefit selected is shown on the Declarations.*

## DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is used as otherwise defined in the GENERAL POLICY DEFINITIONS section of the policy.*

**"Anyone we protect"** means:

1. **"you;"**

2. a **"relative;"**

3. an individual specifically named on the **"Declarations"** for coverage under this First Party Benefits Endorsement, and that person's **"relatives;"** and

4. anyone else who sustains **"bodily injury"** while:

   a. **"occupying"** an **"insured motor vehicle,"** or

   b. a nonoccupant of a **"motor vehicle"** if injured as a result of an accident in Pennsylvania involving an **"insured motor vehicle."** An unoccupied, parked **"insured motor vehicle"** is not a **"motor vehicle"** involved in an accident unless it was parked in a manner so as to create an unreasonable risk of injury.

**"Bodily injury"** or **"injury"** means accidental bodily harm to a person and that person's resulting illness, disease or death. **"Bodily injury"** includes mental injury only if it arises out of bodily harm sustained in an accident covered by this endorsement.

**"Insured motor vehicle"** means a **"motor vehicle:"**

1. to which the Bodily Injury Liability insurance of this policy applies and for which a specific premium is charged, and

2. for which **"you"** maintain First Party Benefits on this policy as required under the Pennsylvania Motor Vehicle Financial Responsibility Law, as amended.

**"Relative"** means a **"resident"** of **"your"** household who is:

1. a person related to **"you"** by blood, marriage or adoption;

2. a ward or any other person under 21 years old in **"your"** care; or

3. a minor in the custody of a **"relative."**

## OUR PROMISE

As **"you"** selected in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, as amended, **"we"** will pay for:

1. medical expenses,

2. funeral expenses, and/or

3. income loss,

arising from **"bodily injury"** to **"anyone we protect"** due to an accident resulting from the maintenance or use of a **"motor vehicle"** as a vehicle. **"We"** will pay these benefits no matter who is at fault in the accident.

## BENEFITS

### Medical Expenses

**"We"** will pay reasonable and necessary charges for:

1. medical treatment, including but not limited to:

   a. medical, hospital, surgical, nursing and dental services;

   b. medications, medical supplies and prosthetic devices; and

   c. ambulance.

2. medical and rehabilitative services, including but not limited to:

   a. medical care;

   b. licensed physical therapy, vocational rehabilitation and occupational therapy;

   c. osteopathic, chiropractic, psychiatric and psychological services; and

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

d. optometric services, speech pathology and audiology.

3. nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Payment of medical expenses will be made pursuant to Section 1797 (a) of the Pennsylvania Motor Vehicle Financial Responsibility Law, and as it may be amended.

All medical treatment and medical and rehabilitative services must be provided by or prescribed by a person or facility approved by the Department of Health, the equivalent governmental agency responsible for health programs or the accrediting designee of a department or agency of the state in which those services are provided.

"**We**" use Peer Review Organizations (PRO) which have been approved by the Insurance Commissioner to evaluate whether or not:

1. treatment;

2. health care services;

3. products; or

4. accommodations;

which were provided conform to professional standards of performance and were reasonable and medically necessary.

"**We**," the injured person or the provider may request a reconsideration by the PRO within 30 days of the PRO's initial determination. This request for reconsideration as to the reasonableness and necessity of treatment must be made pursuant to Section 1797 (b) of the Pennsylvania Motor Vehicle Financial Responsibility Law, and as it may be amended.

If "**we**" refuse payment of a provider's bill and do not challenge it before a PRO within 90 days of receipt, the injured person may ask the court to review "**our**" refusal to pay. This 90 day provision does not apply to continuing treatment or services.

Payment of medical expenses will not exceed 110% of the:

1. prevailing charge at the 75th percentile;

2. applicable fee schedule, the recommended fee or the inflation index charge;

3. diagnostic-related groups (DRG) payment; or

4. fee established by the Insurance Commissioner, whichever pertains to the specialty service involved, determined to be applicable in the Commonwealth of Pennsylvania under the Medicare Program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.

If a fee, charge or payment has not been calculated under the Medicare Program for a particular treatment, accommo-dation, product or service, the amount of the payment may not exceed 80% of the provider's usual and customary charge.

If acute care is provided in an acute care facility to a patient with an immediately life-threatening or urgent injury by a Level I or Level II trauma center accredited by the Pennsylvania Trauma Systems Foundation under the Emergency Medical Services Act (P.L.164, No.45), or a major burn injury patient by a burn facility which meets all the service standards of the American Burn Association, the amount of payment may not exceed the usual and customary charge.

## Funeral Expenses

If a premium appears on the "**Declarations**" for this coverage, "**we**" will pay reasonable and necessary expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of the deceased person "**we**" protect. The expenses must be incurred as a result of the death of "**anyone we protect**" and within 24 months from the date of the accident.

## Income Loss

If a premium appears on the "**Declarations**" for this coverage, "**we**" will pay loss of income meaning 80% of gross income actually lost by "**anyone we protect**." Loss of income includes reasonable expenses actually incurred for hiring:

1. a substitute to perform the work "**anyone we protect**" who is self-employed would have performed except for "**bodily injury**," or

2. special help, thereby enabling a person to work, thereby reducing loss of gross income.

"**We**" will not pay for:

1. any loss of income until five full working days have been lost by "**anyone we protect**" because of the "**bodily injury**;"

2. loss of expected income for any period following the death of "**anyone we protect**;" or

3. expenses incurred for services performed following the death of "**anyone we protect**."

## Accidental Death

If a premium appears on the "**Declarations**" for this coverage, "**we**" will pay for accidental death arising from "**bodily injury**" to:

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

1. **"you**;"
2. a **"relative**;" or
3. an individual specifically named on the **"Declarations"** for coverage under this First Party Benefits Endorsement, and that person's **"relatives;"** due to an accident resulting from the maintenance or use of a **"motor vehicle"** as a vehicle. **"We"** will pay this benefit no matter who is at fault in the accident.

This death benefit will be paid to the executor or administrator of the deceased's estate should **"bodily injury"** cause death within 24 months from the date of the accident.

## Combination Package

If a premium appears on the **"Declarations"** for "COMBINATION PACKAGE", **"we"** will pay for medical expenses, funeral expenses, income loss, and accidental death as described and limited above. **"Our"** payment is limited to $177,500 in the aggregate or to the expenses or loss incurred within three years from the date of the accident, whichever occurs first. However, within this $177,500, **"we"** will pay no more than $25,000 for an accidental death benefit nor $2,500 for funeral expenses.

## Extraordinary Medical Benefits

If a premium appears on the **"Declarations"** for this coverage, **"we"** will pay benefits for reasonable and necessary medical expenses in excess of $100,000 arising from **"bodily injury"** to **"anyone we protect."** The **"injury"** must be due to an accident resulting from the maintenance or use of a **"motor vehicle"** as a vehicle. **"We"** will pay these benefits no matter who is at fault in the accident.

No benefits will be paid under this coverage until such medical expenses exceed $100,000.

Subject to a lifetime aggregate limit of $1,000,000, the most **"we"** will pay on behalf of **"anyone we protect"** as a result of one accident is $50,000 per year. However, during the first 18 months of eligibility, **"we"** will make payments in excess of the $50,000 per year limit, subject to the lifetime aggregate limit of $1,000,000.

## EXCLUSIONS — What We Do Not Cover

**"We"** will not pay for **"bodily injury"** sustained by **"anyone we protect:"**

1. while **"occupying"** or using any **"auto we insure"** while hired or rented to others for a fee, or while available for hire by the public. Fee does not include payment received in a car pool or for trips for nonprofit social, educational or charitable agencies.

*Exclusion 1. does not apply to:*

a. *"you" or a "relative;" or*
b. *If an "owned auto we insure" or a "temporary substitute" for that "owned auto we insure" is:*
   1) *identified for Business use as indicated on the "Declarations;" and*
   2) *used by "you" or a "relative" as a transportation network company (TNC) partner,*

*Exclusion 1. does not apply for that vehicle. For purposes of this exception, coverage will be excess over any other collectible insurance.*

*A transportation network company (TNC) is one that provides transportation for passengers or goods:*

1) *on a prearranged basis; and*
2) *only by means of a digital platform that enables the passengers or customers to connect with TNC partners using a TNC partner vehicle.*

*A TNC partner is one who transports passengers or goods, but only for passengers or for those customers that the TNC matched with the partner through the digital platform.*

2. who is the owner of:
   a. only one currently registered **"motor vehicle"** for which Financial Responsibility is not provided; or
   b. more than one currently registered **"motor vehicle"** if Financial Responsibility is not provided on any of the vehicles.

If Financial Responsibility is provided on some currently registered **"motor vehicles"** and not provided on others, **"we"** will not pay for **"bodily injury"** to the owner while **"occupying"** or operating an owned **"motor vehicle"** for which Financial Responsibility is not provided.

"Financial Responsibility" means the ability to respond for damages when liable on account of accidents arising out of the maintenance or use of a **"motor vehicle,"** in compliance with the requirements set forth in 75 Pa. C.S. 1701 et. seq.

3. while **"occupying"** a motorcycle, motor driven cycle, motorized pedalcycle or like type vehicle required to be registered under Title 75.

4. while **"occupying"** or being struck by:
   a. a recreational vehicle not intended for highway use; or
   b. any other type of **"motor vehicle"** not required to be registered under Title 75.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

5. other than "**you**," a "**relative**" or an individual specifically named on the "**Declarations**" for this coverage and that person's "**relative**," who knowingly steals a "**motor vehicle**" if the "**bodily injury**" arises out of the maintenance or use of the stolen vehicle.

6. when the conduct of that person contributed to the "**bodily injury**" sustained by that person, while:

   a. intentionally injuring or attempting to intentionally injure himself or another,

   b. committing a felony, or

   c. seeking to elude lawful apprehension or arrest by a law enforcement official.

7. not "**occupying**" a "**motor vehicle**," other than "**you**," a "**relative**" or an individual specifically named on the "**Declarations**" for this coverage and that person's "**relative**," if the accident occurs outside the Commonwealth of Pennsylvania.

8. as a direct result of loading or unloading any "**motor vehicle**," except while "**occupying**" a "**motor vehicle**."

9. while maintaining or using a "**motor vehicle**" while located for use as a residence or premises.

10. due to war, whether or not declared, civil war, insurrection, revolution or rebellion or any accompanying acts or conditions.

11. caused by nuclear radioactivity or explosion.

12. arising out of the ownership, maintenance, use, loading or unloading of a vehicle "**anyone we protect**" owns that is unregistered and not an "**insured motor vehicle**."

13. resulting from the use of any weapon.

14. resulting from assault and/or battery.

## LIMIT OF PROTECTION

"**Our**" duty to pay benefits to any one person "**we**" protect in one accident is restricted to the First Party Benefits limits "**you**" selected as shown on the "**Declarations**" for one "**insured motor vehicle**."

Benefits will not be increased for any person "**we**" protect by adding together the limits of protection:

1. under this policy because there are multiple "**motor vehicles**" covered under this policy, or

2. under multiple "**motor vehicle**" policies covering "**anyone we protect**" for the same loss.

Any amount payable by "**us**" for:

1. medical expenses greater than $100,000 will be excess over any amount paid or payable under Extraordinary Medical Benefits, and

2. First Party Benefits will be excess over all benefits that "**anyone we protect**" receives or is entitled to receive under any workers' compensation law or similar law.

## PRIORITY OF POLICIES

"**We**" will pay First Party Benefits in accordance with the following order of priority. "**We**" will not pay if there is another insurer at a higher level of priority even if that other insurer has paid its limits. The priority levels shown below are in descending order from highest to lowest:

First **-** The insurer providing benefits to the injured person who is a named insured under its policy.

Second **-** The insurer providing benefits to the injured person as an insured under its policy.

Third **-** The insurer of the "**motor vehicle**" which the injured person is "**occupying**" at the time of the accident.

Fourth **-** The insurer providing benefits on any "**motor vehicle**" involved in the accident if the injured person was not "**occupying**" a "**motor vehicle**."

If two or more policies have equal priority:

1. the insurer against which the claim is first made will process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. Under the Fourth priority, proration will be based on the number of involved "**motor vehicles**."

2. the maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

# RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS

*The following conditions are added:*

## MEDICAL REPORTS – PROOF OF CLAIM

As soon as practicable, "**anyone we protect**," or someone on such person's behalf, will give "**us**" written proof of claim, under oath if required, fully describing the nature and extent of "**bodily injury**," treatment and rehabilitation received and contemplated and other information to assist "**us**" in determining the amount due and payable.

If benefits for income loss are claimed, "**anyone we protect**" presenting such claim will authorize "**us**" to obtain details of all earnings paid to such person by an employer or earned since the time of the "**injury**" or during the year immediately preceding the date of the accident.

**NONDUPLICATION OF BENEFITS**

No person **"we"** protect will recover duplicate benefits for the same elements of loss under this or any other similar automobile insurance including self-insurance.

*The following condition is deleted:*

**OUR RIGHT TO RECOVER FROM OTHERS**

**OTHER PROVISIONS**

All other provisions of the policy apply.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

ERIE INSURANCE
PRIVATE PASSENGER AUTO
AFPU01 (Ed. 11/17) UF-8805

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT – PENNSYLVANIA

*This endorsement contains provisions applicable to Uninsured/Underinsured Motorists Bodily Injury Coverage and changes provisions contained in your policy to the extent that the provisions in this endorsement are different from those in your policy.*

## DEFINITIONS

*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is defined in the GENERAL POLICY DEFINITIONS section of the policy.*

**"Anyone we protect"** means:

1. **"you"** and any **"relative;"**

2. anyone else, while **"occupying"** any **"owned auto we insure"** other than one being used without the permission of the owner;

3. anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage; and

4. anyone else while **"occupying"** a **"nonowned auto"** other than one:

   a. **"you"** are using that is owned or leased by another **"resident"** of **"your"** household;

   b. furnished or available for the regular use of **"you"** or any **"resident"** of **"your"** household;

   c. being operated by anyone other than **"you"** or a **"relative;"** or

   d. being used without the permission of the owner.

**"Extraordinary Medical Benefits Coverage"** means coverage for injury arising out of the maintenance or use of a registered **"motor vehicle"** for which medical treatment and rehabilitative services exceed $100,000.

**"First Party Benefits"** means Pennsylvania motor vehicle insurance first party benefits (medical benefit, income loss benefit, funeral benefit, accidental death benefit, combination benefit) in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

**"Motor vehicle"** means any vehicle which is self-propelled. **"Motor vehicle"** does not include a vehicle:

1. propelled solely by human power;

2. propelled by electric power obtained from overhead wires;

3. operated on rails or crawler treads;

4. located for use as a residence premises; or

5. which is a lawn and garden tractor or mower or similar vehicle.

**"Nonowned auto"** means, while **"you"** or a **"relative"** are using it, any **"private passenger auto,"** **"moving van,"** **"trailer,"** or **"temporary substitute"** not owned or leased by **"you"** or a **"relative."** The operation or other use by **"you"** or a **"relative"** must be with the permission of the owner, or **"you"** or the **"relative"** must reasonably believe the permission of the owner exists.

**"Uninsured motor vehicle"** means a:

1. **"motor vehicle"** for which there is no liability bond, liability insurance, or self insurance at the time of the accident;

2. **"motor vehicle"** for which the insuring company denies coverage or is or becomes insolvent; or

3. hit-and-run **"motor vehicle"** which causes **"you"** bodily injury. The identity of the driver and owner of the hit-and-run **"motor vehicle"** must be unknown. The accident must be reported to the police or other proper governmental authority within 24 hours or as soon as possible. **"You"** must notify **"us"** as soon as possible.

An **"uninsured motor vehicle"** does not include a **"motor vehicle:"**

1. insured for Liability Protection under this policy;

2. that is owned, leased, or operated by a self-insurer within the meaning of the financial responsibility laws, motor carrier laws or similar laws, unless the self-insurer becomes insolvent;

3. designed for use mainly off public roads, except while on public roads; or

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

4.  owned, leased, or rented by, furnished to or available for the use of **"you"** or a **"relative."**

**"Underinsured motor vehicle"** means a **"motor vehicle"** for which the limits of available liability bonds or insurance or self-insurance at the time of the accident are insufficient to pay losses and damages.

An **"underinsured motor vehicle"** does not include a **"motor vehicle:"**

1.  insured for Liability Protection under this policy; or
2.  designed for use mainly off public roads, except while on public roads.

## OUR PROMISE

If Uninsured Motorists Coverage is indicated on the **"Declarations," "we"** will pay damages for bodily injury that the law entitles **"anyone we protect"** or the legal representative of **"anyone we protect"** to recover from the owner or operator of an **"uninsured motor vehicle."** If Underinsured Motorists Coverage is indicated on the **"Declarations," "we"** will pay damages for bodily injury that the law entitles **"anyone we protect"** or the legal representative of **"anyone we protect"** to recover from the owner or operator of an **"underinsured motor vehicle."**

Damages must result from a motor vehicle accident arising out of the ownership or use of the **"uninsured motor vehicle"** or **"underinsured motor vehicle"** as a motor vehicle and involve bodily injury to **"anyone we protect."** Bodily injury means physical harm, sickness, disease or resultant death to a person.

Payment of medical expenses will not exceed 110% of the:

1.  prevailing charge at the 75th percentile;
2.  applicable fee schedule, the recommended fee or the inflation index charge;
3.  diagnostic-related groups (DRG) payment; or
4.  fee established by the Insurance Commissioner, whichever pertains to the specialty service involved, determined to be applicable in the Commonwealth of Pennsylvania under the Medicare Program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.

If a fee, charge or payment has not been calculated under the Medicare Program for a particular treatment, accommodation, product or service the amount of the payment may not exceed 80% of the provider's usual and customary charge.

If acute care is provided in an acute care facility to a patient with an immediately life-threatening or urgent injury by a Level I or Level II trauma center accredited by the Pennsylvania Trauma Systems Foundation under the Emergency Medical Services Act (P.L.164, No. 45), or to a major burn injury patient by a burn facility which meets all the service standards of the American Burn Association, the amount of payment may not exceed the usual and customary charge.

Peer Review Organizations (PRO), which have been approved by the Insurance Commissioner to evaluate whether or not:

1.  treatment;
2.  health care services;
3.  products; or
4.  accommodations;

which were provided conform to professional standards of performance and were medically necessary and economically provided, may be used by **us.** The injured person may request a reconsideration by the PRO within 30 days of the PRO's initial determination.

If **"we"** refuse payment of a provider's bill and do not challenge it before a PRO within 90 days of receipt (90 day provision does not apply to continuing treatment or services), the injured person may ask the court to review **"our"** refusal to pay.

**"We"** will not be bound by a judgment against the owner or operator of the **"uninsured motor vehicle"** or **"underinsured motor vehicle"** on issues of liability or amount of damages unless it is obtained with **"our"** written consent.

## EXCLUSIONS – What We Do Not Cover

This insurance does not apply to:

1.  bodily injury sustained by anyone while **"occupying"** or using any **"auto we insure"** while hired by or rented to others for a fee, or while available for hire by the public. **"We"** will protect **"you"** or a **"relative"** while **"occupying,"** but not driving, such a vehicle if it is a **"nonowned auto."** Fee does not include payment received in a car pool or for trips for nonprofit social, educational or charitable agencies.

    *If an* **"owned auto we insure"** *or a* **"temporary substitute"** *for that* **"owned auto we insure"** *is:*

    a.  *identified for Business use as indicated on the* **"Declarations;"** *and*

    b.  *used by* **"you"** *or a* **"relative"** *as a transportation network company (TNC) partner,*

    *Exclusion 1. does not apply for that vehicle. For purposes of this exception, coverage will be excess over any other collectible insurance.*

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

*A transportation network company (TNC) is one that provides transportation for passengers or goods:*

a.  *on a prearranged basis; and*

b.  *only by means of a digital platform that enables the passengers or customers to connect with TNC partners using a TNC partner vehicle.*

*A TNC partner is one who transports passengers or goods, but only for passengers or for those customers that the TNC matched with the partner through the digital platform.*

2.  damages sustained by **"anyone we protect"** if he, she or a legal representative settled with anyone who may be liable for the damages, without **"our"** written consent.

3.  the benefit of any insurer or anyone qualifying as a self-insurer under any disability benefits or similar law, except a workers compensation law.

4.  damages sustained by **"anyone we protect"** while:

    a.  **"occupying"** or being struck by a **"motor vehicle"** owned or leased by **"you"** or a **"relative,"** but not insured for Uninsured or Underinsured Motorists Coverage under this policy. This exclusion does not apply when **"anyone we protect"** is **"occupying"** or struck by a **"motor vehicle"** owned or leased by **"you"** or a **"relative"** that is insured for Uninsured or Underinsured Motorists Coverage under any other Erie Insurance Group policy; or

    b.  **"occupying"** or being struck by a **"motor vehicle"** owned or leased by **"you"** or a **"relative,"** but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

    *Exclusion 4.a. applies only when the STACKED option is selected. Exclusion 4.b. applies only when the UNSTACKED option is selected.*

5.  damages sustained by **"anyone we protect"** while **"occupying"** or being struck by a **"miscellaneous vehicle"** owned or leased by **"you"** or a **"relative,"** but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

6.  punitive or exemplary damages.

7.  noneconomic damages sustained in a **"motor vehicle"** accident by **"anyone we protect"** unless such person sustained **"serious injury."**

    *Exclusion 7. applies only when the LIMITED TORT option is selected.*

8.  bodily injury sustained by **"anyone we protect"** resulting from the use of any weapon.

9.  bodily injury sustained by **"anyone we protect"** resulting from assault and/or battery.

10. bodily injury sustained by **"anyone we protect"** while engaged in the theft of a **"motor vehicle"** or using a **"motor vehicle"** in connection with carjacking, kidnapping, abduction or attempting to flee police or evade arrest.

11. bodily injury to **"you"** or a **"resident"** using a nonowned **"motor vehicle"** or a nonowned **"miscellaneous vehicle"** which is regularly used by **"you"** or a **"resident,"** but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

## LIMIT OF PROTECTION

### Limitations of Payment

If coverage is purchased on a Split Limits basis, the **"Declarations"** will show a "per person" and "per accident" limit for Uninsured and/or Underinsured Motorists Bodily Injury. The "per person" limit for Bodily Injury for one **"auto"** is the most **"we"** will pay for damages arising out of bodily injury or death to one person in any one accident. The "per accident" limit for bodily injury for one **"auto"** is the most **"we"** will pay for damages arising out of bodily injury or death to all persons resulting from any one accident, subject to the "per person" limit.

If coverage is purchased on a Single Limit basis, the **"Declarations"** will show a "per accident" limit for Uninsured and/or Underinsured Motorists Bodily Injury. The "per accident" limit for one **"auto"** is the most **"we"** will pay for all damages arising out of bodily injury resulting from any one accident.

Uninsured/Underinsured Motorists Coverage is not provided for any **"trailer,"** whether or not the **"trailer"** is attached to another motor vehicle or **"miscellaneous vehicle."** No separate limit of protection for Uninsured/Underinsured Motorists Coverage is available for a **"trailer,"** whether attached or unattached to a motor vehicle or **"miscellaneous vehicle."** Uninsured/Underinsured Motorists Coverage does not apply to a **"miscellaneous vehicle"** owned or leased by **"you"** or a **"relative"** unless the **"miscellaneous vehicle"** is listed on the **"Declarations"** and a premium is shown for this coverage.

No one will be entitled to receive duplicate payments for the same elements of loss. If an individual's damages derive from, arise out of, or otherwise result from bodily injury to another person injured in the accident or the death of another person killed in the accident, **"we"** will pay only for such damages within the "per person" limit available to the person injured or killed in the accident.

### Stacked Coverage

If Stacked Uninsured Motorists and/or Stacked Underinsured Motorists Coverage is purchased and the injured person is **"you"** or a **"relative,"** **"we"** will pay no more than the applicable sum of the Uninsured or

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Underinsured Motorists Coverage limits shown on the "**Declarations**."

If the injured person is other than "**you**" or a "**relative**," "**we**" will pay no more than the applicable Uninsured or Underinsured Motorists Coverage limits shown on the "**Declarations**" for the "**auto**" involved in the accident, regardless of the number of persons "**we**" protect, "**autos we insure**," premiums paid, claims made or "**autos**" involved in the accident. If none of the "**autos**" are involved in the accident, the highest limit of Uninsured or Underinsured Motorists Coverage applicable to any one "**auto**" will apply.

## Unstacked Coverage

If Unstacked Uninsured Motorists and/or Unstacked Underinsured Motorists Coverage is purchased, "**we**" will pay no more than the Uninsured or Underinsured Motorists Coverage limits shown on the "**Declarations**" for the "**auto**" involved in the accident, regardless of the number of persons "**we**" protect, "**autos we insure**," premiums paid, claims made or "**autos**" involved in the accident. If none of the "**autos**" are involved in the accident, the highest limit of Uninsured or Underinsured Motorists Coverage applicable to any one "**auto**" will apply.

If other similar insurance applies to "**autos**" not involved in the accident, and the insurance provides coverage to "**you**" or a "**relative**," then recovery will not exceed the highest limit of liability for any one "**auto**" under any one policy providing coverage for "**you**" or a "**relative**."

## Reductions

The amount of damages paid or payable under this Uninsured or Underinsured Motorists Coverages will be reduced by:

1. the amounts paid or payable by or for those liable for bodily injury to "**anyone we protect**."

2. the amounts paid or payable to "**anyone we protect**" under the Liability Protection of this policy.

Payment under these coverages to or for "**anyone we protect**" will reduce the amount of damages they may be entitled to recover from those protected under the Liability Protection of this policy.

A person who recovers damages under Uninsured Motorists Coverage cannot recover damages under Underinsured Motorists Coverage for the same accident.

In any action for damages for Uninsured Motorists benefits or Underinsured Motorists benefits arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under "**First Party Benefits**" coverages shall be precluded from recovering the amount of:

1. required benefits paid or payable under "**First Party Benefits;**" and

2. medical and rehabilitation expenses which were paid or are payable under "**Extraordinary Medical Benefits Coverage**," if purchased.

## OTHER INSURANCE

If other similar insurance applies to the accident, "**we**" will pay "**our**" share of the loss, subject to the other terms and conditions of the policy and this endorsement. "**Our**" share will be the proportion the limit of protection of this insurance bears to the total Limit of Liability of all applicable insurance.

For bodily injury to "**anyone we protect**" while "**occupying**" a "**motor vehicle**" "**you**" do not own, "**we**" will pay the amount of the loss up to the applicable limit(s) shown on the "**Declarations**," less the amount paid or payable by other insurance.

When the accident involves "**underinsured motor vehicles**," "**we**" will not pay until all other forms of insurance under all bodily injury liability bonds and insurance policies and self-insurance plans applicable at the time of the accident have been exhausted by payment of their limits or have been resolved by settlement or by final resolution of the court.

## PAYMENT OF LOSS

When multiple policies apply, payment shall be made in the following order of priority:

1. A policy covering the "**motor vehicle**" the injured person is "**occupying**" at the time of the accident.

2. A policy covering a "**motor vehicle**" not involved in the accident with respect to which the injured person is an insured.

If two or more policies have equal priority, the insurer against which the claim is first made shall process and pay the claim as if wholly responsible. Thereafter, the insurer is entitled to recover a pro rata contribution from any other insurer for the benefits paid and claims costs incurred. If "**we**" are the insurer against which the claim is first made, "**we**" will not pay more than "**our**" Limit of Protection.

At "**our**" option, "**we**" will pay:

1. "**anyone we protect;**"

2. the surviving spouse;

3. the legal representative; or

4. anyone legally entitled to recover.

## TRUST AGREEMENT

1. When "**we**" owe payment to anyone under this coverage, they will:

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

a. hold in trust for "**us**" all rights of recovery against the other party;

b. do whatever is required to secure these rights, and do nothing to harm them; and

c. sign and deliver to "**us**" all relevant papers.

2. When "**we**" pay anyone under this coverage, they will:

a. repay "**us**" out of any damages recovered from any legally liable party;

b. take any action necessary to recover payments made under this coverage, through a lawyer chosen by "**us**;" and

c. repay "**us**" from any recovery for expenses, costs or lawyers' fees "**we**" paid in the action.

## RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS

### LAWSUITS AGAINST US

*This condition is deleted and replaced by the following:*

"**You**" must comply with the terms of the policy before "**you**" may sue "**us**."

Suit must be brought in a court of competent jurisdiction in the county and state of "**your**" legal domicile at the time of the accident.

### WHAT TO DO WHEN AN ACCIDENT OR LOSS HAPPENS

*The following is added:*

If claimants or their representatives bring action for damages, copies of suit papers must be sent to "**us**" at once.

In an action against "**us**," "**we**" may require "**anyone we protect**" to join with "**us**" to bring those "**we**" allege to be liable into the action as party defendants.

## OTHER PROVISIONS

All other provisions of the policy apply.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

ERIE INSURANCE
PRIVATE PASSENGER AUTO
AFPZ01 (Ed. 3/17) UF-4705

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ERIE AUTO PLUS ENDORSEMENT PENNSYLVANIA

*Words and phrases in bold type and quotations are used as defined in the DEFINITIONS section of the policy.*

## LIABILITY PROTECTION

### ADDITIONAL PAYMENTS

#### Increased Claim Expense Limits

"**We**" will pay for reasonable expenses "**anyone we protect**" may incur at "**our**" request to help "**us**" investigate or defend a claim or "**suit**." The amount is increased from $300 to $500 per day for actual loss of earnings, limited to those days "**anyone we protect**" attends hearings or trials at "**our**" request.

"**We**" will pay premiums for a bail bond required because of an accident or related traffic violation involving an "**auto we insure**," but not for bond amounts greater than the limit of protection. The amount is increased from $500 to $3,000.

"**We**" will pay reasonable lawyers' fees which "**anyone we protect**" incurs because of arrest, resulting from an accident involving an "**auto we insure**." This amount is increased from $50 to $250.

## PHYSICAL DAMAGE COVERAGES

### Diminishing Deductible

For each consecutive claims-free policy year that this policy has been in force, beginning with the policy period in which this endorsement is first added to this policy, any applicable Comprehensive or Collision deductible will be reduced by  $100, up to a maximum reduction of $500.

The reduced deductible will apply to any accident which occurs during the policy period. If a Comprehensive or Collision claim occurs during the policy period, both of "**your**" original Comprehensive and Collision deductibles will be reinstated on the effective date of "**your**" next policy renewal.

Claims-free means that "**we**" have not made any payments for an at-fault or not at-fault "**loss**" under Comprehensive or Collision Coverage which is subject to the application of a deductible, whether or not that deductible applies to the "**loss**." In the event of a windshield only claim, the deductible will reset only when the claim exceeds $150.

When an ERIE claim is fully reduced by salvage or subrogation, it will not be counted as a claim under this section.

### Deductible Waiver

"**We**" will not subtract the Comprehensive or Collision deductible in the event that the "**loss**" involves an "**auto we insure**" and "**your**" property insured under an Erie Insurance Group homeowner policy. Only the deductible applicable to "**your**" homeowner policy will apply. "**Your**" ERIE homeowner's policy must pay for damages in excess of "**your**" homeowner's deductible in order for "**your**" auto deductible to be waived.

### Additional Transportation Expenses (No Deductible or Waiting Period Applies)

When Transportation Expense applies to a total "**loss**," "**we**" will pay for up to ten additional days of transportation expenses which result from a covered Comprehensive or Collision "**loss**" after "**we**" offer settlement. This coverage is in addition to the Transportation Expense Coverage under Physical Damage Coverages in the policy.

Payment for all transportation expenses will not exceed the Rental Class/Vehicle Type which is included in the policy under PHYSICAL DAMAGE COVERAGES – OUR PROMISE – Transportation Expenses, or the Rental Class/Vehicle Type listed on the "**Declarations**," whichever is higher.

### Increased Emergency Travel Costs Limit (No Deductible Applies)

Reimbursement for travel costs is increased from $75 per person to $150 per person.

### Increased Personal Effects Limit (No Deductible Applies)

Payment for "**loss**" to personal effects is increased from $350 to $500.

AFPZ01

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

**Increased Locksmith Costs (No Deductible Applies)**

Payment for the cost incurred for locksmith services if keys are accidentally locked in an **"auto we insure"** is increased from $75 to $125.

**Increased Sound Equipment Limit**

Payment for **"loss"** to the following equipment which is permanently installed in the **"auto"** other than where the auto manufacturer would normally install such equipment is increased from $1,000 to $4,000:

1.  Tape players;
2.  Compact disc players or recorders;
3.  Digital video disc players or recorders;
4.  Video cassette players or recorders;
5.  Electronic navigational systems;
6.  Radios;
7.  Two-way mobile radios or telephones;
8.  Scanners;
9.  Televisions, and
10. Any other similar equipment that records, receives or transmits audio, visual or data signals.

**Increased Nonowned Trailer Limit**

The limit of protection for **"loss"** to any **"trailer"** not owned by **"you"** is increased from $2,000 to $3,500.

## ADDITIONAL DEATH BENEFIT

**"We"** will pay $10,000 per person in the event that **"you"** or any **"relative"** dies as a result of bodily injury caused by an **"auto"** accident. Death must result directly from bodily injury caused by an **"auto"** accident. Bodily injury must be sustained while **"occupying"** an **"auto we insure"** or when hit by an **"auto." "We"** will pay this benefit provided death occurs within two years of the date of the accident.

**"We"** will pay the Death Benefit to the surviving spouse, if a **"resident"** in the same household at the time of death. If the deceased was a minor, **"we"** will pay the Death Benefit to a parent who was a **"resident"** of the same household at the time of death. If there is no such surviving spouse or parent, **"we"** will pay the Death Benefit to the deceased's estate.

## OTHER PROVISIONS

All other provisions of the policy apply.

AFPZ01

ERIE INSURANCE EXCHANGE
Form SA (Ed. 11/12) UF-B213

**THIS IS AN ENDORSEMENT TO YOUR POLICY.  PLEASE READ IT CAREFULLY.**

# SUBSCRIBER'S AGREEMENT

*The following is the language of the Subscriber's Agreement that applies to policies issued by ERIE INSURANCE EXCHANGE. Definitions included in this Agreement apply only to the Subscriber's Agreement.*

The Subscriber ("you" or "your") agrees with the other Subscribers at ERIE INSURANCE EXCHANGE ("ERIE"), a Reciprocal/Inter-Insurance Exchange, and with their Attorney-in-Fact, the Erie Indemnity Company ("we" or "us"), a Pennsylvania corporation with its Home Office in Erie, Pennsylvania, to the following:

1.  You agree to pay your policy premiums and to exchange with other ERIE Subscribers policies providing insurance for any insured loss as stated in those policies.

2.  You appoint us as Attorney-in-Fact with the power to: a) exchange policies with other ERIE Subscribers; b) take any action necessary for the exchange of such policies; c) issue, change, nonrenew or cancel policies; d) obtain reinsurance; e) collect premiums; f) invest and reinvest funds; g) receive notices and proofs of loss; h) appear for, compromise, prosecute, defend, adjust and settle losses and claims under your policies; i) accept service of process on behalf of ERIE as insurer; and j) manage and conduct the business and affairs of ERIE, its affiliates and subsidiaries. This power of attorney is limited to the purposes described in this Agreement.

3.  You agree that as compensation for us: a) becoming and acting as Attorney-in-Fact; b) managing the business and affairs of ERIE; and c) paying general administrative expenses, including sales commissions, salaries and employee benefits, taxes, rent, depreciation, supplies and data processing, we may retain up to 25% of all premiums written or assumed by ERIE. The rest of the premiums will be used for losses, loss adjustment expenses, investment expenses, damages, legal expenses, court costs, taxes, assessments, licenses, fees, and any other governmental fines and charges, establishment of reserves and surplus, and reinsurance, and may be used for dividends and other purposes we decide are to the advantage of Subscribers.

4.  You agree that this Agreement, including the power of attorney, shall have application to all insurance policies for which you apply at ERIE, including changes in any of your coverages.

5.  You agree to sign and deliver to us all papers required to carry out this Agreement.

6.  This Agreement, including the power of attorney, shall not be affected by your subsequent disability or incapacity.

7.  This Agreement is and shall be binding upon you, us, and all executors, administrators, successors and assigns.

*(Subscriber's Agreement language updated 1996.)*

Form SA

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

ERIE INSURANCE
PRIVATE PASSENGER AUTO
UF-4777 (Ed. 3/20)

# Important Notice Regarding Changes To Your Pennsylvania Auto Insurance Policy

*Please read your policy and its endorsements for details regarding coverage, including exclusions or limitations of coverage. In the case of any conflict between the explanation in this notice and the policy, the policy language controls. Your payment of the renewal premium for this policy signifies your understanding and acceptance of these changes. If you have specific questions concerning these changes, contact your ERIE Agent.*

## POLICY CHANGE ENDORSEMENT

*Enclosed with your renewal policy is a revised Policy Change Endorsement that amends your Pennsylvania Auto Insurance Policy, AP-PA (Ed. 4/13). Please review the following changes which affect your coverage:*

### LIABILITY PROTECTION

#### DEFINITIONS

The definition of "**owned auto we insure**" has been added to the Liability Protection section. With this revision, Liability Protection is broadened to provide coverage for any "**trailer**" "**you**" own, even if that "**trailer**" is not listed on the "**Declarations**."

#### EXCLUSIONS – What We Do Not Cover

Exclusion 15. has been added:

"**We**" do not cover:

15. damage caused by any "**trailer**" used as a residence, office, store, display or passenger "**trailer**."

#### LIMIT OF PROTECTION

The second paragraph is changed to indicate that liability is provided on an unattached trailer subject to the limit of liability for one auto.

### PHYSICAL DAMAGE COVERAGES

#### ADDITIONAL PAYMENTS

The first paragraph has been revised to separately refer to Comprehensive Coverage and Collision Coverage in order to clarify the intent on how these Additional Payments apply.

Item 4. which referenced payment for "all expenses necessary to replace a deployed airbag" has been removed. Expenses necessary to replace a deployed airbag will be paid under a covered Comprehensive or Collision loss.

Item 4. has been replaced with the following payment which broadens coverage to provide towing and labor if your trailer becomes disabled while attached to a motor vehicle.

4. "**We**" will pay reasonable towing and labor required because "**your**" "**trailer**" becomes disabled while attached to a "**motor vehicle**." Labor must be done at the site of the disablement.

## ROADSIDE AND RENTALS ENDORSEMENT

*If you have purchased Roadside Service and/or Transportation Expenses coverages, a copy of ROADSIDE AND RENTALS ENDORSEMENT is enclosed with your renewal and includes the following change:*

### ROADSIDE SERVICE

We have relocated coverage information related to travel costs which are available under Roadside Service to the ROADSIDE AND RENTALS ENDORSEMENT.

# MISCELLANEOUS VEHICLE ENDORSEMENT

*Enclosed with your renewal policy is a revised MISCELLANEOUS VEHICLE ENDORSEMENT. AFAA01 (Ed. 8/19). Please review the following changes:*

## GENERAL POLICY DEFINITIONS

- The definition of **"auto"** is revised to include a **"miscellaneous vehicle."**

- The definition of **"trailer"** is revised to include a vehicle designed to be pulled by a **"miscellaneous vehicle."**

## LIABILITY PROTECTION

### DEFINITIONS

The definition of **"owned auto we insure"** has been added to LIABILITY PROTECTION so that coverage provided by the Policy Change Endorsement for a **"trailer" "you"** own extends to a **"trailer"** used with a **"miscellaneous vehicle."**

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

# Erie Insurance Privacy Notice

Rev. 10/16

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

| FACTS | WHAT DOES ERIE INSURANCE DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Insurance companies choose how they share your personal information. Federal and state law gives consumers the right to limit some, but not all, sharing. Federal and state law also requires us to tell you how we collect, share and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Social Security number, date of birth, driving record, income; <br> • Credit history, credit-based insurance scores, insurance claim history, payment history. |
| **How?** | Insurance companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons insurance companies can share their customers' personal information; the reasons Erie Insurance chooses to share; and whether you can limit this sharing. |

| Reasons we can share your nonpublic personal information | Does Erie Insurance share? | Can you limit sharing? |
|---|---|---|
| **For our everyday business purposes**–as permitted or required by law, we may disclose information about you to third parties such as: <br> • Erie Insurance agents and other companies to process and service insurance transactions <br> • Claims adjusters and attorneys in the processing of an insurance claim <br> • A court of law in connection with a legal proceeding <br> • Consumer reporting agencies and insurance support organizations <br> • Government agencies which conduct examinations of our procedures. | Yes | No |
| **For our marketing purposes**–to offer our products and services to you, we may disclose information we receive from you on applications or other forms such as your name and contact information to companies that perform marketing services for us such as Erie Insurance agents, mail houses and data processors. | Yes | No |
| **For joint marketing with other financial companies**–we may disclose information we receive from you on applications or other forms such as your name and contact information to other financial companies with which we have joint marketing agreements such as Erie Insurance agents. | Yes | No |
| **For our affiliates' everyday business purposes**–information about your transactions and experiences — this can include information such as your policy coverage, premiums, and payment history. | Yes | No |
| **For our affiliates' everyday business purposes**–information about your creditworthiness–this can include information we receive from a credit reporting agency such as insurance score and claims history. | Yes | Yes* |
| **For nonaffiliates to market to you** | No | We do not share |

| | |
|---|---|
| **To limit our sharing** | • Call **1-800-458-0811**–Option 4 for Customer Service **or** <br> • Visit us online: **erieinsurance.com/optout** <br><br> ***Please note:** If you are a **new** customer, we can begin sharing this information among the Erie Insurance affiliates 30 days from the date we provided this notice. When you are **no longer** our customer, we continue to share and protect your information as described in this notice. However, you can contact us at any time to limit our sharing. |
| **Questions?** | Call **1-800-458-0811**–Option 4 for Customer Service |

UF-4839 (ED, 10/16)

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

| Who we are | |
|---|---|
| Who is providing this notice? | The Erie Insurance Group companies including property and casualty and life insurance licensees and financial companies listed below are providing this notice. |

| What we do | |
|---|---|
| How does Erie Insurance protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. <br><br> We protect your nonpublic personal information under our control by: <br> • limiting access for legitimate business needs and <br> • maintaining physical, electronic, and procedural safeguards in accordance with applicable laws and regulations. |
| How does Erie Insurance collect my personal information? | We collect your personal information, for example, when you: <br> • apply for insurance <br> • pay insurance premiums <br> • file an insurance claim <br> • give us your income information <br> • give us your contact information. <br><br> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies including, for example, from: <br> • your insurance agent or producer <br> • you on applications or other forms such as claims forms or underwriting questionnaires <br> • your transactions with Erie Insurance affiliates listed below or others <br> • consumer reporting agencies. |
| Why can't I limit all sharing? | Federal and state law gives you the right to limit only: <br> • sharing for affiliates everyday business purposes–information about your creditworthiness and insurability <br> • affiliates from using your information to market to you <br> • sharing for nonaffiliates to market to you. |
| What happens when I limit sharing for a policy I hold jointly with someone else? | Your choices will apply to everyone on your policy. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. Our affiliates include companies affiliated with Erie Insurance Exchange; financial companies such as Erie Indemnity Company and insurance licensees such as Erie Insurance Exchange, Flagship City Insurance Company and Erie Family Life Insurance Company. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br><br> Erie Insurance does not share with non-Erie Insurance companies so they can market their products to you. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market insurance products or services to you. <br><br> Our joint marketing partners include insurance licensees such as Erie Insurance agents. |

- Erie Insurance Exchange
- Erie Indemnity Company
- Erie Family Life Insurance Corp.
- Erie Insurance Company
- Erie Insurance Company of New York

- Erie Insurance Property & Casualty Company
- Flagship City Insurance Company
- E I Service Corp.
- Erie Resource Management Corp.

ERIE INSURANCE
PRIVATE PASSENGER AUTO
UF-6853 (Ed. 12/19)

# PENNSYLVANIA – NOTICE TO POLICYHOLDERS

## SERVICE FEES

The following service fees will be applicable to all payment plans.

- **Returned Payment Fee** – A **$25.00** charge will be applied to your account if your check or other payment is returned unpaid by your financial institution.
- **Late Fee** – A **$10.00** charge will be applied to your account when a cancellation notice is issued on your policy because of non-payment of premium.
- **Reinstatement Fee** – A **$25.00** charge will be applied to your account when your policy is reinstated with a lapse in coverage following cancellation of your policy because of non-payment of premium.

## MINIMUM ANNUAL POLICY PREMIUM

The minimum annual policy premium is $60. Any policy which generates an annual premium of less than $60 will be charged $60.

## NOTICE OF INSURANCE INFORMATION PRACTICES

As part of our procedure for processing your insurance, personal information such as a credit report, prior insurance claims report, and/or motor vehicle record may be obtained concerning you and other individuals proposed for coverage. No information from our files will be given to anyone without your written consent, except as allowed by law in order to conduct our business. You have the right to know the kind of information we have in your file, to have access to that information, and to request correction of information you believe is inaccurate. We will provide a more detailed description of our information practices, if you so request.

## FRAUD WARNING

Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000.

## PLEASE NOTIFY YOUR AGENT WITHIN 60 DAYS IF:

- you change your address or marital status;
- you change the use of your vehicle or the distance you drive to or from work or school;
- your auto is being used as a public or livery conveyance to provide ridesharing services through a Transportation Network Service such as Uber or Lyft.
- you change the location where your vehicle is principally garaged;

- a licensed driver becomes a member of your household, even if they have their own auto and insurance;
- a member of your household obtains a driver's license;
- a licensed driver listed on your Declarations is no longer a member of your household;
- you add or delete an auto, lienholder or other party having a financial interest in your vehicle;
- you modify the appearance or performance of your vehicle with customized equipment.

This information is needed to properly rate your policy. Your policy will be amended to reflect the change.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

# DISCOUNTS

Discounts which have been applied to your policy are indicated on your Declarations. For additional information on these discounts, contact your Agent. You must notify your Agent if you qualify for any of these discounts and they are not indicated on your Declarations.

**Accident Prevention Course Discount –** Applies for a three year period if all Named Insureds are age 55 or older as of the policy renewal date and have voluntarily and successfully completed a Motor Vehicle Accident Prevention Course which meets the standards of the State Department of Transportation. The discount will be applied to all motor vehicles on the policy.

**Advance Quote Discount –** New business qualifies for a discount if a quote is given to an applicant, as evidenced by the ordering of the underwriting reports necessary to determine tier, seven to 90 days in advance of the policy inception date. The amount of the discount is reduced gradually over a 5-year period. The discount applies to private passenger autos, motor homes, regular use antique autos, regular use classic autos, motorcycles and mopeds.

**Age 55 Or Over Discount –** Applies if you are age 55 or over as of your renewal date AND the principal driver of a private passenger auto listed on your Declarations.

**Anti-Lock Brakes Discount –** Applies to autos equipped with anti-lock brakes on all four wheels.

**Anti-Theft Device Discount –** Applies to autos equipped with anti-theft devices such as:

- security alarms
- hood locking mechanisms unlocked by a key or electronic device
- remote monitoring alarms and central base computer systems, or
- etching VIN or serial number on automobile parts.

**Claims/Violation Free Discount** *(Previously Safe Driver Discount)* – Applies if your policy has a good claim/violation history. Variables that determine the discount percentage may include the violation history of all drivers on the policy, number of years the policy has been in force and the claims experience of all drivers on the policy.

**College Student Discount –** Applies if a young, unmarried driver is a full-time college student, does not live at home, and does not have a vehicle at school.

**Driver Training Discount –** Applies to drivers under age 21 who have successfully completed a driver training course which meets the standards of the Pennsylvania Department of Education or other educational agency.

**100% Farm Use Discount –** Applies to autos used exclusively in connection with the operation of a farm owned or rented by you. You must reside on the farm. The autos cannot be used regularly in connection with any other business or occupation.

**Multi-Car Discount –** Applies if two or more private passenger autos are insured by the ERIE INSURANCE GROUP and are owned and used by the Named Insured or a relative residing in the same household. The discount may also apply if the Named Insured has unlimited personal use of a company-furnished private passenger auto even if that private passenger auto is not insured by The ERIE or titled to the Named Insured.

**Multi-Policy Discount –** Applies if you have an ERIE Auto Policy and an:

- ERIE HomeProtector, Mobile HomeProtector Policy or ERIESecure; and/or
- ERIE Life Policy that meets specified criteria.

The discount applies on this Auto Policy and the HomeProtector, Mobile HomeProtector or ERIESecure policy.

**Passive Restraints Discount –** Applies to autos with factory-installed passive seat belts or air bags.

**Payment Plan Discount –** Applies if your policy premium is paid under one of the following ERIE pay plans. The discount applied under Plan A is greater than the discount applied under Plan B.

- **Annual (Plan A)** – entire premium is paid by policy effective date. The discount does not apply if the option to pay via credit card is selected.
- **Third-Third-Third (Plan B)** – one third of the premium is paid by policy effective date. One third of the premium is paid within 30 days after policy effective date. One third of the premium is paid within 60 days after policy effective date.

To qualify for this discount, choose Plan A or Plan B prior to your policy effective date. If you choose one of these payment plans during the policy period, the discount will be applied at your next renewal. If you do not make payments in accordance with the terms of the pay plan you selected, you may lose the pay plan discount and your premium will be adjusted to reflect quarterly payments for the remainder of the policy period.

**Prior Bodily Injury Limits Discount –** Available if your prior policy included Bodily Injury Liability coverage.

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

The discount applies to the following eligible vehicles: private passenger autos, motor homes, regular use antique autos, regular use classic autos, motorcycles and mopeds.

**Reduced Usage Discount** – Applies to an auto that will not be driven for at least 90 consecutive days during the policy period. This discount cannot be added retroactively.

**Youthful Driver Discount** – Available to reflect the limited use of an auto due to the graduated licensing program. Unmarried drivers under age 21 may be eligible for the discount.

**Youthful Driver Longevity Discount** *(Erie Insurance Exchange)* − May apply available on a private passenger auto with an unmarried young driver classification. The amount of the discount is determined by the number of years the policy has been continuously in force.

## CUSTOMER INCENTIVES

Neither First Accident Forgiveness nor Feature Fifteen will affect our right to cancel or nonrenew your policy should we decide such action is necessary. For additional information on First Accident Forgiveness or Feature Fifteen, contact your ERIE Agent.

**Feature Fifteen** *(Erie Insurance Company policies written before 12/1/08 and all Erie Insurance Exchange policies.)* – If you have been insured on a voluntary ERIE Auto Insurance Policy for 15 consecutive years, we will not apply a Defensive Driver Plan surcharge for at-fault accidents presented on your policy. A policy lapse of 30 days or more is considered an interruption of coverage and starts a new 15 year period. Violations subject to ERIE's Defensive Driver Plan will continue to result in a surcharge.

**First Accident Forgiveness** *(Erie Insurance Exchange Policyholders Only)* – ERIE will forgive the surcharge on the first at-fault accident which is presented on your policy after the policy has been in force for three years. To qualify for this incentive, the policy must be surchargeable accident free for those first three years. Should a surchargeable accident occur in those first three years, a surcharge waiver will not be given on any future accidents.

The policy will not be eligible for another surcharge waiver in the event of a future at-fault accident even if the driver responsible for the accident is removed from the policy. If you have more than one auto policy with us, only one accident will be forgiven. In the event of another surchargeable accident, the surcharge on the first accident will continue to be forgiven. However, the first accident will be counted to determine the surcharge amount for a second or subsequent accident. Violations which are subject to ERIE's Defensive Driver Plan will continue to result in a surcharge.

## NOTICE OF TORT OPTIONS

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options. If you wish to change the tort option that currently applies to your policy, please contact your ERIE Agent.

**"Limited Tort" Option** – This form of insurance limits your rights and the rights of the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as a consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, except

that an individual otherwise bound by the limited tort election:

1. who sustains damages in a motor vehicle accident as a consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

   a. is convicted or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in that accident;

   b. is operating a motor vehicle registered in another state;

   c. intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the

Received County of Berks Prothonotary's Office on 05/29/2025 3:09 PM Prothonotary Docket No. 24-01821

injury is for the purpose of averting bodily harm to himself or another person; or

d. has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law.

2. shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

3. shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

**"Full Tort" Option** – This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers.

## ABBREVIATIONS FOR DRIVER ATTRIBUTES USED ON YOUR DECLARATIONS

**AA3** – First chargeable accident in a three-year period, first year the surcharge is on policy

**AA2** – First chargeable accident in a three-year period, second year the surcharge is on policy

**AA1** – First chargeable accident in a three-year period, third year the surcharge is on policy

**AB3** – Second chargeable accident in a three-year period, first year the surcharge is on policy

**AB2** – Second chargeable accident in a three-year period, second year the surcharge is on policy

**AB1** – Second chargeable accident in a three-year period, third year the surcharge is on policy

**AC3** – Third chargeable accident in a three-year period, first year the surcharge is on policy

**AC2** – Third chargeable accident in a three-year period, second year the surcharge is on policy

**AC1** – Third chargeable accident in a three-year period, third year the surcharge is on policy

**IOS** – Inexperienced Operator Surcharge

**LSP** – License Suspension

**MVL** – Moving Violation

**MV1** – Hit and Run or Leaving the Scene of an Accident

**MV2** – Drag Racing on a Public Highway

**MV3** – Driving under Suspension

**MV4** – Attempting to Evade Arrest in a Car

**MV5** – Assault with a Car

**MV6** – Any Misdemeanor or Felony Involving a Car

**MV7** – Driving While Intoxicated

**NSA** – Non-surchargeable At-fault Accident

UF-6853

# EXHIBIT E



Michael McGaw, AIC
Vice President & Claims Manager

# Erie Insurance®

Branch Office • 4901 Louise Drive • Rossmoyne Business Center • P.O. Box 2013 • Mechanicsburg, PA 17055-0710
717.795.8200 • Toll Free 1.800.382.1304 • Fax 800.545.0408 • erieinsurance.com

July 22, 2020

Kevin Morgan
3901 Lantana Avenue
Reading, PA  19605

|       |                |                  |
|-------|----------------|------------------|
| Re:   | ERIE Claim     | #A00002716332    |
|       | ERIE Insured:  | Kevin Morgan     |
|       | ERIE Policy    | #Q03-2314765     |
|       | Date of Loss:  | 7/10/2020        |

Dear Mr. Morgan:

Our office received notification of a claim that was filed under your Erie Insurance Family Auto Policy, bearing Policy #Q03-2314765, which you reported on July 14, 2020.  The loss report indicates a date of loss of July 10, 2020, during which time you were involved in a loss on Route 222, Temple, PA 19560.

Our investigation has confirmed that at the time of the accident, you were operating a 2017 Subaru Legacy while employed by Delivery Dudes.

Erie Insurance will not extend coverage to you for this loss, as the Erie Insurance Auto Insurance Policy does not provide coverage while you are hired or rented by others for a fee, or while available for hire by the public.  This exclusion of coverage applies to the liability and the physical damage portions of your policy.  Additionally, the aforementioned vehicle was not rated for business use on the date of the loss of July 10, 2020.

We refer you to your Auto Insurance Policy – Pennsylvania, AP-PA (Ed. 4/13) UF-B220, bearing Policy #Q03-2314765 which is endorsed with AFPA03 – Policy Change Endorsement UF-6380, which reads as follows:

**LIABILITY PROTECTION**

**OUR PROMISE**

**Bodily Injury Liability Coverage**

**Property Damage Liability Coverage**

If these coverages are indicated on the "**Declarations**," "**we**" will pay all sums that "**anyone we protect**" legally must pay as damages caused by an accident covered by this policy. The accident must arise out of the ownership, maintenance, use, loading or unloading of an "**auto we insure.**"

Damages must involve:

1. bodily injury, meaning physical harm, sickness, disease, or resultant death to a person; or

2. property damage meaning:

   a. physical injury to or destruction of tangible property, including loss of its use; or

   b. loss of use of tangible property which is not physically injured or destroyed.

577144_1.docx

Kevin Morgan
Page 2
July 22, 2020

"**We**" may investigate or settle any claim or "**suit**" for damages against "**anyone we protect,**" at "**our**" expense. If "**anyone we protect**" is sued for damages covered by this policy, "**we**" will defend, with a lawyer "**we**" choose, even if the allegations are not true. "**Our**" obligation to pay any claim or judgment or defend any "**suit**" ends when "**we**" have used up "**your**" limit of protection by paying judgments or settlements or making a deposit in court.

## EXCLUSIONS—What We Do Not Cover

"**We**" do not cover:

9.  an "**auto we insure**" while hired by or rented to others for a fee or while available for hire by the public. "**We**" will protect "**you**" or a "**relative**" held responsible for damages while "**occupying**" but not driving such a vehicle, if it is a "**nonowned auto.**" Fee does not include payment received in a car pool or for trips for nonprofit social, educational, or charitable agencies.

## PHYSICAL DAMAGE COVERAGES

## DEFINITIONS

*The following words and phrases have a special meaning when they appear in bold type and quotations in the PHYSICAL DAMAGE COVERAGES Section.*

- "**Loss**" means direct and accidental damage or direct and accidental loss.

- "**Nonowned auto**" means, while "**you**" or a "**relative**" are using it, any "**private passenger auto,**" "**moving van,**" "**trailer**" or "**temporary substitute**" not owned or leased by "**you**" or a "**relative.**" "**You**" or a "**relative**" must have     permission to operate or use the vehicle or "**you**" or the "**relative**" must reasonably believe that permission exists.

    A "**nonowned auto**" does not include one that is furnished or available for the regular use of "**you**" or a "**relative.**" A "**private passenger auto,**" "**moving van**" or "**trailer**" (not including a "**temporary substitute**") rented or leased to "**you**" for a period of more than 45 consecutive days will be considered as furnished or available for the regular use of "**you**" or a "**relative**"

## OUR PROMISE—Collision Coverage

If Collision Coverage is indicated on the "**Declarations,**" "**we**" will pay for "**loss**" to an "**auto we insure**" and its equipment caused by collision or upset. If the "**loss**" is to an "**owned auto we insure,**" "**we**" will only pay if "**you**" purchased Collision Coverage for the "**owned auto we insure.**" "**We**" will pay for "**loss**" less the deductible shown on the "**Declarations.**"

"**We**" will not subtract the deductible if the accident is between an "**auto we insure**" and another "**auto:**"

1.  insured by the Erie Insurance Group.

2.  not insured by the Erie Insurance Group, if:

    a.  the "**loss**" to the "**auto we insure**" is greater than the deductible amount;

    b.  the owner of the other "**auto**" has been identified;



577144_1.docx

Kevin Morgan
Page 3
July 22, 2020

    c.  the owner or operator of the other "**auto**" is solely liable for the "**loss**;" and

    d.  there is adequate property damage liability insurance which protects anyone responsible for the "**loss**."

**EXCLUSIONS—What We Do Not Cover**

"**We**" will not pay for "**loss**:"

  8.  to any "**auto we insure**" while hired by or rented to others for a fee, or while available for hire by the public. Fee does not include payment received in a car pool or for trips for nonprofit social, educational or charitable agencies.

This letter is not intended to be exhaustive. ERIE's failure to expressly mention a term, condition, exclusion or defense under the insurance policy does not constitute a waiver of any further rights which The ERIE may later assert under the policy.

We caution you any coverage decision can only be based upon the documents which have been provided for our review. If you have any additional relevant documents in your possession, or if you receive any additional relevant documents, we do ask you submit them to us at your earliest convenience in order for us to make a determination under the policies of insurance. ERIE specifically reserves the right to review any amended pleadings that may be filed in the future.

You should contact us if you have any questions regarding this letter.

                Sincerely,


                Jared Keller
                Liability Adjuster
                Harrisburg Claims Office
                (717) 795-2255
                1-800-382-1304, Ext. 2255

JK:cm

cc:  Reich Insurance Inc.
      6 Hearthstone Court, Suite 103
      Reading, PA 19606

